RECORD NO. 22-4359

In The

# United States Court of Appeals
For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## TOMMY LLOYD,

*Defendant – Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
————————

JOINT APPENDIX
VOLUME I OF II
(PAGES 0001- 0306)
————————

| | | |
|---|---|---|
| Elizabeth A. Franklin-Best | Ranee Saunders | Andrew De Holl |
| Elizabeth Franklin-Best, P.C. | Elizabeth Franklin-Best, P.C. | Office of the U.S. Attorney |
| 3710 Landmark Drive, Ste 113 | 3710 Landmark Drive, Ste 113 | 151 Meeting Street, Ste 200 |
| Columbia, SC 29204 | Columbia, SC 29204 | Charleston, SC 29401 |
| (803) 445-1333 | (803) 445-1333 | (843) 727-4381 |
| | | |
| *Counsel for Appellant* | *Counsel for Appellant* | *Counsel for Appellee* |

<u>TABLE OF CONTENTS</u>
VOLUME I OF II

<u>Appendix Page</u>

Docket Entries ...................................................................................0001

Indictment,
    filed August 5, 2020 ......................................................0023

Appearance Bond,
    Filed July 9, 2020 .........................................................0059

Order Setting Conditions of Release,
    Filed July 9, 2020 .........................................................0061

Plea Agreement,
    Filed May 27, 2021 .......................................................0064

Guilty Plea,
    Filed June 7, 2021 ........................................................0075

Transcript of Proceedings before
The Honorable Joseph F. Anderson Jr.
    dated June 7, 2021 .......................................................0076

Notice of Appearance, Steven Hisker,
    Filed January 6, 2022 ...................................................0144

Motion to Withdrawal Guilty Plea,
    Filed February 19, 2022 ...............................................0145

Transcript of Proceedings before
The Honorable Joseph F. Anderson Jr.
    dated March 15, 2022....................................................0150

Order on Motion to Withdrawal Guilty Plea,
    Filed April 6, 2022 .......................................................0217

Consent Motion to Amend Conditions of Release,
    Filed April 28, 2022 ........................................................................0226

Transcript of Proceedings before
The Honorable Joseph F. Anderson Jr.
    dated May 4, 2022........................................................................0228

Judgment,
    dated May 6, 2022 ........................................................................0287

Notice of Appeal,
    Filed May 16, 2022 ......................................................................0293

Motion for Appellate Bond,
    Filed June 13, 2022 ......................................................................0294

Order on Motion for Appellate Bond,
    Filed June 22, 2022 ......................................................................0302

Notice of Appeal on Appellate Bond,
    Filed June 25, 2022 ......................................................................0306

Presentence Investigation Report (under seal)
    prepared August 31, 2021
    revised April 20, 2022....................................................................0307

Revised Addendum to the Presentence Report, (under seal)
    filed April 22, 2022 ......................................................................0336

Case title: USA v. Escobar et al

Magistrate judge case number: 3:20-mj-00057-MCRI

Date Filed: 08/05/2020

Date Terminated: 05/06/2022

Assigned to: Honorable Joseph F Anderson, Jr

**Defendant (12)**

**Tommy Novack Lloyd**
*TERMINATED: 05/06/2022*
*also known as*
T-Lloyd

represented by **Elizabeth Anne Franklin-Best**
Elizabeth Franklin-Best PC
2725 Devine Street
Columbia, SC 29205
803-445-1333
Email:
elizabeth@franklinbestlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Stanley L Myers**
Moore Taylor and Thomas
1700 Sunset Boulevard
West Columbia, SC 29171
803-796-9160
Fax: 803-791-8410
Email: stanley@mttlaw.com
*TERMINATED: 12/08/2021*
*LEAD ATTORNEY*
*Designation: Retained*

**Steven M Hisker**
Steven M Hisker Law Office
126 E Main Street
Duncan, SC 29334
864-921-1432
Fax: 864-439-0642
Email: SteveHisker@Gmail.com
*TERMINATED: 05/16/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Lester M Bell**

Moore Bradley Myers Law Firm PA
PO Box 5709
West Columbia, SC 29171
803-796-9160
Email: gill@mbmlawsc.com
*TERMINATED: 12/09/2021*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| | The defendant is hereby committed to the custody of the BOP to imprisoned for a total term of 70 months. Upon release from imprisonment the defendant shall be on supervised release for a term of 3 years and must comply with the standard, mandatory and special conditions. Special Assessment of $100 is due immediately. The defendant shall report to the Federal Institution as designated by the BOP. |
| 21:846 CONSPIRACY TO DISTRIBUTE NARCOTICS with forfeiture allegations (1s) | |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 21:846 CONSPIRACY TO DISTRIBUTE NARCOTICS with forfeiture allegations (1) | Dismissed on motion of the government |
| 21:856(a)(1) NARCOTICS - MANUFACTURE with forfeiture allegations (33) | Dismissed on motion of the government |
| 21:856(a)(1) NARCOTICS - SELL, DISTRIBUTE, DISPENSE with forfeiture allegations (33s) | Dismissed on motion of the government |
| 21:843(b) and 18:2 USE COMMUNICATIONS FACILITY - NARCOTIC - DISTRIBUTE with | Dismissed on motion of the government |

0002

forfeiture allegations
(39)

21:843(b) and 18:2 USE
COMMUNICATIONS FACILITY -
NARCOTIC - DISTRIBUTE with
forfeiture allegations
(39s)

Dismissed on motion of the
government

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| 21:846 Conspiracy to Possess with Intent to Distribute Cocaine, Crack Cocaine, Fentanyl, Heroin and Oxycodone | |

**Interested Party**

**Merry Hudson**
*TERMINATED: 03/30/2022*

**Plaintiff**

**USA**                    represented by    **Brandon Batson Hinton**
US Attorneys Office (Gville)
55 Beattie Place
Suite 700
Greenville, SC 29601
864-282-2100
Fax: 864-233-3158
Email: Brandon.Hinton@usdoj.gov
*TERMINATED: 05/06/2022*
*LEAD ATTORNEY*
*Designation: Assistant US Attorney*

**Leesa Washington**
US Attorneys Office (Gville)
55 Beattie Place
Suite 700

Greenville, SC 29601
864-282-2100
Fax: 864-233-3158
Email: leesa.washington@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carrie Fisher Sherard**
US Attorneys Office (Gville)
55 Beattie Place
Suite 700
Greenville, SC 29601
864-282-2100
Email: carrie.a.fisher@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Sloan Price Ellis**
US Attorneys Office (Gville)
55 Beattie Place
Suite 700
Greenville, SC 29601
864-282-2100
Fax: 864-282-2145
Email: Sloan.Ellis@usdoj.gov
*TERMINATED: 05/06/2022*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/18/2020 | 1 | MOTION to Seal Complaint, Affidavit, Warrantsby USA as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, James Morris, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson. (ttil, ) [3:20-mj-00057-MCRI] (Entered: 06/18/2020) |
| 06/18/2020 | 2 | **ORDER granting 1 Motion to Seal Complaint, Affidavit, Arrest Warrants as to Nelson Duran Escobar (1), Maurice Antwain Leach (2), Anthony Charles Britt (3), Willie Edward Simmons III (4), Christopher Daquan Melton (5), Devonte Jabar Simon (6), David Lanard Ballard (7), Ashley Bryon Fisher (8), James Morris (9), Tommy Novack Lloyd (10), Eric Travas Cowan (11), Reginald Keith Furgess (12), Trinette L Melton (13), Jameel Daru Anderson (14), Janie Robinson (15). Documents to be unsealed as** |

0004

| | | |
|---|---|---|
| | | to each individual defendant upon his or her arrest. Signed by Magistrate Judge Shiva V Hodges on 6/18/2020.(ttil, ) [3:20-mj-00057-MCRI] (Entered: 06/18/2020) |
| 06/18/2020 | 3 | SEALED COMPLAINT as to Nelson Duran Escobar (1), Maurice Antwain Leach (2), Anthony Charles Britt (3), Willie Edward Simmons, III (4), Christopher Daquan Melton (5), Devonte Jabar Simon (6), David Lanard Ballard (7), Ashley Bryon Fisher (8), James Morris (9), Tommy Novack Lloyd (10), Eric Travas Cowan (11), Reginald Keith Furgess (12), Trinette L Melton (13), Jameel Daru Anderson (14), Janie Robinson (15). (Attachments: # 1 Affidavit) (ttil, ) [3:20-mj-00057-MCRI] (Entered: 06/18/2020) |
| 06/19/2020 | 19 | MOTION for Disclosure by USA as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, James Morris, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson. No proposed order(Hinton, Brandon) [3:20-mj-00057-MCRI] (Entered: 06/19/2020) |
| 06/23/2020 | 25 | STANDING ORDER GOVERNING DISCOVERY as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, James Morris, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson. Signed by Magistrate Judge Shiva V Hodges on 6/23/2020.(ttil, ) [3:20-mj-00057-MCRI] (Entered: 06/23/2020) |
| 06/23/2020 | 26 | ORDER granting 19 Motion for Disclosure as to Nelson Duran Escobar (1), Maurice Antwain Leach (2), Anthony Charles Britt (3), Willie Edward Simmons III (4), Christopher Daquan Melton (5), Devonte Jabar Simon (6), David Lanard Ballard (7), Ashley Bryon Fisher (8), James Morris (9), Tommy Novack Lloyd (10), Eric Travas Cowan (11), Reginald Keith Furgess (12), Trinette L Melton (13), Jameel Daru Anderson (14), Janie Robinson (15). Signed by Magistrate Judge Shiva V Hodges on 6/23/2020.(ttil, ) [3:20-mj-00057-MCRI] (Entered: 06/23/2020) |
| 06/23/2020 | 30 | ORAL MOTION to Unseal Complaint and rescind Arrest Warrant issued 6/18/2020 by USA as to Tommy Novack Lloyd. (ttil, ) [3:20-mj-00057-MCRI] (Entered: 06/24/2020) |

| 06/23/2020 | 31 | **Text Order granting 30 Motion to Unseal Complaint and rescind Arrest Warrant issued 6/18/2020 as to Tommy Novack Lloyd. Signed by Magistrate Judge Shiva V Hodges on 6/23/2020.(ttil, ) [3:20-mj-00057-MCRI] (Entered: 06/24/2020)** |
|---|---|---|
| 06/26/2020 | 135 | **ORDER re court proceedings during COVID-19 pandemic as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, James Morris, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson. Signed by Magistrate Judge Shiva V Hodges on 4/8/2020.(ttil, ) [3:20-mj-00057-MCRI] (Entered: 06/26/2020)** |
| 07/07/2020 | 205 | NOTICE OF ATTORNEY APPEARANCE: Stanley L Myers appearing for Tommy Novack Lloyd (Myers, Stanley) [3:20-mj-00057-MCRI] (Entered: 07/07/2020) |
| 07/09/2020 | 223 | **Minute Entry for proceedings held before Magistrate Judge Paige J Gossett: Initial Appearance as to Tommy Novack Lloyd held on 7/9/2020. Attorney Stanley Myers makes a general appearance. Defendant waives reading of complaint. Defendant requests a preliminary hearing be scheduled. Government requests a $50,000 secured bond. Bond set at $50,000 secured. Surety bondsman Ned Polk, Sr. (agent-in-fact for Alleghany Casualty Company) sworn; court propounds questions. $50,000 secured bond executed; defendant released. Court Reporter Courtsmart. (jpet, ) [3:20-mj-00057-MCRI] (Entered: 07/09/2020)** |
| 07/09/2020 | 224 | Secured Bond Entered as to Tommy Novack Lloyd in amount of $ 50,000, (Attachments: # 1 Power of Attorney)(jpet, ) [3:20-mj-00057-MCRI] (Entered: 07/09/2020) |
| 07/09/2020 | 225 | **ORDER Setting Conditions of Release as to Tommy Novack Lloyd (10). Signed by Magistrate Judge Paige J Gossett on 7/9/2020.(jpet, ) [3:20-mj-00057-MCRI] (Entered: 07/09/2020)** |
| 07/09/2020 | 228 | **ORDER SCHEDULING PRELIMINARY HEARING as to Tommy Novack Lloyd. Preliminary Hearing set for 7/30/2020 10:00 AM in Columbia # 7, Matthew J. Perry Court House, 901 Richland St, Columbia before Magistrate Judge Paige J Gossett. Signed by Magistrate Judge Paige J Gossett on 7/9/2020.(jpet, ) [3:20-mj-00057-MCRI] (Entered: 07/09/2020)** |
| 07/10/2020 | 238 | MOTION for Extension of Time to Indict by USA as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie |

|  |  | Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, James Morris, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson. Proposed order is being emailed to chambers with copy to opposing counsel(Hinton, Brandon) [3:20-mj-00057-MCRI] (Entered: 07/10/2020) |
|---|---|---|
| 07/10/2020 | 240 | **ORDER FOR ELECTION OF PROCEDURES as to Tommy Novack Lloyd. Signed by Magistrate Judge Paige J Gossett on 7/10/2020. (Attachments: # 1 Election form)(jpet, ) [3:20-mj-00057-MCRI] (Entered: 07/10/2020)** |
| 07/10/2020 | 243 | First MOTION for Release of Brady Materials by Tommy Novack Lloyd. No proposed order(Myers, Stanley) [3:20-mj-00057-MCRI] (Entered: 07/10/2020) |
| 07/10/2020 | 244 | EDWARDS NOTICE by Tommy Novack Lloyd (Myers, Stanley) [3:20-mj-00057-MCRI] (Entered: 07/10/2020) |
| 07/10/2020 | 246 | First MOTION adopt all motions of codefendants by Tommy Novack Lloyd. No proposed order(Myers, Stanley) [3:20-mj-00057-MCRI] (Entered: 07/10/2020) |
| 07/13/2020 | 257 | REPLY *Election of Procedures* (Myers, Stanley) [3:20-mj-00057-MCRI] (Entered: 07/13/2020) |
| 07/14/2020 | 265 | **ORDER granting 238 Motion for Extension of Time to Indictment as to Nelson Duran Escobar (1), Maurice Antwain Leach (2), Anthony Charles Britt (3), Willie Edward Simmons III (4), Christopher Daquan Melton (5), Devonte Jabar Simon (6), David Lanard Ballard (7), Ashley Bryon Fisher (8), James Morris (9), Tommy Novack Lloyd (10), Eric Travas Cowan (11), Reginald Keith Furgess (12), Trinette L Melton (13), Jameel Daru Anderson (14), Janie Robinson (15). Signed by Magistrate Judge Paige J Gossett on 7/14/2020.(jpet, ) [3:20-mj-00057-MCRI] (Entered: 07/14/2020)** |
| 07/30/2020 | 304 | **Minute Entry for proceedings held before Magistrate Judge Paige J Gossett: Preliminary Hearing as to Tommy Novack Lloyd held on 7/30/2020. Defendant and defense counsel partipate by telephone. Government calls Sp. Agent Joshua Loomis; sworn/testifies. Court finds probable cause and directs defendant to appear for further proceedings. Defendant continued on bond. Court Reporter Courtsmart. (jpet, ) [3:20-mj-00057-MCRI] (Entered: 07/30/2020)** |

| 08/05/2020 | 309 | INDICTMENT (Sealed Grand Jury Ballot attached) as to Nelson Duran Escobar (1) count(s) 1, 3, 27, 29, 31, 43, Willie Edward Simmons, III (2) count(s) 1, 16, 18, 37, Devonte Jabar Simon (3) count(s) 1, 32, 44, Maurice Antwain Leach (4) count(s) 1, 2, 16, 17, 25, 29-30, 35, 37-38, 41-43, 45, Anthony Charles Britt (5) count(s) 1, 2, 13, 23, 34, 36, 39-40, Christopher Daquan Melton (6) count(s) 1, 2, 21, 26, 30, 35, 46-47, Jameel Daru Anderson (7) count(s) 1, 4-6, 7, 8, 14, 15, 47, James Morris (8) count(s) 1, 19-20, 42, David Lanard Ballard (9) count(s) 1, 41, Ashley Bryon Fisher (10) count(s) 1, 38, Trinette L Melton (11) count(s) 1, 2, Tommy Novack Lloyd (12) count(s) 1, 33, 39, Eric Travas Cowan (13) count(s) 1, 40, Reginald Keith Furgess (14) count(s) 1, 2, 9-12, 22, 36, Janie Robinson (15) count(s) 1, 45, Christopher James Taylor (16) count(s) 1, 24, 28. (Attachments: # 1 GJ Ballot) (jpet, ) (Entered: 08/05/2020) |
| --- | --- | --- |
| 08/05/2020 | 310 | PENALTY SHEET as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, James Morris, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson, Christopher James Taylor (jpet, ) (Entered: 08/05/2020) |
| 08/05/2020 | 327 | NOTICE OF HEARING as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, James Morris, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson, Christopher James Taylor Arraignment set for 8/20/2020 10:00 AM in Columbia # 8, Matthew J. Perry Court House, 901 Richland St, Columbia before Magistrate Judge Shiva V Hodges. (jpet, ) (Entered: 08/05/2020) |
| 08/06/2020 | 329 | NOTICE OF ATTORNEY APPEARANCE Sloan Price Ellis appearing for USA. (Ellis, Sloan) (Entered: 08/06/2020) |
| 08/17/2020 | 334 | Case Reassigned as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, James Morris, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson, Christopher James Taylor to Judge Honorable Joseph F Anderson, Jr. Judge Unassigned - CRI no longer assigned to the case. (pcas, ) (Entered: 08/17/2020) |

| | | |
|---|---|---|
| 08/18/2020 | 342 | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Tommy Novack Lloyd (ttil, ) (Entered: 08/19/2020) |
| 08/25/2020 | 381 | SCHEDULING NOTICE as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, James Morris, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson, Christopher James Taylor.<br><br>Motions deadline is 9/9/20;<br><br>Pretrial Conference<br>set for 10/22/2020 02:00 PM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr.<br><br>Jury Selection<br>set for 11/5/2020 09:30 AM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr (mflo, ) (Entered: 08/25/2020) |
| 10/20/2020 | 454 | First MOTION to Continue by Tommy Novack Lloyd. No proposed order(Myers, Stanley) (Entered: 10/20/2020) |
| 10/21/2020 | 465 | First MOTION to Continue by Tommy Novack Lloyd. No proposed order(Myers, Stanley) (Entered: 10/21/2020) |
| 10/21/2020 | 468 | NOTICE OF CANCELLATION OF HEARING: Pretrial Conference set for 10/22/2020 02:00 PM as to Tommy Novack Lloyd before Judge Joseph F. Anderson, Jr. (mflo, ) (Entered: 10/21/2020) |
| 11/02/2020 | 475 | **ORDER TO CONTINUE - Case is continued to the January/February 2021 term of court; Ends of Justice as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson, Christopher James Taylor Time excluded from 11/5/20 until 1/7/21. Granting 446 MOTION to Continue filed by Maurice Antwain Leach, Granting 465 First MOTION to Continue filed by Tommy Novack Lloyd,Granting 432 Consent MOTION to Continue filed by Christopher James Taylor, Granting 436 MOTION to Continue filed by Ashley Bryon Fisher, Granting 431 MOTION to Continue filed by Christopher Daquan Melton,** |

| | | |
|---|---|---|
| | | **Granting 453 MOTION to Continue** *Pretrial Conference* **filed by Trinette L Melton, Granting 445 Consent MOTION to Continue filed by Janie Robinson, Granting 437 First MOTION to Continue filed by David Lanard Ballard, Granting 435 MOTION to Continue filed by Reginald Keith Furgess, Granting 454 First MOTION to Continue filed by Tommy Novack Lloyd, Granting 464 First MOTION to Continue filed by David Lanard Ballard, Granting 438 MOTION to Continue filed by Eric Travas Cowan, Granting 451 MOTION to Continue filed by Willie Edward Simmons, III, Granting 455 MOTION to Continue filed by Anthony Charles Britt, Granting 434 MOTION to Continue filed by Nelson Duran Escobar, Granting 433 MOTION to Continue filed by Jameel Daru Anderson, Granting 447 Supplemental MOTION to Continue filed by Christopher Daquan Melton. Signed by Honorable Joseph F Anderson, Jr on 11/2/20.(mflo, )** (Entered: 11/02/2020) |
| 11/02/2020 | 476 | NOTICE OF CANCELLATION OF HEARING: Jury Selection set for 11/5/2020 09:30 AM as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson, Christopher James Taylor before Judge Joseph F. Anderson, Jr. (mflo, ) (Entered: 11/02/2020) |
| 11/23/2020 | 497 | NOTICE OF HEARING as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson, Christopher James Taylor Pretrial Conferenceset for 12/18/2020 10:00 AM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. Jury Selection set for 1/7/2021 09:30 AM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr (mflo, ) (Entered: 11/23/2020) |
| 12/15/2020 | 522 | NOTICE OF CANCELLATION OF HEARING: Pretrial Conference set for 12/18/2020 10:00 AM as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru |

| | | |
|---|---|---|
| | | Anderson, Janie Robinson, Christopher James Taylor before Judge Joseph F. Anderson, Jr. (mflo, ) (Entered: 12/15/2020) |
| 12/15/2020 | 524 | **Order to Seal Superseding Indictment as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson, Christopher James Taylor, Keisha Nabre Pratt. Signed by Magistrate Judge Shiva V Hodges on 12/15/2020.(jpet, ) (Entered: 12/15/2020)** |
| 12/15/2020 | 526 | SEALED SUPERSEDING INDICTMENT (Sealed Grand Jury Ballot attached) as to Nelson Duran Escobar (1) count(s) 1s, 3s, 27s, 29s, 31s, 43s, Willie Edward Simmons, III (2) count(s) 1s, 16s, 18s, 37s, Devonte Jabar Simon (3) count(s) 1s, 32s, 44s, Maurice Antwain Leach (4) count(s) 1s, 2s, 16s, 17s, 25s, 29s-30s, 35s, 37s-38s, 41s-43s, 45s, Anthony Charles Britt (5) count(s) 1s, 2s, 13s, 23s, 34s, 36s, 39s-40s, Christopher Daquan Melton (6) count(s) 1s, 2s, 21s, 26s, 30s, 35s, 46s-47s, Jameel Daru Anderson (7) count(s) 1s, 4s, 5s, 6s, 7s, 8s, 14s, 15s, 47s, David Lanard Ballard (9) count(s) 1s, 41s, 48s, Ashley Bryon Fisher (10) count(s) 1s, 38s, Trinette L Melton (11) count(s) 1s, 2s, Tommy Novack Lloyd (12) count(s) 1s, 33s, 39s, Eric Travas Cowan (13) count(s) 1s, 40s, Reginald Keith Furgess (14) count(s) 1s, 2s, 9s-12s, 22s, 36s, Janie Robinson (15) count(s) 1s, 45s, Christopher James Taylor (16) count(s) 1s, 24s, 28s, Keisha Nabre Pratt (17) count(s) 1. (Attachments: # 1 GJ Ballot) (jpet, ) (Entered: 12/15/2020) |
| 12/15/2020 | 527 | PENALTY SHEET as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, James Morris, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson, Christopher James Taylor, Keisha Nabre Pratt (jpet, ) (Entered: 12/15/2020) |
| 12/15/2020 | 545 | **STANDING ORDER GOVERNING DISCOVERY as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson, Christopher James Taylor, Keisha Nabre Pratt. Signed by Magistrate Judge Shiva V Hodges on 12/15/2020.(jpet, ) (Entered: 12/15/2020)** |

| | | |
|---|---|---|
| 12/17/2020 | 550 | ORAL MOTION to Unseal Case by USA as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, James Morris, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson, Christopher James Taylor, Keisha Nabre Pratt. (jpet, ) (Entered: 12/18/2020) |
| 12/17/2020 | 551 | **ORAL ORDER granting 550 Motion to Unseal Case as to Nelson Duran Escobar (1), Willie Edward Simmons III (2), Devonte Jabar Simon (3), Maurice Antwain Leach (4), Anthony Charles Britt (5), Christopher Daquan Melton (6), Jameel Daru Anderson (7), James Morris (8), David Lanard Ballard (9), Ashley Bryon Fisher (10), Trinette L Melton (11), Tommy Novack Lloyd (12), Eric Travas Cowan (13), Reginald Keith Furgess (14), Janie Robinson (15), Christopher James Taylor (16), Keisha Nabre Pratt (17). Entered by Magistrate Judge Shiva V Hodges on 12/17/2020.(jpet, )** (Entered: 12/18/2020) |
| 12/18/2020 | 563 | NOTICE OF HEARING as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, III, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, James Morris, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson.<br><br>Arraignment set for 1/5/2021 12:00 PM in Columbia # 7, Matthew J. Perry Court House, 901 Richland St, Columbia before Magistrate Judge Paige J Gossett. (jpet, ) (Entered: 12/18/2020) |
| 12/23/2020 | 573 | NOTICE OF CANCELLATION OF HEARING: Jury Selection set for 1/7/2021 09:30 AM as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson, Christopher James Taylor before Judge Joseph F. Anderson, Jr. (mflo, ) (Entered: 12/23/2020) |
| 12/28/2020 | 576 | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Tommy Novack Lloyd (jpet, ) (Entered: 12/28/2020) |
| 12/28/2020 | 577 | NOTICE OF CANCELLATION OF HEARING: Arraignment set for 1/5/2021 at 12:00pm as to Tommy Novack Lloyd (jpet, ) (Entered: 12/28/2020) |

| 01/26/2021 | 635 | SCHEDULING NOTICE as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Christopher James Taylor, Keisha Nabre Pratt.<br><br>If a motion for continuance is filed, counsel must state specific reasons and attach a signed consent of the defendant's waiver of speedy trial.<br><br>Pretrial Conference set for 2/25/2021 02:00 PM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. Jury Selection set for 3/9/2021 09:30 AM in Columbia #1, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr (mflo, ) (Entered: 01/26/2021) |
| 02/21/2021 | 650 | Second MOTION to Continue by Tommy Novack Lloyd. No proposed order(Myers, Stanley) (Entered: 02/21/2021) |
| 02/24/2021 | 656 | NOTICE OF CANCELLATION OF HEARING: Pretrial Conference set for 2/25/2021 02:00 PM and. Jury Selection set for 3/9/2021 09:30 AM before Judge Joseph F. Anderson, Jr.<br><br>as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Christopher Daquan Melton, Ashley Bryon Fisher, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Christopher James Taylor, Keisha Nabre Pratt ONLY. (mflo, ) (Entered: 02/24/2021) |
| 03/08/2021 | 667 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Christopher James Taylor. Detention Hearing held on 7/21/2020, before Judge Paige J. Gossett. Court Reporter/Transcriber Robin L. Herrera, RMR, CRR, CRC, Telephone number/E-mail robin_herrera@scd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Parties have 7 calendar days from the filing of the transcript to file with the court a Notice of Intent to Request Redaction. Redaction Request due 3/29/2021. Redacted Transcript Deadline set for 4/8/2021. Release of Transcript Restriction set for 6/7/2021. (rher, ) (Entered: 03/08/2021) |

| | | |
|---|---|---|
| 03/12/2021 | 680 | **ORDER TO CONTINUE - Ends of Justice as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, Christopher Daquan Melton, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Christopher James Taylor, Keisha Nabre Pratt Time excluded from 3/9/21 until 5/7/21 Case is continued to the May/June term of court.. Signed by Honorable Joseph F Anderson, Jr on 3/12/21.**(mflo, ) (Entered: 03/12/2021) |
| 03/15/2021 | 682 | SCHEDULING NOTICE as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, Christopher Daquan Melton, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Christopher James Taylor, Keisha Nabre Pratt <u>Pretrial Conference</u> set for 4/29/2021 02:00 PM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. <u>Jury Selection</u> set for 5/7/2021 09:30 AM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr (mflo, ) (Entered: 03/15/2021) |
| 03/19/2021 | 684 | DELETION OF DOCKET ENTRY NUMBER 683 requesting jury questionnaire information by USA as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Ashley Bryon Fisher, James Morris, Tommy Novack Lloyd, Eric Travas Cowan, Reginald Keith Furgess, Trinette L Melton, Jameel Daru Anderson, Janie Robinson, Christopher James Taylor, Keisha Nabre Pratt Reason: filed in error by filing user. (mflo, ) (Entered: 03/19/2021) |
| 04/27/2021 | 723 | Fourth MOTION to Continue by Tommy Novack Lloyd. No proposed order(Myers, Stanley) (Entered: 04/27/2021) |
| 04/28/2021 | 725 | NOTICE OF CANCELLATION OF HEARING: Pretrial Conference set for 4/29/2021 02:00 PM as to Tommy Novack Lloyd before Judge Joseph F. Anderson, Jr. (mflo, ) (Entered: 04/28/2021) |
| 04/28/2021 | 726 | NOTICE OF REQUEST FOR PROTECTION from Court Appearance as to Tommy Novack Lloyd for June 14, 2021 - July 2, 2021 (Attachments: # 1 Exhibit)(Myers, Stanley) (Entered: 04/28/2021) |
| 05/04/2021 | 732 | **ORDER TO CONTINUE - Ends of Justice as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie** |

| | | |
|---|---|---|
| | | **Edward Simmons, Christopher Daquan Melton, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Reginald Keith Furgess, Trinette L Melton, Christopher James Taylor, Keisha Nabre Pratt;** <br><br> **CASE IS CONTINUED TO THE JULY TERM OF COURT; Time excluded from 5/7/21 until 7/7/21.** <br><br> **Granting 707 MOTION to Continue filed by Reginald Keith Furgess, Granting 710 MOTION to Continue filed by Maurice Antwain Leach, Granting 713 Fourth MOTION to Continue filed by David Lanard Ballard, Granting 701 MOTION to Continue filed by Christopher Daquan Melton, Granting 712 MOTION to Continue filed by Anthony Charles Britt, Granting 711 MOTION to Continue filed by Ashley Bryon Fisher, Granting 723 Fourth MOTION to Continue filed by Tommy Novack Lloyd, Granting 708 MOTION to Continue filed by Keisha Nabre Pratt, Granting 715 MOTION to Continue *Pretrial Conference* filed by Trinette L Melton.. Signed by Honorable Joseph F Anderson, Jr on 5/4/21.(mflo, ) (Main Document 732 replaced on 5/4/2021 to align title) (mflo, ). (Entered: 05/04/2021)** |
| 05/05/2021 | 733 | NOTICE OF CANCELLATION OF HEARING: Jury Selection set for 5/7/2021 09:30 AM as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, Christopher Daquan Melton, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Reginald Keith Furgess, Trinette L Melton, Christopher James Taylor, Keisha Nabre Pratt before Judge Joseph F. Anderson, Jr. (mflo, ) (Entered: 05/05/2021) |
| 05/12/2021 | 739 | SCHEDULING NOTICE as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, Christopher Daquan Melton, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Reginald Keith Furgess, Trinette L Melton, Christopher James Taylor, Keisha Nabre Pratt <br><br> Pretrial Conference set for 6/24/2021 02:00 PM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. <br><br> Jury Selection set for 7/7/2021 09:30 AM in Columbia #1, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr (mflo, ) (Entered: 05/12/2021) |
| 05/20/2021 | 753 | NOTICE OF ATTORNEY APPEARANCE: Lester M Bell appearing for Tommy Novack Lloyd (Bell, Lester) (Entered: 05/20/2021) |

| 05/21/2021 | 754 | DELETION OF DOCKET ENTRY NUMBER 752 as to Tommy Novack Lloyd Reason: Signature does not match filer. Corrected Filing Document Number 753 Modified filing date to that of original filing: 5/20/2021 (jpet, ) (Entered: 05/21/2021) |
|---|---|---|
| 05/26/2021 | 756 | NOTICE OF RESCHEDULED HEARING as to Nelson Duran Escobar, Anthony Charles Britt, Willie Edward Simmons, Christopher Daquan Melton, David Lanard Ballard, Ashley Bryon Fisher, Tommy Novack Lloyd, Reginald Keith Furgess, Trinette L Melton, Christopher James Taylor, Keisha Nabre Pratt Pretrial Conference set for 6/24/2021 02:00 PM cancelled and rescheduled to: ALL COUNSEL AND DEFENDANTS MUST BE PRESENT FOR THIS HEARING. Pretrial Conference set for 6/7/2021 02:00 PM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. (mflo, ) (Entered: 05/26/2021) |
| 05/27/2021 | 758 | PLEA AGREEMENT as to Tommy Novack Lloyd (Hinton, Brandon) (Main Document 758 replaced on 6/7/2021 with signature of AUSA) (mflo, ). (Entered: 05/27/2021) |
| 05/27/2021 | 760 | NOTICE OF HEARING as to Nelson Duran Escobar AND Tommy Novack Lloyd Change of Plea Hearing set for 6/7/2021 10:00 AM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. (mflo, ) (Entered: 05/27/2021) |
| 06/07/2021 | 785 | **Minute Entry for proceedings held before Honorable Joseph F Anderson, Jr: Change of Plea Hearing as to Nelson Duran Escobar, Tommy Novack Lloyd held on 6/7/2021; Plea Agreement Accepted Nelson Duran Escobar (1) Guilty of Lesser Offense Count 1s and Tommy Novack Lloyd (12) Guilty of Lesser Offense Count 1s; Nelson Duran Escobar (1) Counts to be Dismissed Count 1,3,3s,27,27s,29,29s,31,31s,43,43s and Tommy Novack Lloyd (12) Counts to be Dismissed Count 1,33,33s,39,39s. Court reviews charges and elements; government reviews penalties; Nelson Duran Escobar (1) remains in custody pending sentencing; Tommy Novack Lloyd remains on bond pending sentencing; Court reviewed the Due Process Protections Act amendment to Rule 5(f) on the disclosure obligation of the prosecutor under Brady v. Maryland and possible consequences of a violation. Court Reporter Karen Andersen. CJA Time 2 hours. (mflo, ) (Entered: 06/07/2021)** |

| 06/07/2021 | 786 | **FRCrP 5(f) DISCLOSURE ORDER as to Nelson Duran Escobar, Tommy Novack Lloyd ; Court reviewed the Due Process Protections Act amendment to Rule 5(f) on the disclosure obligation of the prosecutor under Brady v. Maryland and possible consequences of a violation. Signed by Honorable Joseph F Anderson, Jr on 6/7/21.(mflo, )** (Entered: 06/07/2021) |
| 06/07/2021 | 788 | GUILTY PLEA ENTERED count 1 (lesser included offense) of the superseding indictment as to Tommy Novack Lloyd (mflo, ) (Entered: 06/07/2021) |
| 06/07/2021 | 792 | NOTICE OF CANCELLATION OF HEARING: Pretrial Conference set for 6/7/2021 02:00 PM and Jury Selection set for 7/7/2021 09:30 AM before Judge Joseph F. Anderson, Jr. as to Nelson Duran Escobar, Anthony Charles Britt, Christopher Daquan Melton, Tommy Novack Lloyd (mflo, ) (Entered: 06/07/2021) |
| 10/25/2021 | 943 | NOTICE OF HEARING as to Tommy Novack Lloyd Sentencing set for 11/5/2021 03:45 PM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. <u>SPECIAL NOTE REGARDING CHARACTER WITNESSES:</u> Judge Anderson requests that all testimony from character witnesses be in writing and filed with the Clerk no later than 24 hours prior to the sentencing hearing.(mflo, ) (Entered: 10/25/2021) |
| 11/02/2021 | 952 | MOTION for Forfeiture of Property by USA as to Nelson Duran Escobar, Maurice Antwain Leach, Anthony Charles Britt, Willie Edward Simmons, Christopher Daquan Melton, Devonte Jabar Simon, David Lanard Ballard, Tommy Novack Lloyd, Reginald Keith Furgess, Christopher James Taylor. Proposed order is being emailed to chambers with copy to opposing counsel(Sherard, Carrie) (Entered: 11/02/2021) |
| 11/03/2021 | 961 | **PRELIMINARY ORDER OF FORFEITURE OF PROPERTY granting 952 Motion for Forfeiture of Property as to Tommy Novack Lloyd (12). Signed by Honorable Joseph F Anderson, Jr on 11/3/21.(mflo, )** (Entered: 11/03/2021) |
| 11/04/2021 | 967 | First MOTION to Depart from Guidelines. Type of Departure: downward *departure* by Tommy Novack Lloyd. No proposed order(Myers, Stanley) (Entered: 11/04/2021) |
| 11/04/2021 | 969 | Letter as to Tommy Novack Lloyd (Attachments: # 1 Exhibit character statement, # 2 Exhibit character statement, # 3 Exhibit |

| | | |
|---|---|---|
| | | character statement, # 4 Exhibit character statement, # 5 Exhibit character statement)(Myers, Stanley) (Entered: 11/04/2021) |
| 11/04/2021 | 973 | DELETION OF DOCKET ENTRY NUMBER 968 as to Tommy Novack Lloyd Reason: duplicate filing; Corrected Filing Document Number 969 . (mflo, ) (Entered: 11/04/2021) |
| 11/05/2021 | 983 | **Minute Entry for proceedings held before Honorable Joseph F Anderson, Jr: Sentencing began on 11/5/2021 as to Tommy Novack Lloyd and defendant then requested a continuance. Court will allow defendant 14 days to discuss case with counsel and to file any motions. Court Reporter Karen Andersen. CJA Time Retained. (mflo, )** (Entered: 11/08/2021) |
| 11/30/2021 | 1021 | NOTICE OF HEARING as to Tommy Novack Lloyd Sentencing set for 12/8/2021 10:45 AM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. <u>SPECIAL NOTE REGARDING CHARACTER WITNESSES:</u> Judge Anderson requests that all testimony from character witnesses be in writing and filed with the Clerk no later than 24 hours prior to the sentencing hearing.(mflo, ) (Entered: 11/30/2021) |
| 12/01/2021 | 1022 | First MOTION for Hearing *status of counsel* by Tommy Novack Lloyd. No proposed order(Myers, Stanley) (Entered: 12/01/2021) |
| 12/02/2021 | 1023 | NOTICE OF HEARING ON MOTION in case as to Tommy Novack Lloyd 1022 First MOTION for Hearing *status of counsel* : Motion Hearing set for 12/8/2021 10:45 AM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. (mflo, ) (Entered: 12/02/2021) |
| 12/08/2021 | 1032 | **Minute Entry for proceedings held before Honorable Joseph F Anderson, Jr: Motion Hearing as to Tommy Novack Lloyd held on 12/8/2021; granting 1022 First MOTION for Hearing *status of counsel* filed by Tommy Novack Lloyd. Court relieves defense counsel Stanley Myers; defendant has 30 days to obtain new counsel and the new counsel will have 21 days after making an appearance to file a motion to withdraw the guilty plea; defendant remains on bond. Court Reporter Carly Horenkamp. CJA Time Retained. (mflo, )** (Entered: 12/08/2021) |
| 12/09/2021 | 1039 | First MOTION to Withdraw as Attorney by Lester M. Bell, Jr.. by Tommy Novack Lloyd. No proposed order(Bell, Lester) (Entered: 12/09/2021) |
| 12/09/2021 | 1040 | **TEXT ORDER granting 1039 Motion for Lester M. Bell, Jr. to Withdraw as Attorney for Tommy Novack Lloyd (12). Directed by** |

| | | |
|---|---|---|
| | | **Honorable Joseph F Anderson, Jr on 12/9/21.(mflo, )** (Entered: 12/09/2021) |
| 12/09/2021 | 1042 | DELETION OF DOCKET ENTRY NUMBER 1037 as to Tommy Novack Lloyd Reason: refiled by filing attorney with correct signature; Corrected Filing Document Number 1039 (mflo, ) (Entered: 12/09/2021) |
| 01/06/2022 | 1068 | NOTICE OF ATTORNEY APPEARANCE: Steven M Hisker appearing for Tommy Novack Lloyd (Hisker, Steven) (Entered: 01/06/2022) |
| 01/26/2022 | 1106 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Tommy Novack Lloyd Plea held on 6.7.21, before Judge Joseph Anderson. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Parties have 7 calendar days from the filing of the transcript to file with the court a Notice of Intent to Request Redaction. Redaction Request due 2/16/2022. Redacted Transcript Deadline set for 2/28/2022. Release of Transcript Restriction set for 4/26/2022. (kand, ) (Entered: 01/26/2022) |
| 01/28/2022 | 1112 | MOTION for Extension of Time by Tommy Novack Lloyd. No proposed order(Hisker, Steven) (Entered: 01/28/2022) |
| 01/28/2022 | 1113 | **TEXT ORDER Granting 1112 MOTION to extend time. New defense counsel for Tommy Novack Lloyd shall have until 2/18/22 to review the case and advise the court whether the defendant intends to withdraw his guilty plea ( Specific Document due by 2/18/2022.). Directed by Honorable Joseph F Anderson, Jr on 1/28/22.(mflo, )** Modified on 1/31/2022 to add text (mflo, ). (Entered: 01/28/2022) |
| 02/19/2022 | 1130 | MOTION to Withdraw Plea of Guilty by Tommy Novack Lloyd. No proposed order(Hisker, Steven) (Entered: 02/19/2022) |
| 02/19/2022 | 1131 | MOTION for Leave to File *Out of Time* by Tommy Novack Lloyd. No proposed order(Hisker, Steven) (Entered: 02/19/2022) |
| 02/22/2022 | 1132 | **TEXT ORDER granting 1131 Motion for Leave to File Out of Time Motion to withdraw guilty plea as to Tommy Novack Lloyd (12). Directed by Honorable Joseph F Anderson, Jr on 2/22/22.(mflo, )** (Entered: 02/22/2022) |
| 02/22/2022 | 1133 | NOTICE OF HEARING ON MOTION in case as to Tommy Novack Lloyd 1130 MOTION to Withdraw Plea of Guilty : Motion Hearing |

| | | |
|---|---|---|
| | | set for 3/15/2022 10:00 AM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. (mflo, ) (Entered: 02/22/2022) |
| 03/04/2022 | 1144 | RESPONSE in Opposition by USA as to Tommy Novack Lloyd re 1130 MOTION to Withdraw Plea of Guilty (Hinton, Brandon) (Main Document 1144 replaced on 3/4/2022 as provided by filing attorney to correct a typographical error) (mflo, ). (Entered: 03/04/2022) |
| 03/10/2022 | 1148 | NOTICE OF RESCHEDULED HEARING as to Tommy Novack Lloyd MOTION to Withdraw Plea of Guilty : Motion Hearing set for 3/15/2022 10:00 AM cancelled and rescheduled to: **CHANGE IN TIME ONLY** Motion Hearing set for 3/15/2022 03:00 PM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. (mflo, ) (Entered: 03/10/2022) |
| 03/15/2022 | 1152 | **Minute Entry for proceedings held before Honorable Joseph F Anderson, Jr: Motion Hearing as to Tommy Novack Lloyd held on 3/15/2022; taking under advisement 1130 MOTION to Withdraw Plea of Guilty filed by Tommy Novack Lloyd. Court to file written order. Court Reporter Karen Andersen. CJA Time Retained. (mflo, )** (Entered: 03/15/2022) |
| 03/15/2022 | 1156 | **TEXT ORDER Modifying Conditions of Pretrial Release as to Tommy Novack Lloyd. The defendant is to be placed on Location Monitoring with a Curfew. The technology and curfew schedule shall be determined by the U.S. Probation Office. Directed by Honorable Joseph F Anderson, Jr on 3/15/22.(mflo, )** (Entered: 03/16/2022) |
| 04/06/2022 | 1184 | **ORDER denying 1130 Motion to Withdraw Plea of Guilty as to Tommy Novack Lloyd (12). Signed by Honorable Joseph F Anderson, Jr on 4/6/22.(mflo, )** (Entered: 04/06/2022) |
| 04/08/2022 | 1188 | NOTICE OF HEARING as to Tommy Novack Lloyd Sentencing set for 4/25/2022 10:00 AM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. SPECIAL NOTE REGARDING CHARACTER WITNESSES: Judge Anderson requests that all testimony from character witnesses be in writing and filed with the Clerk no later than 24 hours prior to the sentencing hearing.(mflo, ) (Entered: 04/08/2022) |
| 04/11/2022 | 1190 | NOTICE OF RESCHEDULED HEARING as to Tommy Novack Lloyd Sentencing set for 4/25/2022 10:00 AM cancelled and rescheduled to: **CHANGE IN TIME ONLY** |

| | | |
|---|---|---|
| | | Sentencing set for 4/25/2022 02:30 PM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. <u>SPECIAL NOTE REGARDING CHARACTER WITNESSES:</u> Judge Anderson requests that all testimony from character witnesses be in writing and filed with the Clerk no later than 24 hours prior to the sentencing hearing.(mflo, ) (Entered: 04/11/2022) |
| 04/25/2022 | 1213 | **Minute Entry for proceedings held before Honorable Joseph F Anderson, Jr: Sentencing on 4/25/2022 continued as to Tommy Novack Lloyd. Defendant requested more time to discuss a late objection submitted by government. Court reschedules sentencing to May 4, 2022 at 2:30 p.m. Court Reporter Carly Horenkamp. CJA Time Retained. (mflo, )** (Entered: 04/25/2022) |
| 04/25/2022 | 1214 | NOTICE OF HEARING as to Tommy Novack Lloyd Sentencing set for 5/4/2022 02:30 PM in Columbia # 4, Matthew J. Perry Court House, 901 Richland St, Columbia before Honorable Joseph F Anderson Jr. <u>SPECIAL NOTE REGARDING CHARACTER WITNESSES:</u> Judge Anderson requests that all testimony from character witnesses be in writing and filed with the Clerk no later than 24 hours prior to the sentencing hearing.(mflo, ) (Entered: 04/25/2022) |
| 04/27/2022 | 1221 | Letter as to Tommy Novack Lloyd in re: Character Reference for Tommy Novak Lloyd (Attachments: # 1 Letter from Anthony Ray Allen)(Hisker, Steven) (Entered: 04/27/2022) |
| 04/28/2022 | 1222 | DELETION OF DOCKET ENTRY NUMBER 1212 as to Tommy Novack Lloyd Reason: attorney refiled with signature Corrected Filing Document Number 1221 (mflo, ) (Entered: 04/28/2022) |
| 04/28/2022 | 1223 | Consent MOTION to Modify Conditions of Release *to Allow Defendant to Attend Medical Treatment of His Son* by Tommy Novack Lloyd. No proposed order(Hisker, Steven) (Entered: 04/28/2022) |
| 04/29/2022 | 1225 | **TEXT ORDER granting 1223 Motion to Modify Conditions of Release to allow defendant to travel to Atlanta on Saturday, April 30th and return on May 1st as to Tommy Novack Lloyd (12). Directed by Honorable Joseph F Anderson, Jr on 4/29/22.(mflo, )** (Entered: 04/29/2022) |
| 05/04/2022 | 1226 | **Minute Entry for proceedings held before Honorable Joseph F Anderson, Jr: Sentencing held on 5/4/2022 as to Tommy Novack Lloyd. Court adopts the PSR as amended after ruling on objections; court denies oral motion for variance; defendant remains on bond pending designation from the** |

| | | |
|---|---|---|
| | | **BOP;terminating 967 Motion to Depart from Guidelines by Tommy Novack Lloyd (12). Court Reporter Karen Andersen. CJA Time Retained. (mflo, ) (Entered: 05/05/2022)** |
| 05/06/2022 | 1227 | NOTICE OF ATTORNEY APPEARANCE Leesa Washington appearing for USA. (Washington, Leesa) (Entered: 05/06/2022) |
| 05/06/2022 | 1228 | **JUDGMENT as to Tommy Novack Lloyd (12), Count(s) 1s of the superseding indictment. The defendant is hereby committed to the custody of the BOP to imprisoned for a total term of 70 months. Upon release from imprisonment the defendant shall be on supervised release for a term of 3 years and must comply with the standard, mandatory and special conditions. Special Assessment of $100 is due immediately. The defendant shall report to the Federal Institution as designated by the BOP. Count(s) 1, 33, 33s, 39, 39s, Dismissed on motion of the government. Signed by Honorable Joseph F Anderson, Jr on 5/6/22. (Attachments: # 1 Preliminary Order of Forfeiture)(mflo, ) (Entered: 05/06/2022)** |
| 05/06/2022 | 1229 | STATEMENT OF REASONS (Sealed) as to Tommy Novack Lloyd (mflo, ) (Entered: 05/06/2022) |
| 05/16/2022 | 1231 | NOTICE OF APPEAL OF FINAL JUDGMENT by Tommy Novack Lloyd re 1228 Judgment,, - Filing fee $ 505, receipt number ASCDC-10493392. The Docketing Statement form, Transcript Order form, and CJA 24 form may be obtained from the Fourth Circuit website at www.ca4.uscourts.gov. If applicable, the original CJA 24 form must be sent to the clerk's office upon filing of the Transcript Order form. (Franklin-Best, Elizabeth) (Entered: 05/16/2022) |

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. : _3:20-453_ |
| | ) | |
| vs. | ) | 21 U.S.C. § 841(a)(1) |
| | ) | 21 U.S.C. § 841(b)(1)(A) |
| NELSON DURAN ESCOBAR, | ) | 21 U.S.C. § 841(b)(1)(B) |
|   a/k/a "Macho," | ) | 21 U.S.C. § 841(b)(1)(C) |
| WILLIE EDWARD SIMMONS, | ) | 21 U.S.C. § 846 |
|   a/k/a "Hurt," | ) | 18 U.S.C. § 1956(a)(1)(A)(i) |
|   a/k/a "Hurt Cee," | ) | 18 U.S.C. § 1956(a)(1)(B)(i) |
|   a/k/a "Hurt Avenue," | ) | 18 U.S.C. § 1956(a)(1)(B)(ii) |
| DEVONTE JABAR SIMON, | ) | 18 U.S.C. § 1956(h) |
|   a/k/a "Ammo," | ) | 18 U.S.C. § 924(c)(1)(A) |
| MAURICE ANTWAIN LEACH, | ) | 18 U.S.C. § 922(g)(1) |
|   a/k/a "Blue," | ) | 18 U.S.C. § 924(a)(2) |
| ANTHONY CHARLES BRITT, | ) | 18 U.S.C. § 924(e) |
|   a/k/a "Mallet," | ) | 18 U.S.C. § 2 |
|   a/k/a "Amp," | ) | 21 U.S.C. § 856(a)(1) |
|   a/k/a "King Coke," | ) | 21 U.S.C. § 843(b) |
| CHRISTOPHER DAQUAN MELTON, | ) | 18 U.S.C. § 924(d)(1) |
|   a/k/a "Gunner," | ) | 18 U.S.C. § 982(a)(1) |
| JAMEEL DARU ANDERSON, | ) | 21 U.S.C. § 853 |
|   a/k/a "Who-Bang," | ) | 21 U.S.C. § 881 |
| JAMES MORRIS, | ) | 28 U.S.C. § 2461(c) |
|   a/k/a "Dollar," | ) | |
| DAVID LANARD BALLARD, | ) | |
|   a/k/a "Dave," | ) | |
| ASHLEY BRYON FISHER, | ) | |
|   a/k/a "Ponchie," | ) | |
| TRINETTE L. MELTON, | ) | |
|   a/k/a "Ma," | ) | |
|   a/k/a "Auntie," | ) | |
| TOMMY NOVACK LLOYD, | ) | |
|   a/k/a "T-Lloyd," | ) | |
| ERIC TRAVAS COWAN, | ) | |
| REGINALD KEITH FURGESS, | ) | |
|   a/k/a "Reggie," | ) | **INDICTMENT** |
|   a/k/a "Fat Boy," | ) | |
| JANIE ROBINSON, | ) | |
|   a/k/a "J," | ) | |
| CHRISTOPHER JAMES TAYLOR, | ) | |
|   a/k/a "Blink" | ) | |

1

## COUNT 1
(Conspiracy to Possess with Intent to Distribute and Distribution of Controlled Substances)

THE GRAND JURY CHARGES:

That beginning at a time unknown to the Grand Jury, but beginning in at least January 2016, and continuing thereafter, up to and including the date of this Indictment, in the District of South Carolina and elsewhere, the Defendants, **NELSON DURAN ESCOBAR, a/k/a "Macho," WILLIE EDWARD SIMMONS, a/k/a "Hurt," a/k/a "Hurt Cee," a/k/a "Hurt Avenue," DEVONTE JABAR SIMON, a/k/a "Ammo," MAURICE ANTWAIN LEACH, a/k/a "Blue," ANTHONY CHARLES BRITT, a/k/a "Mallet," a/k/a "Amp," a/k/a "King Coke," CHRISTOPHER DAQUAN MELTON, a/k/a "Gunner," JAMEEL DARU ANDERSON, a/k/a "Who-Bang," JAMES MORRIS, a/k/a "Dollar," DAVID LANARD BALLARD, a/k/a "Dave," ASHLEY BRYON FISHER, a/k/a "Ponchie," TRINETTE L. MELTON, a/k/a "Ma," a/k/a "Auntie," TOMMY NOVACK LLOYD, a/k/a "T-Lloyd," ERIC TRAVAS COWAN, REGINALD KEITH FURGESS, a/k/a "Reggie," a/k/a "Fat Boy" and JANIE ROBINSON, a/k/a "J,"** knowingly and intentionally did combine, conspire, agree, and have tacit understanding with each other and with others, both known and unknown to the Grand Jury, to possess with intent to distribute and to distribute heroin, a Schedule I controlled substance, and cocaine, cocaine base (commonly known as "crack" cocaine), N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as "fentanyl") and oxycodone, all Schedule II controlled substances;

2

a.  With respect to **NELSON DURAN ESCOBAR, a/k/a "Macho,"** the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A);

b.  With respect to **WILLIE EDWARD SIMMONS, a/k/a "Hurt," a/k/a "Hurt Cee," a/k/a "Hurt Avenue,"** the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A);

c.  With respect to **DEVONTE JABAR SIMON, a/k/a "Ammo,"** the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A);

d.  With respect to **MAURICE ANTWAIN LEACH, a/k/a "Blue,"** the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five kilograms or more of a mixture or substance containing a detectable amount of cocaine, 280 grams or more of a mixture or substance containing a detectable amount of cocaine base (commonly known as "crack" cocaine) and a quantity of oxycodone, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C);

3

e.  With respect to **ANTHONY CHARLES BRITT, a/k/a "Mallet," a/k/a "Amp," a/k/a "King Coke,"** the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A);

f.  With respect to **CHRISTOPHER DAQUAN MELTON, a/k/a "Gunner,"** the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five kilograms or more of a mixture or substance containing a detectable amount of cocaine and a quantity of oxycodone, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 841(b)(1)(C);

g.  With respect to **JAMEEL DARU ANDERSON, a/k/a "Who-Bang,"** the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is a quantity of a mixture or substance containing a detectable amount of heroin, a quantity of a mixture or substance containing a detectable amount of cocaine, a quantity of a mixture or substance containing a detectable amount of   N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as "fentanyl") and a quantity of oxycodone, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C);

4

h.  With respect to **JAMES MORRIS, a/k/a "Dollar,"** the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is 500 grams or more of a mixture or substance containing a detectable amount of cocaine and a quantity of oxycodone, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C);

i.  With respect to **DAVID LANARD BALLARD, a/k/a "Dave,"** the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is 280 grams or more of a mixture or substance containing a detectable amount of cocaine base (commonly known as "crack" cocaine), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A);

j.  With respect to **ASHLEY BRYON FISHER, a/k/a "Ponchie,"** the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is 280 grams or more of a mixture or substance containing a detectable amount of cocaine base (commonly known as "crack" cocaine), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A);

k.  With respect to **TRINETTE L. MELTON, a/k/a "Ma," a/k/a "Auntie,"** the amount involved in the conspiracy attributable to her as a result of her own conduct, and the conduct of other conspirators reasonably foreseeable to her, is a quantity of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C);

5

l.   With respect to **TOMMY NOVACK LLOYD, a/k/a "T-Lloyd,"** the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B);

m.  With respect to **ERIC TRAVAS COWAN**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B);

n.   With respect to **REGINALD KEITH FURGESS, a/k/a "Reggie," a/k/a "Fat Boy,"** the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is 28 grams or more of a mixture or substance containing a detectable amount of cocaine base (commonly known as "crack" cocaine) and a quantity of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C);

o.   With respect to **JANIE ROBINSON, a/k/a "J,"** the amount involved in the conspiracy attributable to her as a result of her own conduct, and the conduct of other conspirators reasonably foreseeable to her, is a quantity of oxycodone, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C);

In violation of Title 21, United States Code, Section 846.

6

## COUNT 2
(Conspiracy to Commit Money Laundering)

THE GRAND JURY FURTHER CHARGES:

That beginning at a time unknown to the Grand Jury, but beginning at least as early as January 2016, and continuing up to and including the date of this Indictment, in the District of South Carolina and elsewhere, the Defendants, **MAURICE ANTWAIN LEACH, a/k/a "Blue," ANTHONY CHARLES BRITT, a/k/a "Mallet," a/k/a "Amp," a/k/a "King Coke," CHRISTOPHER DAQUAN MELTON, a/k/a "Gunner," TRINETTE L. MELTON, a/k/a "Ma," a/k/a "Auntie,"** and **REGINALD KEITH FURGESS, a/k/a "Reggie," a/k/a "Fat Boy,"** knowingly and willfully did combine, conspire, agree and have tacit understanding with others, both known and unknown to the Grand Jury,

(a)     to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which in fact involved the proceeds of a specified unlawful activity, that is drug trafficking in violation of Title 21, United States Code, Sections 841(a)(1) and 846, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and further knowing that the transactions were intended to promote the carrying on of a specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

7

(b)      to conduct and attempt to conduct financial transactions affecting interstate and

foreign commerce, which in fact involved the proceeds of a specified unlawful

activity, that is drug trafficking in violation of Title 21, United States Code,

Sections 841(a)(1) and 846, knowing that the property involved in the financial

transactions represented the proceeds of some form of unlawful activity, and further

knowing that the transactions were designed, in whole and in part, to conceal and

disguise the nature, the location, the source, the ownership, and the control of the

property, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(c)      to conduct and attempt to conduct financial transactions affecting interstate and

foreign commerce, which in fact involved the proceeds of a specified unlawful

activity, that is drug trafficking in violation of Title 21, United States Code,

Sections 841(a)(1) and 846, knowing that the property involved in the financial

transactions represented the proceeds of some form of unlawful activity, and further

knowing that the transactions were designed, in whole and in part, to avoid a

transaction reporting requirement under Federal law, that is, the requirement to

report certain information about transactions involving the receipt of more than

$10,000 in United States currency in one transaction as required by Title 31, United

States Code, Section 5331 and the regulations promulgated thereunder in violation

of Title 18, United States Code, Section 1956(a)(1)(B)(ii);

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 3
(Possession of a Firearm in Furtherance of Drug Trafficking)

THE GRAND JURY FURTHER CHARGES:

That on or about March 2, 2018, in the District of South Carolina, the Defendant, **NELSON DURAN ESCOBAR, a/k/a "Macho,"** knowingly did possess a firearm in furtherance of a drug trafficking crime, which is prosecutable in a court of the United States;

In violation of Title 18, United States Code, Section 924(c)(1)(A).

## COUNT 4
(Possession with Intent to Distribute Oxycodone)

THE GRAND JURY FURTHER CHARGES:

That on or about April 30, 2019, in the District of South Carolina, the Defendant, **JAMEEL DARU ANDERSON, a/k/a "Who-Bang,"** knowingly, intentionally and unlawfully did possess with intent to distribute a quantity of oxycodone, a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 5
(Possession with Intent to Distribute Heroin)

THE GRAND JURY FURTHER CHARGES:

That on or about April 30, 2019, in the District of South Carolina, the Defendant, **JAMEEL DARU ANDERSON, a/k/a "Who-Bang,"** knowingly, intentionally and unlawfully did possess with intent to distribute a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 6
### (Possession with Intent to Distribute Fentanyl)

THE GRAND JURY FURTHER CHARGES:

That on or about April 30, 2019, in the District of South Carolina, the Defendant, **JAMEEL DARU ANDERSON**, **a/k/a "Who-Bang,"** knowingly, intentionally and unlawfully did possess with intent to distribute a quantity of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as "fentanyl"), a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 7
### (Possession of a Firearm in Furtherance of Drug Trafficking)

THE GRAND JURY FURTHER CHARGES:

That on or about April 30, 2019, in the District of South Carolina, the Defendant, **JAMEEL DARU ANDERSON**, **a/k/a "Who-Bang,"** knowingly did possess a firearm in furtherance of a drug trafficking crime, which is prosecutable in a court of the United States;

In violation of Title 18, United States Code, Section 924(c)(1)(A).

10

## COUNT 8
### (Felon in Possession of a Firearm)

THE GRAND JURY FURTHER CHARGES:

That on or about April 30, 2019, in the District of South Carolina, the Defendant, **JAMEEL DARU ANDERSON, a/k/a "Who-Bang,"** knowingly possessed a firearm and ammunition in and affecting commerce, to wit, a Springfield, model XD 40, .40 caliber pistol, .40 caliber ammunition, 5.56mm ammunition, 9mm ammunition, .357 caliber ammunition, and .45 caliber ammunition, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, and knowing that he had been convicted of such a crime;

In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 924(e).

## COUNT 9
### (Possession with Intent to Distribute and Distribution of Cocaine)

THE GRAND JURY FURTHER CHARGES:

That on or about May 1, 2019, in the District of South Carolina, the Defendant, **REGINALD KEITH FURGESS, a/k/a "Reggie," a/k/a "Fat Boy,"** knowingly, intentionally and unlawfully did possess with intent to distribute and did distribute a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

11

## COUNT 10
(Possession with Intent to Distribute and Distribution of Cocaine)

THE GRAND JURY FURTHER CHARGES:

That on or about May 7, 2019, in the District of South Carolina, the Defendant, **REGINALD KEITH FURGESS, a/k/a "Reggie," a/k/a "Fat Boy,"** knowingly, intentionally and unlawfully did possess with intent to distribute and did distribute a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 11
(Possession with Intent to Distribute and Distribution of Cocaine)

THE GRAND JURY FURTHER CHARGES:

That on or about May 15, 2019, in the District of South Carolina, the Defendant, **REGINALD KEITH FURGESS, a/k/a "Reggie," a/k/a "Fat Boy,"** knowingly, intentionally and unlawfully did possess with intent to distribute and did distribute a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

3:20-cr-00453-CRI   Date Filed 08/05/20   Entry Number 309   Page 13 of 35

## COUNT 12
(Possession with Intent to Distribute and Distribution of Cocaine Base)

THE GRAND JURY FURTHER CHARGES:

That on or about June 5, 2019, in the District of South Carolina, the Defendant,

**REGINALD KEITH FURGESS, a/k/a "Reggie," a/k/a "Fat Boy,"** knowingly, intentionally

and unlawfully did possess with intent to distribute and did distribute a quantity of a mixture or

substance containing a detectable amount of cocaine base (commonly known as "crack" cocaine),

a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 13
(Possession with Intent to Distribute and Distribution of Cocaine)

THE GRAND JURY FURTHER CHARGES:

That on or about July 30, 2019, in the District of South Carolina, the Defendant,

**ANTHONY CHARLES BRITT, a/k/a "Mallet," a/k/a "Amp," a/k/a "King Coke,"**

knowingly, intentionally and unlawfully did possess with intent to distribute and did distribute a

quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II

controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

13

## COUNT 14
### (Possession with Intent to Distribute Fentanyl)

THE GRAND JURY FURTHER CHARGES:

That on or about October 24, 2019, in the District of South Carolina, the Defendant,

**JAMEEL DARU ANDERSON, a/k/a "Who-Bang,"** knowingly, intentionally and unlawfully

did possess with intent to distribute a quantity of a mixture or substance containing a detectable

amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as

"fentanyl"), a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 15
### (Felon in Possession of Ammunition)

THE GRAND JURY FURTHER CHARGES:

That on or about October 24, 2019, in the District of South Carolina, the Defendant,

**JAMEEL DARU ANDERSON, a/k/a "Who-Bang,"** knowingly possessed ammunition in and

affecting commerce, to wit, .32 caliber ammunition, having previously been convicted of a crime

punishable by imprisonment for a term exceeding one year, and knowing that he had been

convicted of such a crime;

In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 924(e).

14

## COUNT 16
### (Possession with Intent to Distribute Cocaine)

THE GRAND JURY FURTHER CHARGES:

That on or about December 17, 2019, in the District of South Carolina, the Defendants, **MAURICE ANTWAIN LEACH, a/k/a "Blue"** and **WILLIE EDWARD SIMMONS, a/k/a "Hurt," a/k/a "Hurt Cee," a/k/a "Hurt Avenue,"** knowingly, intentionally and unlawfully did possess with intent to distribute a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, and did aid and abet each other in the commission of the aforesaid offense;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT 17
### (Possession of a Firearm in Furtherance of Drug Trafficking)

THE GRAND JURY FURTHER CHARGES:

That on or about December 17, 2019, in the District of South Carolina, the Defendant, **MAURICE ANTWAIN LEACH, a/k/a "Blue,"** knowingly did possess a firearm in furtherance of a drug trafficking crime, which is prosecutable in a court of the United States;

In violation of Title 18, United States Code, Section 924(c)(1)(A).

15

## COUNT 18
(Possession of a Firearm in Furtherance of Drug Trafficking)

THE GRAND JURY FURTHER CHARGES:

That on or about December 17, 2019, in the District of South Carolina, the Defendant,

**WILLIE EDWARD SIMMONS, a/k/a "Hurt," a/k/a "Hurt Cee," a/k/a "Hurt Avenue,"**

knowingly did possess a firearm in furtherance of a drug trafficking crime, which is prosecutable

in a court of the United States;

In violation of Title 18, United States Code, Section 924(c)(1)(A).

## COUNT 19
(Possession with Intent to Distribute Cocaine)

THE GRAND JURY FURTHER CHARGES:

That on or about December 17, 2019, in the District of South Carolina, the Defendant,

**JAMES MORRIS, a/k/a "Dollar,"** knowingly, intentionally and unlawfully did possess with

intent to distribute a quantity of a mixture or substance containing a detectable amount of cocaine,

a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 20
(Possession with Intent to Distribute Oxycodone)

THE GRAND JURY FURTHER CHARGES:

That on or about December 17, 2019, in the District of South Carolina, the Defendant,

**JAMES MORRIS, a/k/a "Dollar,"** knowingly, intentionally and unlawfully did possess with

intent to distribute a quantity of oxycodone, a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

16

## COUNT 21
(Felon in Possession of a Firearm)

THE GRAND JURY FURTHER CHARGES:

That on or about January 3, 2020, in the District of South Carolina, the Defendant,

**CHRISTOPHER DAQUAN MELTON, a/k/a "Gunner,"** knowingly possessed a firearm and

ammunition in and affecting commerce, to wit, a Taurus 9mm pistol and 9mm ammunition, having

previously been convicted of a crime punishable by imprisonment for a term exceeding one year,

and knowing that he had been convicted of such a crime;

In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 924(e).

## COUNT 22
(Possession with Intent to Distribute and Distribution of Cocaine Base)

THE GRAND JURY FURTHER CHARGES:

That on or about January 16, 2020, in the District of South Carolina, the Defendant,

**REGINALD KEITH FURGESS, a/k/a "Reggie," a/k/a "Fat Boy,"** knowingly, intentionally

and unlawfully did possess with intent to distribute and did distribute a quantity of a mixture or

substance containing a detectable amount of cocaine base (commonly known as "crack" cocaine),

a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

**COUNT 23**
(Felon in Possession of a Firearm)

THE GRAND JURY FURTHER CHARGES:

That on or about March 26, 2020, in the District of South Carolina, the Defendant, **ANTHONY CHARLES BRITT, a/k/a "Mallet," a/k/a "Amp," a/k/a "King Coke,"** knowingly possessed a firearm and ammunition in and affecting commerce, to wit, a Glock, model 22, .40 caliber pistol and .40 caliber ammunition, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, and knowing that he had been convicted of such a crime;

In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 924(e).

**COUNT 24**
(Felon in Possession of a Firearm)

THE GRAND JURY FURTHER CHARGES:

That on or about April 7, 2020, in the District of South Carolina, the Defendant, **CHRISTOPHER JAMES TAYLOR, a/k/a "Blink,"** knowingly possessed a firearm and ammunition in and affecting commerce, to wit, a Kel-Tec 9mm pistol and 9mm ammunition, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, and knowing that he had been convicted of such a crime;

In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 924(e).

**COUNT 25**
(Possession with Intent to Distribute Cocaine)

THE GRAND JURY FURTHER CHARGES:

That on or about April 7, 2020, in the District of South Carolina, the Defendant, **MAURICE ANTWAIN LEACH, a/k/a "Blue,"** knowingly, intentionally and unlawfully did possess with intent to distribute a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

**COUNT 26**
(Possession of a Firearm in Furtherance of Drug Trafficking)

THE GRAND JURY FURTHER CHARGES:

That on or about June 23, 2020, in the District of South Carolina, the Defendant, **CHRISTOPHER DAQUAN MELTON, a/k/a "Gunner,"** knowingly did possess a firearm in furtherance of a drug trafficking crime, which is prosecutable in a court of the United States;

In violation of Title 18, United States Code, Section 924(c)(1)(A).

**COUNT 27**
(Possession of a Firearm in Furtherance of Drug Trafficking)

THE GRAND JURY FURTHER CHARGES:

That on or about June 23, 2020, in the District of South Carolina, the Defendant, **NELSON DURAN ESCOBAR, a/k/a "Macho,"** knowingly did possess a firearm in furtherance of a drug trafficking crime, which is prosecutable in a court of the United States;

In violation of Title 18, United States Code, Section 924(c)(1)(A).

19

## COUNT 28
### (Possession of a Firearm in Furtherance of Drug Trafficking)

THE GRAND JURY FURTHER CHARGES:

That on or about June 23, 2020, in the District of South Carolina, the Defendant, **CHRISTOPHER JAMES TAYLOR, a/k/a "Blink,"** knowingly did possess a firearm in furtherance of a drug trafficking crime, which is prosecutable in a court of the United States;

In violation of Title 18, United States Code, Section 924(c)(1)(A).

## COUNT 29
### (Maintaining a Stash House)

THE GRAND JURY FURTHER CHARGES:

That from at least as early as January 2016, and continuing thereafter, up to and including the date of this Indictment, in the District of South Carolina and elsewhere, the Defendants, **NELSON DURAN ESCOBAR, a/k/a "Macho," MAURICE ANTWAIN LEACH, a/k/a "Blue,"** and others, as principals, as aiders and abettors and co-participants in jointly undertaken criminal activity, did knowingly open, lease, rent, use and maintain a place, that is, a building located at 215 O'Neil Court, Columbia, South Carolina, for the purpose of unlawfully manufacturing, storing and distributing controlled substances, that is, a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance;

In violation of Title 21, United States Code, Section 856(a)(1), and Title 18, United States Code, Section 2.

## COUNT 30
(Maintaining a Stash House)

THE GRAND JURY FURTHER CHARGES:

That from at least as early as January 2016, and continuing thereafter, up to and including the date of this Indictment, in the District of South Carolina and elsewhere, the Defendant, **MAURICE ANTWAIN LEACH, a/k/a "Blue," CHRISTOPHER DAQUAN MELTON, a/k/a "Gunner,"** and others, as principals, as aiders and abettors and co-participants in jointly undertaken criminal activity, did knowingly open, lease, rent, use and maintain a place, that is, a building located at 205 Camp Creek Drive, Elgin, South Carolina, for the purpose of unlawfully manufacturing, storing and distributing controlled substances, that is, a quantity of a mixture or substance containing a detectable amount of cocaine and cocaine base (commonly known as "crack" cocaine), both Schedule II controlled substances;

In violation of Title 21, United States Code, Section 856(a)(1), and Title 18, United States Code, Section 2.

21

## COUNT 31
(Maintaining a Stash House)

THE GRAND JURY FURTHER CHARGES:

That from at least as early as January 2016, and continuing thereafter, up to and including the date of this Indictment, in the District of South Carolina and elsewhere, the Defendant, **NELSON DURAN ESCOBAR, a/k/a "Macho,"** did knowingly open, lease, rent, use and maintain a place, that is, a building located at 49 Dovecreek, Columbia, South Carolina, for the purpose of unlawfully manufacturing, storing and distributing controlled substances, that is, a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance;

In violation of Title 21, United States Code, Section 856(a)(1).

## COUNT 32
(Maintaining a Stash House)

THE GRAND JURY FURTHER CHARGES:

That from at least as early as January 2016, and continuing thereafter, up to and including the date of this Indictment, in the District of South Carolina and elsewhere, the Defendant, **DEVONTE JABAR SIMON, a/k/a "Ammo,"** did knowingly open, lease, rent, use and maintain a place, that is, a building located at 101 Stoneybridge Road, Columbia, South Carolina, for the purpose of unlawfully manufacturing, storing and distributing controlled substances, that is, a quantity of a mixture or substance containing a detectable amount of cocaine and cocaine base (commonly known as "crack" cocaine), both Schedule II controlled substances;

In violation of Title 21, United States Code, Section 856(a)(1).

22

3:20-cr-00453-CRI    Date Filed 08/05/20    Entry Number 309    Page 23 of 35

## COUNT 33
(Maintaining a Stash House)

THE GRAND JURY FURTHER CHARGES:

That from at least as early as January 2016, and continuing thereafter, up to and including the date of this Indictment, in the District of South Carolina and elsewhere, the Defendant, **TOMMY NOVACK LLOYD, a/k/a "T-Lloyd,"** did knowingly open, lease, rent, use and maintain a place, that is, a building located at 4 Pinecroft Court, Columbia, South Carolina, for the purpose of unlawfully manufacturing, storing and distributing controlled substances, that is, a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance;

In violation of Title 21, United States Code, Section 856(a)(1).

## COUNT 34
(Maintaining a Stash House)

THE GRAND JURY FURTHER CHARGES:

That from at least as early as January 2016, and continuing thereafter, up to and including the date of this Indictment, in the District of South Carolina and elsewhere, the Defendant, **ANTHONY CHARLES BRITT, a/k/a "Mallet," a/k/a "Amp," a/k/a "King Coke,"** did knowingly open, lease, rent, use and maintain a place, that is, a building located at 101 Castle Ridge Drive, Columbia, South Carolina, for the purpose of unlawfully manufacturing, storing and distributing controlled substances, that is, a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance;

In violation of Title 21, United States Code, Section 856(a)(1).

23

## COUNT 35
(Maintaining a Stash House)

THE GRAND JURY FURTHER CHARGES:

That from at least as early as January 2016, and continuing thereafter, up to and including the date of this Indictment, in the District of South Carolina and elsewhere, the Defendant, **MAURICE ANTWAIN LEACH, a/k/a "Blue," CHRISTOPHER DAQUAN MELTON**, **a/k/a "Gunner,"** and others, as principals, as aiders and abettors and co-participants in jointly undertaken criminal activity, did knowingly open, lease, rent, use and maintain a place, that is, a building located at 303 Ferrell Drive, Columbia, South Carolina, for the purpose of unlawfully manufacturing, storing and distributing controlled substances, that is, a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance;

In violation of Title 21, United States Code, Section 856(a)(1), and Title 18, United States Code, Section 2.

24

## COUNT 36
(Maintaining a Stash House)

THE GRAND JURY FURTHER CHARGES:

That from at least as early as January 2016, and continuing thereafter, up to and including the date of this Indictment, in the District of South Carolina and elsewhere, the Defendant, **REGINALD KEITH FURGESS, a/k/a "Reggie," a/k/a "Fat Boy," ANTHONY CHARLES BRITT, a/k/a "Mallet," a/k/a "Amp," a/k/a "King Coke,"** and others, as principals, as aiders and abettors and co-participants in jointly undertaken criminal activity, did knowingly open, lease, rent, use and maintain a place, that is, a building located at 221 Redwood Court, Columbia, South Carolina, for the purpose of unlawfully manufacturing, storing and distributing controlled substances, that is, a quantity of a mixture or substance containing a detectable amount of cocaine and cocaine base (commonly known as "crack" cocaine), both Schedule II controlled substances;

In violation of Title 21, United States Code, Section 856(a)(1), and Title 18, United States Code, Section 2.

## COUNTS 37-47
### (Unlawful Use of a Communication Facility)

THE GRAND JURY FURTHER CHARGES:

That on or about the dates set forth below, in the District of South Carolina and elsewhere, the Defendants, as principals, as aiders and abettors and co-participants in jointly undertaken criminal activity, knowingly and intentionally did use a communication facility, to wit: a telephone, to facilitate the commission of a felony under the Controlled Substances Act, that is, conspiracy to possess with intent to distribute and distribution of cocaine, cocaine base (commonly known as "crack" cocaine) and oxycodone, all Schedule II controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 846; and maintaining a stash house in violation of Title 21, United States Code, Section 856(a)(1).

| COUNT | DATE | DEFENDANT(S) |
|---|---|---|
| 37 | October 24, 2019 | **MAURICE ANTWAIN LEACH,** a/k/a **"Blue"** and **WILLIE EDWARD SIMMONS,** a/k/a **"Hurt,"** a/k/a **"Hurt Cee,"** a/k/a **"Hurt Avenue"** |
| 38 | November 3, 2019 | **MAURICE ANTWAIN LEACH,** a/k/a **"Blue"** and **ASHLEY BRYON FISHER,** a/k/a **"Ponchie"** |
| 39 | November 12, 2019 | **ANTHONY CHARLES BRITT,** a/k/a **"Mallet,"** a/k/a **"Amp,"** a/k/a **"King Coke"** and **TOMMY NOVACK LLOYD,** a/k/a **"T-Lloyd"** |
| 40 | November 15, 2019 | **ANTHONY CHARLES BRITT,** a/k/a **"Mallet,"** a/k/a **"Amp,"** a/k/a **"King Coke"** and **ERIC TRAVAS COWAN** |
| 41 | November 16, 2019 | **MAURICE ANTWAIN LEACH,** a/k/a **"Blue"** and **DAVID LANARD BALLARD,** a/k/a **"Dave"** |
| 42 | November 28, 2019 | **MAURICE ANTWAIN LEACH,** a/k/a **"Blue"** and **JAMES MORRIS,** a/k/a **"Dollar"** |

| 43 | December 4, 2019 | MAURICE ANTWAIN LEACH, a/k/a "Blue" and NELSON DURAN ESCOBAR, a/k/a "Macho" |
| 44 | December 5, 2019 | DEVONTE JABAR SIMON, a/k/a "Ammo" |
| 45 | December 8, 2019 | MAURICE ANTWAIN LEACH, a/k/a "Blue" and JANIE ROBINSON, a/k/a "J" |
| 46 | December 15, 2019 | CHRISTOPHER DAQUAN MELTON, a/k/a "Gunner" |
| 47 | December 17, 2019 | CHRISTOPHER DAQUAN MELTON, a/k/a "Gunner" and JAMEEL DARU ANDERSON, a/k/a "Who-Bang" |

All in violation of Title 21, United States Code, Section 843(b), and Title 18, United States Code, Section 2.

27

## FORFEITURE

DRUG/FIREARM OFFENSES:

Upon conviction for one or more violations of Title 18 and Title 21, United States Code, as charged in this Indictment, the Defendants, **NELSON DURAN ESCOBAR, a/k/a "Macho," WILLIE EDWARD SIMMONS, a/k/a "Hurt," a/k/a "Hurt Cee," a/k/a "Hurt Avenue," DEVONTE JABAR SIMON, a/k/a "Ammo," MAURICE ANTWAIN LEACH, a/k/a "Blue," ANTHONY CHARLES BRITT, a/k/a "Mallet," a/k/a "Amp," a/k/a "King Coke," CHRISTOPHER DAQUAN MELTON, a/k/a "Gunner," JAMEEL DARU ANDERSON, a/k/a "Who-Bang," JAMES MORRIS, a/k/a "Dollar," DAVID LANARD BALLARD, a/k/a "Dave," ASHLEY BRYON FISHER, a/k/a "Ponchie," TRINETTE L. MELTON, a/k/a "Ma," a/k/a "Auntie," TOMMY NOVACK LLOYD, a/k/a "T-Lloyd," ERIC TRAVAS COWAN, REGINALD KEITH FURGESS, a/k/a "Reggie," a/k/a "Fat Boy," JANIE ROBINSON, a/k/a "J," and CHRISTOPHER JAMES TAYLOR, a/k/a "Blink,"** shall forfeit to the United States all of the Defendants' right, title and interest in and to any property, real and personal,

A.    constituting or derived from any proceeds the Defendants obtained, directly or indirectly, as the result of such violations of Title 21, United States Code, and all property traceable to such property;

B.    used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations of Title 21, United States Code;

C.    any firearms and ammunition (as defined in 18 U.S.C. § 921) –

(1)    used or intended to be used to facilitate the transportation, sale, receipt, possession or concealment of controlled substances or any proceeds traceable to such property;

28

(2)    involved in or used in any knowing violation of 18 U.S.C. §§ 922 and 924, or violation of any other criminal law of the United States, or intended to be used in a crime of violence.

MONEY LAUNDERING:

Upon conviction for violation of Title 18, United States Code, as charged in this Indictment, the Defendants, **MAURICE ANTWAIN LEACH, a/k/a "Blue," ANTHONY CHARLES BRITT, a/k/a "Mallet," a/k/a "Amp," a/k/a "King Coke," CHRISTOPHER DAQUAN MELTON, a/k/a "Gunner," TRINETTE L. MELTON, a/k/a "Ma," a/k/a "Auntie,"** and **REGINALD KEITH FURGESS, a/k/a "Reggie," a/k/a "Fat Boy,"** shall forfeit to the United States any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, as charged in the Indictment, or any property traceable to the offenses.

PROPERTY:

Pursuant to Title 18, United States Code, Sections 924(d)(1) and 982(a)(1); Title 21, United States Code, Sections 853 and 881; and Title 28, United States Code, Section 2461(c), the property which is subject to forfeiture upon conviction of the Defendants for offenses charged in this Indictment includes, but is not limited to, the following:

A.    Proceeds/Forfeiture Judgment:

A sum of money equal to all property the Defendants obtained as a result of the drug offenses charged in the Indictment, and all interest and proceeds traceable thereto as a result of their violations of 21 U.S.C. §§ 841, 843 and 846.

B.    Money Laundering/Forfeiture Judgment:

A sum of money equal to all property involved in the money laundering offenses charged in the Indictment, and all interest and proceeds traceable thereto as a result of their violations of 18 U.S.C. § 1956.

29

C.    Cash/United States Currency:

    1.    $2,000.00 in United States Currency
       Seized from: TOMMY LLOYD

    2.    $32,340.00 in U.S. Currency
       Seized from: Various locations at LEGACY CARIBBEAN BAR AND
       GRILL

    3.    $9,102.00 in U.S. Currency of which $8,300.00 was located in a safe
       and $802.00 located in a nightstand at 200 Wildwood Lane, Lugoff,
       SC
       Seized from: WILLIE SIMMONS, JR. AND MAURICE LEACH

    4.    $66,354.00 in U.S. Currency
       Seized from: CHRISTOPHER JAMES TAYLOR

D.    Jewelry:

    1.    Gold chain with gold and diamond cross pendant
       Seized from: NELSON ESCOBAR

    2.    Gold chain with pendant
       Seized from: DEVONTE SIMON

    3.    Gold chain with pendant
       Seized from: DEVONTE SIMON

    4.    Gold chain with pendant
       Seized from: DEVONTE SIMON

    5.    Rolex watch
       Seized from: DEVONTE SIMON

F.    Firearms:

1.    Glock, GMBH Model 22, .40 caliber pistol and magazine
Serial Number: CSS902
Seized from: CHRISTOPHER DAQUAN MELTON

2.    Smith & Wesson, Model M&P 40, .40 caliber pistol and magazine
Serial Number: LDZ0447
Seized from: CHRISTOPHER DAQUAN MELTON

3.    Taurus 9mm pistol with laser sight and magazine
Serial Number: TL059702
Seized from: CHRISTOPHER DAQUAN MELTON

4.    Glock, GMBH Model 21, .45 caliber and magazine
Serial Number: EKZ520
Seized from: MAURICE ANTWAIN LEACH

5.    Taurus, Model G2C, .40 caliber pistol and magazine
Serial Number: SMD47019
Seized from: MAURICE ANTWAIN LEACH

6.    Glock, GMBH Model 32, .357 pistol and magazine
Serial Number: KZ6072
Seized from: NELSON DURAN ESCOBAR

7.    Ruger, Model SR45, .45 caliber pistol
Serial Number: 380-61836
Seized from: NELSON DURAN ESCOBAR

8.    Remington Arms, Model 870, 12 gauge shotgun
Serial Number: RF06504A
Seized from: NELSON DURAN ESCOBAR

9.    Glock, GMBH Model 22, .40 caliber pistol and magazine
Serial Number: 1EUA628US
Seized from: ANTHONY CHARLES BRITT

31

10. Springfield Armory, Model XD40, .40 caliber with laser sight, holster, various ammunition, and magazine
Serial Number: US434744
Seized from: JAMEEL DARU ANDERSON

11. Taurus, G2C, .40 caliber pistol and magazine
Serial Number: SMD51069
Seized from: WILLIE EDWARD SIMMONS

12. Smith & Wesson, Model FNS-40, .40 caliber pistol and magazine
Serial Number: 6KU0128749
Seized from: WILLIE EDWARD SIMMONS

13. Kel Tec, Model P11, 9mm pistol and magazine
Serial Number: AAAR83
Seized from: CHRISTOPHER JAMES TAYLOR

14. Palmetto State Armory PA-15 300 caliber pistol
Serial Number: LW331796
Seized from: TOMMY LLOYD

15. FNH USA, LLC FNS-40 .40 caliber pistol
Serial Number: GKU0138156
Seized from: TOMMY LLOYD

16. Taurus PT138 .380 caliber pistol
Serial Number: KVK08681
Seized from: DAVID BALLARD

17. EA/R .357 Magnum revolver
Serial Number: 1700648
Seized from: CHRISTOPHER MELTON

18. Zastava / Century Arms Intl PAP M85 NP pistol
Serial Number: M85-NP004530
Seized from: WILLIE SIMMONS, JR. AND MAURICE LEACH

19. Century Arms International RAS47 .762 caliber pistol
Serial Number: RAS47017974
Seized from: WILLIE SIMMONS, JR. AND MAURICE LEACH

20. Smith & Wesson SW40VE .40 caliber pistol
    Serial Number: PDC1108
    Seized from: WILLIE SIMMONS, JR. AND MAURICE LEACH

21. Armi San Marco / Connecticut Valley Arms 20 gauge shotgun
    Serial Number: 0184080
    Seized from: WILLIE SIMMONS, JR. AND MAURICE LEACH

22. Mossberg 12 gauge shotgun
    Serial Number: R871961
    Seized from: WILLIE SIMMONS, JR. AND MAURICE LEACH

23. Remington 1100 12 gauge shotgun
    Serial Number: N416773V
    Seized from: WILLIE SIMMONS, JR. AND MAURICE LEACH

24. Taurus Judge .410 caliber pistol
    Serial Number: LX491688
    Seized from: WILLIE SIMMONS, JR. AND MAURICE LEACH

25. Glock 27 .40 caliber pistol
    Serial Number: BKSF095
    Seized from: LEGACY CARIBBEAN BAR AND GRILL

26. Smith & Wesson 36 .38 caliber revolver
    Serial Number: 78475
    Seized from: CHRISTOPHER JAMES TAYLOR

27. SCCY Industries LLC CPX-1 9mm pistol
    Serial Number: 517133
    Seized from: CHRISTOPHER JAMES TAYLOR

28. Anderson Manufacturing AM-15 pistol
    Serial Number: 18241630
    Seized from: CHRISTOPHER JAMES TAYLOR

29. Smith & Wesson SD40VE .40 caliber pistol
    Serial Number: FWR2736
    Seized from: CHRISTOPHER JAMES TAYLOR

30. Glock 22 .40 caliber pistol
Serial Number: SA2583
Seized from: DEVONTE SIMON

31. SCCY Industries LLC CPX-2 9mm pistol
Serial Number: 123986
Seized from: DEVONTE SIMON

32. HS Produkt Springfield Inc XDS .45 caliber pistol
Serial Number: 4128270
Seized from: NELSON ESCOBAR

G.    Magazines/Ammunition:

Miscellaneous rounds of ammunition and magazines

H.    Real Properties:

1.  221 Redwood Court
Columbia, SC 29223
Titled in the name of: Deborah F. Scott
Tax Map Number: 14211-06-07

2.  200 Wildwood Land
Lugoff, SC 29078
Titled in the names of: WILLIE EDWARD SIMMONS, a/k/a "Hurt,"
a/k/a "Hurt Cee," a/k/a "Hurt Avenue" and Roslyn L. Simmons
Tax Map Number: 295-20-00-006 S58

3.  101 Castle Ridge Drive
Columbia, SC 29229
Titled in the name of: Logan A. Nelson
Tax Map Number: 23008-03-49

4.  205 Camp Creek Road
Elgin, SC 29045
Titled in the name of: Ronald G. McCoy
Tax Map Number: 26006-02-05

5.  101 Stoneybridge Road
Columbia, SC 29223
Titled in the name of: Johnnie A. Bennett
Tax Map Number: 17213-06-05

6. 49 Dovecreek
   Columbia, SC 29229
   Titled in the name of: Tenese Q. Gunter
   Tax Map Number: R23105-09-19

7. 4 Pinecroft Court
   Columbia, SC 29229
   Titled in the name of: Abigail R. Glover
   Tax Map Number: TMS: 23111-1-23

SUBSTITUTION OF ASSETS:

If any of the property described above as being subject to forfeiture, as a result of any act

or omission of the Defendants:

      A.    cannot be located upon the exercise of due diligence;
      B.    has been transferred or sold to, or deposited with, a third person;
      C.    has been placed beyond the jurisdiction of the Court;
      D.    has been substantially diminished in value; or
      E.    has been commingled with other property which cannot be subdivided
           without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to seek

forfeiture of any other property of the Defendants up to an amount equivalent to the value of the

above-described forfeitable property;

Pursuant to Title 18, United States Code, Sections 924(d)(1) and 982(a)(1); Title 21, United

States Code, Sections 853 and 881; and Title 28, United States Code, Section 2461(c).

A     TRUE       Bill

FOREPERSON

PETER M. MCCOY, JR. (BBH/kr)
UNITED STATES ATTORNEY

RECORD OF GRAND JURY BALLOT

c/ 3:20-453

THE UNITED STATES OF AMERICA v. NELSON DURAN ESCOBAR, a/k/a "Macho", et al.

(SEALED UNTIL FURTHER ORDER OF THE COURT)

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
## for the
### District of South Carolina

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| **TOMMY NOVACK LLOYD** | )  Case No.   3:20-mj-57 |
| | ) |
| *Defendant* | ) |

## APPEARANCE BOND

### Defendant's Agreement

I, <u>TOMMY NOVACK LLOYD</u> *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( X )   to appear for court proceedings;
( X )   if convicted, to surrender to serve a sentence that the court may impose; or
( X )   to comply with all conditions of set forth in the Order Setting Conditions of Release.

### Type of Bond

( )  (1)  This is a personal recognizance bond.

( )  (2)  This is an unsecured bond of $ _____ .

(✓)  (3)  This is a secured bond of $ _50,000_____ , secured by:

( )  (a) $ _____ , in cash deposited with the court.

( )  (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value):*

_____.

If this bond is secured by real property, documents to protect the secured interest may be filed of record.

(✓)  (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety):*
_see attached_____

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.* This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

(1) all owners of the property securing this appearance bond are included on the bond;

(2) the property is not subject to claims, except as described above; and

(3) I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date:   7/9/2020

_____       _____
                                      *Defendant's signature*

Ned L. Polk sr
_____       _____
*Surety/property owner – printed name*       *Surety/property owner – signature and date*
                                      ATTY In Fact

_____       _____
*Surety/property owner – printed name*       *Surety/property owner – signature and date*

_____       _____
*Surety/property owner – printed name*       *Surety/property owner – signature and date*

CLERK OF COURT

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

Approved.

Date:  7/9/20

_____
*Judge's signature*

AO 199A (Rev. 12/11) Order Setting Conditions of Release                                    Page 1 of _____ Pages

# UNITED STATES DISTRICT COURT
### for the
### District of South Carolina

United States of America )
           v. )
            )   Case No.   3:20-mj-57
TOMMY NOVACK LLOYD )
      *Defendant* )

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1) The defendant must not violate federal, state, or local law while on release.

(2) The defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

(3) The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4) The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at: _____
                                          *Place*

on _____
                             *Date and Time*

If blank, defendant will be notified of next appearance.

(5) The defendant must sign an Appearance Bond, if ordered.

AO 199B  (Rev. 12/11)  Additional Conditions of Release                                          Page ____ of ____ Pages

# ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

(   ) (6)  The defendant is placed in the custody of:

         Person or organization _____

         Address *(only if above is an organization)* _____

         City and state _____ Tel. No. _____

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

                 Signed: _____        _____
                                 *Custodian*                            *Date*

( **X** ) (7)  The defendant must:

     ( **X** ) (a)  submit to supervision by and report for supervision to the  U.S Pretrial Services _____ ,
                  telephone number _____ , no later than _____ .

     (   ) (b)  continue or actively seek employment.

     (   ) (c)  continue or start an education program.

     ( **X** ) (d)  surrender any passport to:    USPO _____

     ( **X** ) (e)  not obtain a passport or other international travel document.

     ( **X** ) (f)  abide by the following restrictions on personal association, residence, or travel:   travel restricted to the State of SC without prior
              permission of the Court through Pretrial Services _____

     (   ) (g)  avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: _____

     (   ) (h)  get medical or psychiatric treatment: _____

     (   ) (i)  return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes: _____

     (   ) (j)  maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.

     ( **X** ) (k)  not possess a firearm, destructive device, or other weapon.

     (   ) (l)  not use alcohol (   ) at all (   ) excessively.

     (   ) (m)  not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

     (   ) (n)  submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

     (   ) (o)  participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.

     (   ) (p)  participate in one of the following location restriction programs and comply with its requirements as directed.
              (   ) (i)  **Curfew.** You are restricted to your residence every day (   ) from _____ to _____ , or (   ) as directed by the pretrial services office or supervising officer; or
              (   ) (ii)  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or
              (   ) (iii)  **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court.

     (   ) (q)  submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program requirements and instructions provided.
              (   ) You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or supervising officer.

     ( **X** ) (r)  report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

     ( **X** ) (s)  abide by national, state, and local guidelines and/or directives regarding social distancing, self-isolation, quarantine, curfew, etc. related to the coronavirus emergency. _____

     (   ) (t)  _____

AO 199C (Rev. 09/08) Advice of Penalties    Page _____ of _____ Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Defendant's Signature

Columbia, S.C.
_____
City and State

### Directions to the United States Marshal

( )  The defendant is ORDERED released after processing.

( X )  The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date:    7/9/2020    _____
Judicial Officer's Signature

PAIGE J. GOSSETT, U.S. MAGISTRATE JUDGE
*Printed name and title*

DISTRIBUTION:    COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

UNITED STATES OF AMERICA                Criminal No:3:20-cr-00453-JFA

v.

**PLEA AGREEMENT**

**TOMMY NOVACK LLOYD,**
**a/k/a "T-Lloyd"**

## General Provisions

This PLEA AGREEMENT is made this 27ᵗʰ day of MAY ,
2021, between the United States of America, as represented by
Acting United States Attorney M. RHETT DEHART, Assistant United
States Attorney Brandon B. Hinton; the Defendant, **TOMMY NOVACK**
**LLOYD, a/k/a "T-Lloyd"**, and Defendant's attorney, Stanley L.
Myers.

IN CONSIDERATION of the mutual promises made herein, the
parties agree as follows:

1.    The Defendant agrees to plead guilty to Count 1 of the
Superseding Indictment now pending.

2.    **Count 1** of the Indictment charges: "That beginning at a time
unknown to the Grand Jury, but beginning in at least January
2016, and continuing thereafter, up to and including the date
of this Superseding Indictment, in the District of South
Carolina and elsewhere, the Defendants, NELSON DURAN ESCOBAR,
a/k/a "Macho," WILLIE EDWARD SIMMONS, a/k/a "Hurt," a/k/a

1

3:20-cr-00453-JFA    Date Filed 05/27/21    Entry Number 758    Page 2 of 11

"Hurt Cee," a/k/a "Hurt Avenue," DEVONTE JABAR SIMON, a/k/a
"Ammo," MAURICE ANTWAIN LEACH, a/k/a "Blue," ANTHONY CHARLES
BRITT, a/k/a "Mallet," a/k/a "Amp," a/k/a "King Coke,"
CHRISTOPHER DAQUAN MELTON, a/k/a "Gunner," JAMEEL DARU
ANDERSON, a/k/a "Who-Bang," DAVID LANARD BALLARD, a/k/a
"Dave," ASHLEY BRYON FISHER, a/k/a "Ponchie," TRINETTE L.
MELTON, a/k/a "Ma," a/k/a "Auntie," **TOMMY NOVACK LLOYD, a/k/a**
**"T-Lloyd,"** ERIC TRAVAS COWAN, REGINALD KEITH FURGESS, a/k/a
"Reggie," a/k/a "Fat Boy", JANIE ROBINSON, a/k/a "J,"
CHRISTOPHER JAMES TAYLOR, a/k/a "Blink," and KEISHA NABRE
PRATT, a/k/a "Kee," knowingly and intentionally did
combine, conspire, agree, and have tacit understanding with
each other and with others, both known and unknown to the
Grand Jury, to possess with intent to distribute and to
distribute heroin, a Schedule I controlled substance, and
cocaine, cocaine base (commonly known as "crack" cocaine), N-
phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide
(commonly known as "fentanyl") and oxycodone, all Schedule II
controlled substances;

a. With respect to **TOMMY NOVACK LLOYD, a/k/a "T-Lloyd"**, the
   amount involved in the conspiracy attributable to him as
   a result of his own conduct, and the conduct of other
   conspirators reasonably foreseeable to him, is 500
   grams or more of a mixture or substance containing a

2

detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846.

3. The Government agrees to allow Defendant to plead guilty to the lesser included offense of Count 1. Specifically, the Government has agreed to allow Defendant to plead guilty to conspiracy to possess with the intent to distribute and to distribute less than 500 grams of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and 846.

4. In order to sustain its burden of proof, the Government is required to prove the following:

### Count 1

For the crime of conspiracy to possess with the intent to distribute less than 500 grams of a mixture or substance containing a detectable amount of in violation of 21 U.S.C. § 846, the United States must prove the following essential elements beyond a reasonable doubt:

1. There was an agreement between two or more people to possess with the intent to distribute and/or to distribute cocaine;

2. The Defendant knew of the conspiracy;

3. The Defendant knowingly and voluntarily became a part of the conspiracy;

4. And that the Defendant either:

3

Personally distributed or possessed with the intent to distribute less than 500 grams of a mixture or substance containing a detectable amount of cocaine; or

That it was foreseeable to the Defendant that members of the conspiracy would be distributing less than 500 grams of a mixture or substance containing a detectable amount of cocaine.

The penalty for this offense is:

**Cocaine**
21 USC 841(a)(1), (b)(1)(C)- in a case involving less than 500 grams of a mixture or substance containing a detectable amount of cocaine and no prior felony drug convictions - a maximum term of imprisonment of 20 years, no probation if death or serious bodily injury results, no parole, a fine of $1,000,000 and a term of supervised release of at least three (3) years in addition to any term of imprisonment, plus a special assessment of $100.

21 USC 841(a)(1), (b)(1)(C) - in a case involving less than 500 grams of a mixture or substance containing a detectable amount of cocaine and one or more prior felony drug convictions - a maximum term of imprisonment of 30 years, no probation if death or serious bodily injury results, no parole, a fine of $2,000,000 and a term of supervised release of at least six (6) years in addition to any term of imprisonment, plus a special assessment of $100.

5.   The Defendant understands and agrees that monetary penalties

[i.e., special assessments, restitution, fines and other

payments required under the sentence] imposed by the Court are

due and payable immediately and subject to enforcement by the

United States as civil judgments, pursuant to 18 USC § 3613.

In the event the Court imposes a schedule for payment of

restitution, the Defendant also understands that payments made

in accordance with installment schedules set by the Court are

minimum payments only and do not preclude the government from seeking to enforce the judgment against other assets of the Defendant at any time, as provided in 18 USC §§ 3612, 3613 and 3664(m). The Defendant further agrees to enter into the Bureau of Prisons Inmate Financial Repayment Program if sentenced to a term of incarceration with an unsatisfied monetary penalty. The Defendant further understands that any monetary penalty imposed is not dischargeable in bankruptcy.

    A.    Special Assessment: Pursuant to 18 U.S.C. §3013, the Defendant must pay a special assessment of $100.00 for each felony count for which he is convicted. This special assessment must be paid at or before the time of the guilty plea hearing or during participation in the Bureau of Prisons Inmate Financial Repayment Program if this plea results in incarceration.

    B.    Fines: The Defendant understands that the Court may impose a fine pursuant to 18 U.S.C. §§ 3571 and 3572.

6.    Provided the Defendant complies with all the terms of this Agreement, the United States agrees to move to dismiss the remaining counts of the Indictment at sentencing. The Defendant understands that the Court may consider these dismissed counts as relevant conduct pursuant to §1B1.3 of the United States Sentencing Guidelines.

7.    The Defendant understands that the obligations of the Government within the Plea Agreement are expressly contingent upon the Defendant's abiding by federal and state laws and

5

0068

complying with any bond executed in this case.  In the event that the Defendant fails to comply with any of the provisions of this Agreement, either express or implied, the Government will have the right, at its sole election, to void all of its obligations under this Agreement and the Defendant will not have any right to withdraw his/her plea of guilty to the offense(s) enumerated herein.

### Forfeiture

8.  The Defendant agrees to voluntarily surrender to, and not to contest the forfeiture of any and all assets and property, or portions thereof, which are subject to forfeiture pursuant to any provision of law, including but not limited to, property in the possession or control of the Defendant or Defendant's nominees. Specifically, the Defendant agrees to voluntarily surrender, and not contest the forfeiture of property identified in the Indictment, and any forfeiture Bill of Particulars.

9.  With regard to each and every asset listed in the Indictment or seized in a related investigation or administrative, state, or local action, the Defendant stipulates and agrees:

> The Defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The Defendant also hereby agrees to waive all constitutional, statutory and procedural challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with

this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

To its forfeiture herein, if necessary as substitute property under 21 U.S.C. § 853(p), as made applicable by 18 U.S.C. § 982(b)(1) or any other statute, or in a separate administrative or civil judicial proceeding.

That the Defendant has or had a possessory interest or other legal interest in each item or property.

To assist the United States in the recovery of all assets by (i) taking whatever steps are necessary or requested by the United States to pass clear title to the United States; (ii) preventing the disbursement of any moneys and sale of any property or assets; (iii) not encumbering or transferring any real estate after the Defendant's signing of this Plea Agreement; and (iv) directing all financial institutions to turn over and surrender to the United States all funds and records regarding accounts listed in any document signed by the Defendant pursuant to this plea agreement, as criminal proceeds or substitute property.

The Defendant waives all rights to notice of forfeiture under Rule 32.2 and of any other action or proceeding regarding such assets. The Defendant consents and waives all rights to compliance by the United States with any applicable deadlines under 18 U.S.C. § 983(a). Any related administrative claim filed by the Defendant is hereby withdrawn.

Pursuant to Rule 32.2(b)(4), the Defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the Defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the Defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

If the United States discovers that the Defendant has not fully disclosed all assets, the United States may seek forfeiture of any subsequently-discovered assets, and the Defendant agrees to the immediate forfeiture of any such assets.

The Defendant further agrees to make a full and complete disclosure of all assets over which Defendant exercises control and those which are held or controlled by nominees. The Defendant agrees that Federal Rule of Criminal Procedure 11 and U.S.S.G. § 1B1.8 will not protect from forfeiture, assets disclosed by the Defendant as part of his/her cooperation. The Defendant further agrees to submit to a polygraph examination on the issue of assets if it is deemed necessary by the United States.

The Defendant agrees to waive any double jeopardy claims the Defendant may have as a result of a forfeiture proceeding against any of these properties as provided for by this Plea Agreement and agrees to waive any claims that the forfeiture described herein constitutes an excessive fine.

Forfeiture of the Defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the Defendant in addition to forfeiture. The United States may use the value of forfeited property for restitution, but is not required to do so.

10. The Defendant agrees to voluntarily abandon all right, title, interest and claim in the property listed in the indictment.

11. The Defendant also agrees to voluntarily transfer all right, title, interest and claim in the above-described property and/or assets to the United States of America. Furthermore, the Defendant attests, under penalty of perjury, that the Defendant owns the above-described property and/or assets free of any liens and encumbrances, and that no other person or entity has a claim to the above-described property and/or assets.

8

**Merger and Other Provisions**

12.   The Defendant represents to the court that he/she has met with
his attorney on a sufficient number of occasions and for a
sufficient period of time to discuss the Defendant's case and
receive advice; that the Defendant has been truthful with
his/her attorney and related all information of which the
Defendant is aware pertaining to the case; that the Defendant
and his attorney have discussed possible defenses, if any, to
the charges in the Indictment including the existence of any
exculpatory or favorable evidence or witnesses, discussed the
Defendant's right to a public trial by jury or by the Court,
the right to the assistance of counsel throughout the
proceedings, the right to call witnesses in the Defendant's
behalf and compel their attendance at trial by subpoena, the
right to confront and cross-examine the Government's
witnesses, the Defendant's right to testify in his own behalf,
or to remain silent and have no adverse inferences drawn from
his/her silence; and that the Defendant, with the advice of
counsel, has weighed the relative benefits of a trial by jury
or by the Court versus a plea of guilty pursuant to this
Agreement, and has entered this Agreement as a matter of the
Defendant's free and voluntary choice, and not as a result of
pressure or intimidation by any person.

13. The Defendant is aware that 18 U.S.C. § 3742 and 28 U.S.C. § 2255 afford every defendant certain rights to contest a conviction and/or sentence. Acknowledging those rights, the Defendant, in exchange for the concessions made by the Government in this Plea Agreement, waives the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under 28 U.S.C. § 2255. This waiver does not apply to claims of ineffective assistance of counsel, prosecutorial misconduct, or future changes in the law that affect the defendant's sentence. This agreement does not affect the rights or obligations of the Government as set forth in 18 U.S.C. § 3742(b). Nor does it limit the Government in its comments in or responses to any post-sentencing matters.

14. The Defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

15. The parties hereby agree that this Plea Agreement contains the entire agreement of the parties; that this Agreement supersedes all prior promises, representations and statements

of the parties; that this Agreement shall not be binding on any party until the Defendant tenders a plea of guilty to the court having jurisdiction over this matter; that this Agreement may be modified only in writing signed by all parties; and that any and all other promises, representations and statements, whether made prior to, contemporaneous with or after this Agreement, are null and void.

5/27/21
Date

Tommy Novack Lloyd, a/k/a "T-Lloyd"
Defendant

5/27/2021
Date

Stanley L. Myers, Esq.
Defense Attorney

M. RHETT DEHART
ACTING UNITED STATES ATTORNEY

5/27/2021
Date

Brandon B. Hinton / Brandon B. Hinton

Brandon B. Hinton (Fed. ID # 13186)
Assistant United States Attorney

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

**UNITED STATES OF AMERICA**

**VS**                                  **CR NO. 3:20-453**

**TOMMY NOVACK LLOYD**

## PLEA

The defendant, **TOMMY NOVACK LLOYD**, having withdrawn his plea of Not Guilty

entered 12/28/20, pleads **GUILTY** to Count **1** of the **Superseding Indictment** after arraignment

in open court.

(Signed) Defendant

Columbia, South Carolina
June 7, 2021

1

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF SOUTH CAROLINA
 2                     COLUMBIA DIVISION


 3
    UNITED STATES OF AMERICA,      )
 4                                 )
            Plaintiff,             )  Docket No. 3:20-cr-453
 5                                 )
            vs.                    )  Columbia, SC
 6                                 )
                                   )
 7  NELSON DURAN ESCOBAR,          )
    CHRISTOPHER DAQUAN MELTON,     )
 8  ANTHONY CHARLES BRITT,         )
    and TOMMY NOVACK LLOYD,        )
 9                                 )
            Defendant.             )
10  _____)  DATE:  June 7, 2021

11

12        BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.
            UNITED STATES DISTRICT JUDGE, PRESIDING
13                     PLEA HEARING

14

15  A P P E A R A N C E S:

16
    For the Plaintiff:
17
    Brandon Batson Hinton
18  U.S. Attorneys Office
    55 Beattie Place
19  Suite 700
    Greenville, SC 29601
20

21

22  COURT REPORTER:              KAREN V. ANDERSEN, RMR, CRR
                                 United States Court Reporter
23                               901 Richland Street
                                 Columbia, SC  29201
24

25
```

```
1   A P P E A R A N C E S:

2   For the Defendant, Nelson Duran Escobar:

3   Elizabeth Anne Franklin-Best
    2725 Devine Street
4   Columbia, SC 29205

5

    For the Defendant, Christopher Daquan Melton:
6
    Jonathan Matthew Harvey
7   1701 Richland Street
    Columbia, SC 29201
8

9   For the Defendant, Anthony Charles Britt:

10  Jonathan M. Milling
    2910 Devine Street
11  Columbia, SC 29205

12
    For the Defendant, Tommy Novack Lloyd:
13
    Stanley L. Myers
14  1700 Sunset Boulevard
    West Columbia, SC 29171
15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Ms. Hinton, call the first case this

2     morning.

3          MS. HINTON:  May it please the Court, Your Honor.

4     Matters before you today are in Case No. 3:20-453, United

5     States of America v. Nelson Escobar, who is represented by

6     Elizabeth Franklin-Best; Anthony Britt, represented by

7     Jonathan Milling; Christopher Melton, represented by Jonathan

8     Harvey; and Tommy Lloyd, who is represented by Stanley Myers.

9     Each is here for a change of plea hearing.

10          THE COURT:  Let me put this on the record.  Pursuant

11     to Rule 5F of the Federal Rules of Criminal Procedure, the

12     United States is ordered to produce all exculpatory evidence

13     to the defendant pursuant to *Brady v. Maryland* and its

14     progeny.  Not doing so in a timely manner may result in

15     sanctions, including the exclusion of evidence, adverse jury

16     instructions, dismissal of charges, and contempt proceedings.

17     A written order will be entered to this effect.

18          All right.  Let me be sure I've got the defendants

19     lined up in the same order I have in my file here.  On the

20     far right, we have Nelson Durant Escobar; is that correct?

21          MR. ESCOBAR:  Yes, sir.

22          THE COURT:  I understand you want to plead guilty to

23     a lesser-included offense in Count 1 of the indictment

24     against you; is that correct?

25          MR. ESCOBAR:  Yes, sir.

4

```
 1              THE COURT:  And when I say lesser-included offense,
 2    what I mean is the Government is going to stipulate to a
 3    lower drug quantity to be attributed to you for sentencing
 4    purposes.  Do you understand that?
 5              MR. ESCOBAR:  Yes, sir.
 6              THE COURT:  You are represented by Elizabeth
 7    Franklin-Best?
 8              MR. ESCOBAR:  Yes, sir.
 9              THE COURT:  Next to him is Anthony Charles Britt.
10    Mr. Britt is represented by Jonathan Milling.  And, Mr.
11    Britt, I'm informed that you want to plead guilty to Count 1
12    and Count 23 of the indictment against you; is that correct?
13              MR. BRITT:  Yes, sir.
14              THE COURT:  Next to him is Christopher Durand
15    Melton -- Daquan Melton, I'm sorry, represented by Jonathan
16    Harvey.  Mr. Melton, I'm informed that you want to plead
17    guilty to Count 1 of the indictment pending against you; is
18    that correct?
19              MR. MELTON:  Yes, sir.
20              THE COURT:  And then finally, Mr. Tommy Novak Lloyd,
21    represented by attorney Stanley Myers.  I'm informed that you
22    want to plead guilty to a lesser-included offense on Count 1
23    of the indictment against you; is that correct?
24              MR. LLOYD:  Yes, sir.
25              THE COURT:  Let me say to all four of you, before I
```

5

```
 1    could accept a guilty plea from you, I have to ask you a
 2    series of questions to make sure your plea is being made
 3    freely and voluntarily.  That means that if you don't
 4    understand any of my questions or any of the words that I
 5    use, you should tell me so that I can stop and go over it
 6    with you a second time.
 7            Also, if at any time during this proceeding you need
 8    to stop and confer with your attorney, if you will just give
 9    me a signal, I will be glad to take a recess and let you
10    confer with counsel.
11            Do you understand all that, Mr. Escobar?
12            MR. ESCOBAR:  Yes, sir.
13            THE COURT:  Do you understand that, Mr. Britt?
14            MR. BRITT:  Yes, sir.
15            THE COURT:  Do you understand all that, Mr. Melton?
16            MR. MELTON:  Yes, sir.
17            THE COURT: And do you understand all that,
18    Mr. Lloyd?
19            MR. LLOYD:  Yes, sir.
20            THE COURT:  The clerk will please administer the
21    oath to the defendants.
22                  Whereupon the defendants,
23            having been duly sworn, testify as follows:
24            THE COURT:  All right.  All four of you have now
25    taken an oath promising to tell the truth.  And that means
```

6

1    that all of your answers to all of my questions must be

2    entirely truthful.  If they are not, you could be charged

3    with an additional crime of perjury or making a false

4    statement to a federal official.

5             Do you understand that, Mr. Escobar?

6             MR. ESCOBAR:  Yes, sir.

7             THE COURT:  Mr. Britt?

8             MR. BRITT:  Yes, sir.

9             THE COURT:  Mr. Melton?

10            MR. MELTON:  Yes, sir.

11            THE COURT:  Mr. Lloyd?

12            MR. LLOYD:  Yes, sir.

13            THE COURT:  All right.  Let me get some basic

14   background information from each of you.

15            First of all, with Mr. Escobar, how old are you,

16   sir?

17            MR. ESCOBAR:  38.

18            THE COURT:  How far did you go in school?

19            MR. ESCOBAR:  11th grade.

20            THE COURT:  Are you currently under the influence of

21   any drug, medicine, or alcohol?

22            MR. ESCOBAR:  No, sir.

23            THE COURT:  Do you understand what's happening here

24   in court today?

25            MR. ESCOBAR:  Yes, sir.

7

```
1              THE COURT:  Ms. Franklin-Best, do you have any
2    concerns or reservations about your client's competency?
3              MS. FRANKLIN-BEST:  I do not, Your Honor.
4              THE COURT:  Very good.
5              Mr. Britt, how old are you?
6              MR. BRITT:  32.
7              THE COURT:  How far did you go in school?
8              MR. BRITT:  11th grade.
9              THE COURT:  Are you currently under the influence of
10   any drug, medicine, or alcohol?
11             MR. BRITT:  No, sir.
12             THE COURT:  Have you ever been treated for mental
13   illness or narcotics addiction?
14             MR. BRITT:  No, sir.
15             THE COURT:  Do you understand what's happening here
16   in court this morning?
17             MR. BRITT:  Yes, sir.
18             THE COURT:  All right.  Mr. Milling, do you have any
19   question about competency of your client?
20             MR. MILLING:  I don't, Your Honor.
21             THE COURT:  Mr. Melton, how old are you?
22             MR. MELTON:  28.
23             THE COURT:  How far did you go in school?
24             MR. MELTON:  Some college.
25             THE COURT:  Some college?
```

8

```
 1              MR. MELTON:  Yes, sir.
 2              THE COURT:  Are you currently under the influence of
 3    any drug, medicine, or alcohol?
 4              MR. MELTON:  No, sir.
 5              THE COURT:  Have you ever been treated for mental
 6    illness or narcotics addiction?
 7              MR. MELTON:  No, sir.
 8              THE COURT:  Do you understand what's happening here
 9    in court this morning?
10              MR. MELTON:  Yes, sir.
11              THE COURT:  Mr. Harvey, do you have any reservations
12    or concerns about the competency of your client?
13              MR. HARVEY:  No, Your Honor.
14              THE COURT:  All right.
15              And then, Mr. Lloyd, finally, how old are you, sir?
16              MR. LLOYD:  42.
17              THE COURT:  How far did you go in school?
18              MR. LLOYD:  Got a bachelor's of science.
19              THE COURT:  Are you currently under the influence of
20    any drug, medicine, or alcohol?
21              MR. LLOYD:  No, sir.
22              THE COURT:  Have you ever been treated for mental
23    illness or narcotics addiction?
24              MR. LLOYD:  No, sir.
25              THE COURT:  Do you understand what's happening here
```

9

```
1    in court this morning?
2              MR. LLOYD:  Yes, sir.
3              THE COURT:  Mr. Myers, do you have any concerns
4    about the competency of Mr. Lloyd?
5              MR. MYERS:  No, sir.
6              THE COURT:  Does the Government have any
7    reservations about competency on any of these four
8    defendants?
9              MS. FRANKLIN-BEST:  No, Your Honor.
10             THE COURT:  After conducting required colloquy and
11   hearing from counsel, I find for the record all four
12   defendants before me are competent to plead to these charges.
13   Let me ask each of you about your relationship with your
14   attorney.  Have you each had an ample opportunity to discuss
15   your case with your attorney?
16             Mr. Escobar?
17             MR. ESCOBAR:  Yes, sir.
18             THE COURT:  Mr. Britt?
19             MR. BRITT:  Yes, sir.
20             THE COURT:  Mr. Melton?
21             MR. MELTON:  Yes, sir.
22             THE COURT:  Mr. Lloyd?
23             MR. LLOYD:  Yes, sir.
24             THE COURT:  Are you satisfied with your attorney's
25   representations?
```

1             Mr. Escobar?

2             MR. ESCOBAR:  Yes, sir.

3             THE COURT:  Mr. Britt?

4             MR. BRITT:  Yes, sir.

5             THE COURT:  Mr. Melton?

6             MR. MELTON:  Yes, sir.

7             THE COURT:  Mr. Lloyd?

8             MR. LLOYD:  Yes, sir.

9             THE COURT:  Has your attorney done everything you

10    asked him to do for you?

11            MR. ESCOBAR:  Yes, sir.

12            THE COURT:  Mr. Britt?

13            MR. BRITT:  Yes, sir.

14            THE COURT:  Mr. Melton?

15            MR. MELTON:  Yes, sir.

16            THE COURT:  Mr. Lloyd?

17            MR. LLOYD:  Yes, sir.

18            THE COURT:  Is there anything that you need for your

19    attorney to do for you at this time before we proceed any

20    further this morning?

21            Mr. Escobar, is there?

22            MR. ESCOBAR:  No, sir.

23            THE COURT:  Mr. Britt?

24            MR. BRITT:  No, sir.

25            THE COURT:  Mr. Melton.

1          MR. MELTON:  No, sir.

2          THE COURT:  Mr. Lloyd?

3          MR. LLOYD:  No, sir.

4          THE COURT:  All right.  As you can see, the process

5     of taking a guilty plea is an individualized process.  Each

6     of your cases stands on its own.  But you are all charged in

7     the same case and pleading basically to the same count of the

8     indictment.  So I have started this process collectively

9     where we ask a question one time and then go down in order of

10    the four defendants to get an answer from each of you.  You

11    see how the process works.  I want to pause at this time to

12    emphasize to you that your case is totally separate from that

13    of any other co-defendant.  And so you need to listen to my

14    questions very carefully and give me a response as it

15    pertains to you personally.

16          This is not a group project.  And you should not

17    feel compelled to answer any of my questions the way that

18    another defendant sitting beside you has answered that same

19    question because his situation may be different.

20          With that understanding, let me ask you, all of you,

21    do each of you understand that under the Constitution and

22    laws of the United States, you have an absolute right to

23    plead not guilty to the charges pending against you.  And if

24    you decided to plead not guilty, you would be entitled to a

25    jury trial, trial before a jury on these charges.

1           Mr. Escobar, do you understand that?

2           MR. ESCOBAR:  Yes, sir.

3           THE COURT:  Mr. Britt?

4           MR. BRITT:  Yes, sir.

5           THE COURT:  Mr. Melton?

6           MR. MELTON:  Yes, sir.

7           THE COURT:  Mr. Lloyd?

8           MR. LLOYD:  Yes, sir.

9           THE COURT:  If you decided to plead not guilty and

10   to request a jury trial, you would also be entitled to a

11   number of procedural rights or procedural protections as a

12   defendant in court.  I want to go over these rights with you

13   so that you will have a clear understanding of what rights

14   you possess and what you will give up if you plead guilty.

15           If you requested a trial by pleading not guilty,

16   first of all, at that trial, you would have the right to

17   assistance of counsel for your defense appointed by the

18   Court, if necessary at trial and at every critical stage of

19   the proceeding against you.

20           At a trial you would be presumed to be innocent.

21   And the Government would be required to prove you guilty by

22   competent evidence and beyond a reasonable doubt before you

23   could be found guilty.  And you would not have to prove that

24   you were innocent.

25           At a trial, the witnesses for the Government would

13

1   have to come into court and testify in your presence.  And

2   your attorney could cross-examine the witnesses for the

3   Government.  Your attorney could object to evidence offered

4   by the Government.  And your attorney could offer evidence on

5   your behalf.

6         At a trial you would have the right to take the

7   witness stand and testify if you chose to do so.  But you

8   would also have the right not to testify.  And if you decided

9   not to testify, I would inform the jury that no inference or

10  suggestion of guilt could be drawn from the fact that you did

11  not testify.  In other words, I will tell the jury that they

12  cannot hold it against you in any way if you decided not to

13  testify.

14        And, finally, at a trial you would have the right to

15  have the Court issue subpoenas to compel the attendance of

16  witnesses that you wish to have brought in to testify in your

17  case.

18        Now, do each of you understand these rights I have

19  just outlined for you?

20        Mr. Escobar?

21        MR. ESCOBAR:  Yes, sir.

22        THE COURT:  Mr. Britt?

23        MR. BRITT:  Yes, sir.

24        THE COURT:  Mr. Melton?

25        MR. MELTON:  Yes, sir.

```
1              THE COURT:  Mr. Lloyd?

2              MR. LLOYD:  Yes, sir.

3              THE COURT:  All right.  Do you each understand that

4    if you plead guilty, you will have to give up your right to a

5    jury trial and all the other rights I've just listed for you,

6    there will be no trial in your case, and I will enter a

7    judgment of guilty and sentence you on the basis of your

8    guilty plea alone.

9              Do you understand that, Mr. Escobar?

10             MR. ESCOBAR:  Yes, sir.

11             THE COURT:  Mr. Britt?

12             MR. BRITT:  Yes, sir.

13             THE COURT:  Mr. Melton?

14             MR. MELTON:  Yes, sir.

15             THE COURT:  Mr. Lloyd?

16             MR. LLOYD:  Yes, sir.

17             THE COURT:  All right.  Do you understand also that

18   if you plead guilty, you will have to give up your right not

19   to incriminate yourself, since I will ask you questions about

20   what you did in order to satisfy myself that you are guilty,

21   and you will have to acknowledge your guilt under oath here

22   in the courtroom.

23             Do you understand all that, Mr. Escobar?

24             MR. ESCOBAR:  Yes, sir.

25             THE COURT:  Mr. Britt?
```

```
1              MR. BRITT:  Yes, sir.

2              THE COURT:  Mr. Melton?

3              MR. MELTON:  Yes, sir.

4              THE COURT:  Mr. Lloyd?

5              MR. LLOYD:  Yes, sir.

6              THE COURT:  All right.  Do you understand that the

7    offenses to which you are pleading guilty is a felony

8    offense, and that if your plea is accepted, you may be

9    deprived of valuable civil rights, such as the right to vote,

10   hold public office, serve on a jury, or possess any kind of

11   firearm.

12             Do you understand that, Mr. Melton?

13             MR. MELTON:  Yes, sir.

14             THE COURT:  Mr. Britt?

15             MR. BRITT:  Yes, sir.

16             I'm sorry, Mr. Escobar?

17             MR. ESCOBAR:  Yes, sir.

18             THE COURT:  Mr. Britt?

19             MR. BRITT:  Yes, sir.

20             THE COURT:  Mr. Melton?

21             MR. MELTON:  Yes, sir.

22             THE COURT:  Mr. Lloyd?

23             MR. LLOYD:  Yes, sir.

24             THE COURT:  Do you understand that if you plead

25   guilty and I accept your plea, you may be ordered to forfeit
```

16

```
 1   certain property to the United States Government?
 2          Mr. Escobar?
 3          MR. ESCOBAR:  Yes, sir.
 4          THE COURT:  Mr. Britt?
 5          MR. BRITT:  Yes, sir.
 6          THE COURT:  Mr. Melton?
 7          MR. MELTON:  Yes, sir.
 8          THE COURT:  Mr. Lloyd?
 9          MR. LLOYD:  Yes, sir.
10          THE COURT:  Now, that I discussed -- first of all,
11   do we have any deportation issues with regard to any of these
12   four defendants?
13          MS. FRANKLIN-BEST:  No, Your Honor.
14          THE COURT:  Now that I discussed your rights with
15   you, do you still want to plead guilty?
16          Mr. Escobar?
17          MR. ESCOBAR:  Yes, sir.
18          THE COURT:  Mr. Britt?
19          MR. BRITT:  Yes, sir.
20          THE COURT:  Mr. Melton?
21          MR. MELTON:  Yes, sir.
22          THE COURT:  Mr. Lloyd?
23          MR. LLOYD:  Yes, sir.
24          THE COURT:  All right.  We now turn to the charges
25   against you.  And since all of you are pleading guilty to
```

1    Count 1 in some respect, I want to tell you generally about

2    the essence of a criminal conspiracy.  For your information,

3    a criminal conspiracy is an agreement or a mutual

4    understanding knowingly made or knowingly entered into by at

5    least two people to violate the law by some joint or common

6    plan or course of action.  A conspiracy is in a very true

7    sense a partnership in crime.

8            Now, with that understanding, we will proceed to

9    look at these specific charges contained in Count 1 of the

10   indictment.  As I said, Count 1 charges all of you, all four

11   you, along with 12 other individuals, with being a member of

12   a drug-related conspiracy.  Specifically, Count 1 charges

13   that beginning at a time unknown to the grand jury but

14   beginning at least in January of 2016 and continuing

15   thereafter, up to and including the date of the superseding

16   indictment in the District of South Carolina and elsewhere,

17   all four of you, along with 12 other individuals who were

18   named, knowingly and intentionally did combine, conspire,

19   agree, and have a tacit understanding with each other and

20   others, both known and unknown to the grand jury, to possess

21   with intent to distribute and distribute heroin, which is a

22   Schedule I controlled substance, and cocaine, and cocaine

23   base, commonly known as crack cocaine, which is -- both of

24   which are Schedule II control substances, and a chemical

25   whose chemical name is in the indictment, which is commonly

1  known as Fentanyl, and oxycodone, both of which are Schedule

2  II controlled substances.  So to begin with, Count 1 charges

3  all four of you with all of these controlled substances.

4         Now we are going to get into some subparagraphs

5  later that have different amounts and different controlled

6  substance for each of you.

7         And specifically, first focusing on Mr. Escobar,

8  subparagraph (a) of Count 1 charges that with respect to

9  Nelson Durand Escobar, the amount involved in the conspiracy

10  attributable to him as a result of his own conduct and the

11  conduct of other conspirators reasonably foreseeable to him

12  is 5 kilograms or more of a mixture or substance containing a

13  detectable amount of cocaine, and a quantity of a mixture or

14  substance containing a detectable amount of Fentanyl, in

15  violation of federal law.

16         Do you understand that charge against you, Mr.

17  Escobar?

18         MS. FRANKLIN-BEST:  Your Honor, there's a

19  clarification in the plea agreement.  He's being allowed to

20  plead guilty to the conspiracy to possess with intent to

21  distribute 5 kilograms of cocaine but not the Fentanyl.

22         THE COURT:  Right.  That's the lesser-included.

23         So, Mr. Escobar, although Count 1A charges you with

24  both Fentanyl and cocaine, I told you earlier, the Government

25  is allowing you plead guilty to a lesser-included offense.

19

```
 1    So all you are offering to plead to today is the cocaine

 2    aspect of the charge in Count 1.  Do you understand that?

 3            MR. ESCOBAR:  Yes, sir.

 4            THE COURT:  All right.  Then moving on to Mr. Britt,

 5    we go to subparagraph (e) in Count 1, which charges with

 6    respect to Charles Anthony Britt, the amount involved in the

 7    conspiracy attributable to him as a result of his own conduct

 8    and the conduct of other conspirators reasonably foreseeable

 9    to him is 5 kilograms or more of a mixture or substance

10    containing a detectable amount of cocaine, and 280 grams or

11    more of a mixture or substance containing a detectable amount

12    of cocaine base, in violation of federal law.

13            Do you understand that charge against you in Count 1

14    and the subparagraph (e), Mr. Britt?

15            MR. BRITT:  Yes, sir.

16            THE COURT:  All right.  Moving on then to Mr.

17    Melton, we go to paragraph 1F, which charges with regard to

18    Christopher Daquan Melton, the amount involved in the

19    conspiracy attributable to him as a result of his own conduct

20    and the conduct of other conspirators reasonably foreseeable

21    to him is 5 kilogram or more of a mixture or substance

22    containing a detectable amount of cocaine and a quantity of

23    oxycodone in violation of federal law.

24            Do you understand that charge against you in Count

25    1, Mr. Melton?
```

1           MR. MELTON:  Yes, sir.

2           THE COURT:  And then finally we come to Mr. Lloyd,

3   which takes us down to paragraph 1(l), which charges with

4   respect to Tommy Novak Lloyd, the amount involved in the

5   conspiracy attributable to him as a result of his own conduct

6   and the conduct of other conspirators reasonably foreseeable

7   to him is 500 grams or more of a mixture or substance

8   containing a detectable amount of cocaine in violation of

9   federal law.

10          THE COURT DEPUTY:  That one is also a

11  lesser-included.

12          THE COURT:  I'm sorry.  Let me finish.

13          That's the charge against you now, Mr. Lloyd.  Do

14  you understand the charge as it originated?

15          MR. LLOYD:  Yes, sir.

16          THE COURT:  All right.  Now, you've also been

17  allowed to plead guilty to a lesser-included offense which

18  will take the -- which will just be 500 grams of cocaine.  Do

19  you understand that?

20          MR. MYERS:  Your Honor, it's actually less than.

21          THE COURT:  Less than, less than 500 grams of

22  cocaine.

23          MR. LLOYD:  Yes, sir.

24          THE COURT:  So with that understanding, the

25  Government will not attempt to prove anything more than --

1    less than 500 grams of cocaine.  Do you understand that?

2         MR. MYERS:  Correct.

3         MR. LLOYD:  Yes, sir.

4         THE COURT:  If this case were to go to trial on

5    Count 1, there are essential elements of the crime charged

6    that the Government would be required to prove beyond a

7    reasonable doubt before a jury could find you guilty.  If we

8    held a trial, I would instruct the jury on what these four

9    essential elements of a criminal conspiracy are.  And I will

10   tell the jury that if the Government failed to prove any one

11   of these elements beyond a reasonable doubt, then the jury

12   would be required to find you not guilty.

13        These elements are as follows:  Number one, that

14   there was an agreement or a conspiracy, as I previously

15   defined that term, between two or more people to possess with

16   intent to distribute or to distribute cocaine; number two,

17   that you knew about the conspiracy; number three, that you

18   then knowingly and voluntarily became a part of the

19   conspiracy; and then the fourth element is the quantity

20   requirement.

21        And under federal law, for sentencing purposes, the

22   amount of controlled substances attributable to each of you

23   is important for your sentencing calculations.  So this

24   quantity requirement will have to be proved by the Government

25   and found by a jury.  And it's important that you understand

1    that the quantity requirement for each of you is different.

2    And sometimes the controlled substance is different.  We went

3    over those just a moment ago.  But in terms of the weight or

4    the quantity, you need to understand that the Government

5    could prove that any one of three different ways.  They can

6    prove that either you personally possessed with intent to

7    distribute or actually distributed that quantity, or that you

8    agreed to assist someone else in possessing with intent to

9    distribute or distributing that quantity, or that the

10   distribution of that quantity by the entire conspiracy as a

11   whole was within the scope of your agreement and

12   understanding at the time you joined the conspiracy and was

13   foreseeable to you at the time you joined the conspiracy.

14           So with that somewhat technical definition of these

15   elements, I would ask each of you if you understand the four

16   elements of the criminal conspiracy charge in Count 1 the

17   Government would be required to prove beyond a reasonable

18   doubt if we held a trial?

19           Mr. Escobar, do you?

20           MR. ESCOBAR:  Yes, sir.

21           THE COURT:  Mr. Britt, do you?

22           MR. BRITT:  Yes, sir.

23           THE COURT:  Mr. Melton, do you?

24           MR. MELTON:  Yes, sir.

25           THE COURT:  Mr. Lloyd, do you?

23

```
1           MR. LLOYD:  Yes, sir.

2           THE COURT:  All right.  Now, I'm required to go over

3    with you the penalty that you face if you plead guilty.

4    Sentencing in federal court under federal drug trafficking

5    laws is very complicated.  And it depends on the weight, the

6    type of controlled substance, the weight of the controlled

7    substance, and whether you have any criminal convictions of

8    certain types involving a serious drug crime or serious

9    violent crime on your record.  I'm going to ask Ms. Hinton,

10   the assistant U.S. Attorney prosecuting this case, to stand

11   up at this time and go through with us the potential

12   penalties that each of you face.

13          Now, Ms. Hinton, you may have to do it one at a

14   time.  I don't know.

15          MS. HINTON:  Your Honor, I think I can shorten it a

16   little bit, but if Your Honor does not like the way I'm

17   shortening it, I'm happy to go through --

18          THE COURT:  I just don't want to go through any

19   confusion.  Go through the short version and we will see if

20   we need to break up and explain it further.

21          Each of you need to listen.  This is very important.

22   I understand in some of the plea agreements we have a

23   stipulation as to an offense level.  And in at least one, we

24   have a stipulation as to the sentence to be imposed.  And we

25   will get to that later.
```

```
1            And so that is to say, Mr. Escobar, Mr. Britt, Mr.
2    Melton, we'll have a further discussion later when we get to
3    your plea agreement about some of these sentencing issues.
4    But for now I'm required to put on the record the fact that
5    you understand the penalty that you would face if you went to
6    trial.
7            Ms. Hinton.
8            MS. HINTON:  Thank you, Your Honor.  As to Mr.
9    Escobar --
10           THE COURT:  I'm sorry, that you would face if you
11   went to trial and were convicted at trial.
12           MS. HINTON:  As to Mr. Escobar's 5 kilograms or more
13   of a mixture or substance containing a detectable amount of
14   cocaine and Mr. Britt's 5 kilograms or more of a mixture or
15   substance containing a detectable amount of cocaine, as well
16   as Mr. Britt's 280 grams or more of a substance containing a
17   detectable amount of crack cocaine --
18           THE COURT:  So what you are saying now applies only
19   to Mr. Escobar and Mr. Britt?
20           MS. HINTON:  Yes, Your Honor.  And also, Mr. Melton
21   has 5 kilogram or more of a mixture or substance containing a
22   detectable amount of cocaine.
23           THE COURT:  So this applies to all three, Escobar,
24   Britt, and Melton?
25           MS. HINTON:  Yes, Your Honor.  In those cases, if
```

1    they have no prior serious drug felony or serious violent

2    felony conviction, it is a minimum term of imprisonment of 10

3    years and a maximum term of life imprisonment, no probation,

4    no parole, a fine of $10 million, and a term of supervised

5    release of at least five years, in addition to any term of

6    imprisonment, plus a special assessment of $100.

7              If they have one prior serious drug felony or

8    serious violent felony conviction, a minimum term of

9    imprisonment of 15 years and a maximum term of life

10   imprisonment, no probation, no parole, a fine of $20 million,

11   and a term of supervised release of at least 10 years, in

12   addition to any term of imprisonment, plus a special

13   assessment of $100.

14             If they have two or more prior serious drug felony

15   or serious violent felony convictions, a minimum term of

16   imprisonment of 25 years and a maximum term of life

17   imprisonment, no probation, no parole, a fine of $20 million,

18   a term of supervised release, if any, of at least 10 years,

19   plus a special assessment of $100.

20             Your Honor, as to Mr. Melton's quantity of oxycodone

21   and Mr. Lloyd's less than 500 grams of a substance containing

22   a detectable amount of cocaine and no prior felony drug

23   convictions --

24             THE COURT:  Now, this is just Mr. Melton -- and what

25   was the other one?

1           MS. HINTON:  Mr. Lloyd.

2           THE COURT:  Mr. Lloyd, all right.

3           MS. HINTON:   Yes, Your Honor.  If they have no

4    prior felony drug convictions, a maximum term of imprisonment

5    of 20 years, no parole, a fine of $1 million, and a term of

6    supervised release of at least three years, in addition to

7    any term of imprisonment, plus a special assessment of $100.

8           If they have one or more prior felony drug

9    convictions, a maximum term of imprisonment of 30 years, no

10   parole, a fine of $2 million, and a term of supervised

11   release of at least six years, in addition to any term of

12   imprisonment, plus a special assessment of $100.

13          THE COURT:  All right.  Mr. Escobar, do you

14   understand what was just said about the potential sentence

15   you face in this case if you plead guilty?

16          MR. ESCOBAR:  Yes, sir.

17          THE COURT:  Mr. Britt, do you understand what was

18   said about your potential sentence if you plead guilty?

19          MR. BRITT:  Yes, sir.

20          THE COURT:  Mr. Melton, do you understand what was

21   said about your potential sentence if you plead guilty?

22          MR. MELTON:  Yes, sir.

23          THE COURT:  And finally, Mr. Lloyd, do you

24   understand what was said about your potential sentence if you

25   plead guilty?

1          MR. LLOYD:  Yes, sir.

2          THE COURT:  As I said earlier, you can see the

3    penalty you face depends on the type of drug and weight of

4    the drug and whether you have a prior offense of certain

5    types.  And in some cases, there's a mandatory minimum

6    sentence.  You heard Ms. Hinton talk about a mandatory

7    minimum.  That means that the sentence you receive must be at

8    least that much.  And it could be higher up to the maximum

9    allowed by law.  Do you each understand that?

10         Mr. Escobar?

11         MR. ESCOBAR:  Yes, sir.

12         THE COURT:  Mr. Britt?

13         MR. BRITT:  Yes, sir.

14         THE COURT:  Mr. Melton?

15         MR. MELTON:  Yes, sir.

16         THE COURT:  Mr. Lloyd?

17         MR. LLOYD:  Yes, sir.

18         THE COURT:  Now, we need to go down and look at

19   Count 23 in the case against Mr. Britt.  Mr. Britt, you also

20   agreed to plead guilty in Count 23 in addition to Count 1.

21   And I want to be sure you understand the charge.  Have you

22   read the charge and discussed it with your attorney?

23         MR. BRITT:  Yes, sir.

24         THE COURT:  I want to be sure you understand that

25   Count 23 charges that on or about March the 26th, 2020, in

1    the District of South Carolina, you knowingly possessed a

2    firearm and ammunition in and affecting commerce, to wit, a

3    Glock, model 22 .40 caliber pistol and .40 caliber

4    ammunition, having been previously convicted of a crime

5    punishable by imprisonment for a term exceeding one year, and

6    knowing that you had been convicted of such a crime.  Do you

7    understand that charge, Mr. Britt?

8           MR. BRITT:  Yes, sir.

9           THE COURT:  If this case were to go to trial against

10   you on Count 23, there are, again, essential elements that

11   the Government would be required to prove.  There are three

12   essential elements.  If we held a trial, I would instruct the

13   jury on what these three essential elements are.  And I would

14   instruct the jury that if the Government failed to prove any

15   one of these three elements beyond a reasonable doubt, then

16   the jury would be required in that event to find you not

17   guilty.

18           These three elements are, number one, that you had

19   previously been convicted in a court of a crime punishable by

20   imprisonment for a term exceeding one year, and that you knew

21   that you belonged to the relevant category of persons barred

22   from possessing a firearm and ammunition.  Specifically, in

23   other words, the first element is that you had actually been

24   convicted of a felony, which is a crime punishable by more

25   than a year, and you knew that you were in that status of a

1  convicted felon not entitled to possess a firearm.  Do you

2  understand that element?

3          MR. BRITT:  Yes, sir.

4          THE COURT:  Second element is at the time of the

5  conviction -- let me start over.  After the conviction, you

6  knowingly possessed the firearm and ammunition described in

7  the indictment.  And then the third element is that the

8  possession was in or affecting commerce, which means that the

9  firearm and ammunition had traveled in interstate or foreign

10 commerce at some time during their existence, in other words,

11 that the ammunition or the firearm had moved from one state

12 to another state or from one country to another country.

13         Do you understand those three elements of the

14 offense charged in Count 23, Mr. Britt?

15         MR. BRITT:  Yes, sir.

16         THE COURT:  Ms. Hinton, would you help us with the

17 potential penalty on Count 23?

18         MS. HINTON:  Yes, Your Honor.  It's a maximum of 10

19 years imprisonment, and a maximum fine of $250,000.

20         THE COURT:  Do you understand, Mr. Britt?

21         MR. BRITT:  Yes, sir.

22         THE COURT:  I find for the record then that all four

23 defendants understand and comprehend the nature of the

24 charges against them generally.  They understand the

25 essential elements the Government would be required to prove.

1    And they understand the maximum penalty provided by law for

2    the offense, and where applicable, they understand the

3    mandatory minimum penalty provided by law for the offense.

4           Now, let me say to each of you, if you plead guilty,

5    I will have to determine the appropriate sentence to be

6    imposed in your case at a sentencing hearing to be conducted

7    at some point in the future.  In determining the appropriate

8    sentence in a criminal case, I'm required to consider first

9    the law we just went over that set out the maximum penalty

10   possible, and sometimes the mandatory minimum penalty

11   applicable.  I'm also required to consider the statutory

12   sentencing factors of 3553(a) of Title 18.  And, finally, I'm

13   required to consider the sentencing guidelines issued by the

14   United States Sentencing Commission.

15          Have each of you discussed with your attorney how

16   these sentencing laws might come into play at your sentencing

17   hearing?

18          Mr. Escobar, have you?

19          MR. ESCOBAR:  Yes, sir.

20          THE COURT:  Mr. Britt, have you?

21          MR. BRITT:  Yes, sir.

22          THE COURT:  Mr. Melton, have you?

23          MR. MELTON:  Yes, sir.

24          THE COURT:  Mr. Lloyd, have you?

25          MR. LLOYD:  Yes, sir.

1          THE COURT:  All right.  You understand then that

2    with regard to the sentencing guidelines I just mentioned, we

3    could not determine your sentencing guideline range today.

4    We must wait until a presentence report has been completed

5    and you and the Government have been given a chance to read

6    over the report and object to any portion of the report that

7    you think is not correct.  Do you understand all that, Mr.

8    Escobar?

9          MR. ESCOBAR:  Yes, sir.

10          THE COURT:  Mr. Britt?

11          MR. BRITT:  Yes, sir.

12          THE COURT:  Mr. Melton?

13          MR. MELTON:  Yes, sir.

14          THE COURT:  Mr. Lloyd?

15          MR. LLOYD:  Yes, sir.

16          THE COURT:  All right.  Do each of you understand

17    that the sentence imposed -- well, let me start over.  Let's

18    exclude Mr. Britt from this.

19          Mr. Escobar, Mr. Melton, and Mr. Lloyd, do each of

20    you understand that the sentence imposed may be different

21    from any estimate that your attorney may have given you?

22          Do you understand that, Mr. Escobar?

23          MR. ESCOBAR:  Yes, sir.

24          THE COURT:  Mr. Britt?  I'm sorry, not Mr. Britt.

25          Mr. Escobar -- Mr. Melton?

```
1              MR. MELTON:  Yes, sir.

2              THE COURT:  And Mr. Lloyd?

3              MR. LLOYD:  Yes, sir.

4              THE COURT:  Now, Mr. Britt, I didn't ask you that

5   question because you've got a stipulated sentence we will

6   talk about in just a little bit.  We will come back to that.

7              MR. BRITT:  Yes, sir.

8              THE COURT:  Do each of you understand that parole

9   has been abolished in the federal system, and that if you

10  were sentenced to prison, you would be released early on

11  parole?

12             Mr. Escobar?

13             MR. ESCOBAR:  Yes, sir.

14             THE COURT:  Mr. Britt?

15             MR. BRITT:  Yes, sir.

16             THE COURT:  Mr. Melton?

17             MR. MELTON:  Yes, sir.

18             THE COURT:  Mr. Lloyd?

19             MR. LLOYD:  Yes, sir.

20             THE COURT:  And once again, not Mr. Britt, but the

21  other three, Mr. Escobar, Mr. Melton, and Mr. Lloyd, do you

22  understand that if the sentence you receive is more severe

23  than you expected it to be, you will still be bound by your

24  plea and will have no right to withdraw your plea.  Do you

25  understand that, Mr. Escobar?
```

1          MR. ESCOBAR:  Yes, sir.

2          THE COURT:  Mr. Melton?

3          MR. MELTON:  Yes, sir.

4          THE COURT:  Mr. Lloyd?

5          MR. LLOYD:  Yes, sir.

6          THE COURT:  Now, I mentioned supervised release a

7    moment ago.  If you plead guilty and if you are sentenced to

8    incarceration, the law requires that upon your release from

9    incarceration, you will be subjected to a term of supervised

10   release.  If you are placed on supervised release status, you

11   are under a court order that sets out rules for your behavior

12   while on supervised release.  If you violated any of those

13   terms and conditions of supervised release contained in the

14   court order, you could be given additional time to serve in

15   prison.  Do you understand that, Mr. Escobar?

16         MR. ESCOBAR:  Yes, sir.

17         THE COURT:  Mr. Britt?

18         MR. BRITT:  Yes, sir.

19         THE COURT:  Mr. Melton?

20         MR. MELTON:  Yes, sir.

21         THE COURT:  Mr. Lloyd?

22         MR. LLOYD:  Yes, sir.

23         THE COURT:  All right.  Has anyone threatened you or

24   threatened anyone else or forced you in any way to plead

25   guilty, Mr. Escobar?

34

```
1              MR. ESCOBAR:  No, sir.

2              THE COURT:  Mr. Britt?

3              MR. BRITT:  No, sir.

4              THE COURT:  Mr. Melton?

5              MR. MELTON:  No, sir.

6              THE COURT:  Mr. Lloyd?

7              MR. LLOYD:  No, sir.

8              THE COURT:  Are you pleading guilty of your own free

9      will because you are in fact guilty of the crime charged?

10             Mr. Escobar?

11             MR. ESCOBAR:  Yes, sir.

12             THE COURT:  Mr. Britt?

13             MR. BRITT:  Yes, sir.

14             THE COURT:  Mr. Melton?

15             MR. MELTON:  Yes, sir.

16             THE COURT:  Mr. Lloyd?

17             MR. LLOYD:  Yes, sir.

18             THE COURT:  Now, in all four of these cases, I have

19     been given a written plea agreement signed by each of you and

20     signed by your attorneys.  So I would ask you to confirm for

21     me on the record that you've entered into a written plea

22     agreement memorialized in writing, signed by you after

23     negotiations with the prosecutor through your attorney.

24             Mr. Escobar, have you?

25             MR. ESCOBAR:  Yes, sir.
```

1           THE COURT:  Mr. Britt?

2           MR. BRITT:  Yes, sir.

3           THE COURT:  Mr. Melton?

4           MR. MELTON:  Yes, sir.

5           THE COURT:  Mr. Lloyd?

6           MR. LLOYD:  Yes, sir.

7           THE COURT:  All right.  Now I want to go through the

8   said plea agreements with you.  They are all very important.

9   There are some differences.

10          And so, Ms. Hinton, I believe we are going to take

11  these one at a time.  I know it takes longer, but I don't

12  want to create any confusion.  Let's do them one at a time.

13  We are going to start with Mr. Escobar.

14          Mr. Escobar, listen very carefully.  First of all,

15  did you sign the original plea agreement that's been filed

16  with the clerk in this case?

17          MR. ESCOBAR:  Yes, sir.

18          THE COURT:  All right.  Now, listen very carefully

19  to Ms. Hinton.  She's not going to read your plea agreement

20  word for word.  She's simply going to summarize each

21  paragraph.  When she finishes, I'm going to ask you if she's

22  correctly summarized what you agreed to.  So please listen

23  very carefully.

24          MS. HINTON:  Your Honor, as to Mr. Escobar, on

25  paragraphs 1 through 4, defendant agrees to plead guilty to

1    Count 1 of the superseding indictment now pending and list

2    the language of that count, along with the applicable

3    elements and penalties.  The Government also agrees to allow

4    the defendant to plead to 5 kilograms or more of cocaine

5    only, and dismiss the quantity of Fentanyl as outlined in

6    paragraph 3.

7         THE COURT:  Let me interrupt.  Mr. Escobar, that's

8    the lesser-included aspect of this case that we talked about

9    earlier.  You are pleading guilty to 5 kilograms or more of

10   cocaine.  And the rest of the controlled substances will not

11   be considered.  Do you understand that?

12        MR. ESCOBAR:  Yes, sir.

13        THE COURT:  Please continue.

14        MS. HINTON:  Paragraph 5, defendant understands that

15   the Court may impose monetary penalties, fines and/or special

16   assessments, and agrees to pay those as imposed by the Court,

17   and enter into the Bureau of Prisons inmate financial

18   repayment program if sentenced to a term of incarceration

19   with an unsatisfied monetary penalty.

20        Paragraph 6, provided the defendant complies with

21   the terms of this agreement, the Government agrees to move to

22   dismiss the remaining counts of the indictment at sentencing.

23   Defendant understands that the Court can consider the

24   dismissed counts as relevant conduct.

25        Paragraph 7, terms of the plea agreement are

1    expressly contingent on defendant's abiding by federal,

2    state, and local law.  If the Government voids this agreement

3    based on defendants's noncompliance with the terms of this

4    paragraph, he does not have the right to withdraw his plea.

5          Paragraphs 8 through 11, defendant agrees not to

6    contest the forfeiture of any assets and property listed in

7    the indictment subject to forfeiture.  The defendant agrees

8    to assist the Government in any asset forfeiture

9    investigation and abandon any claim he has to the property or

10   assets listed in the indictment.

11         Paragraph 12, defendant and the Government stipulate

12   that defendant's base offense level is level 32 pursuant to

13   Section 2D1.1 of the sentencing guidelines.  Defendant

14   understands this stipulation is not binding on the Court or

15   the probation office.  And defendant has no right to withdraw

16   his plea if a stipulation is not accepted.  Paragraph 13 --

17         THE COURT:  Let me interrupt here.  Mr. Escobar,

18   this is a very important paragraph.  You and the Government

19   have agreed that your total offense level -- I'm sorry, your

20   base offense level for sentencing purposes is 32.  The

21   sentencing guidelines are a complicated formula we have to

22   work through to determine your sentencing guideline range.

23   But we start with the base offense level.  And here, you and

24   the Government have agreed we start with the base offense

25   level 32 in your presentence report.  It's important you

38

1  understand this stipulation is not binding on me.  I don't

2  have to go along with it if the probation officer who looks

3  into the facts tells me it should be something different.  I

4  am not saying I won't go along with it, but I'm required

5  under the rules to tell you I don't have to go along with it.

6  Do you understand that?

7         MR. ESCOBAR:  Yes, sir.

8         THE COURT:  Please continue.

9         MS. HINTON:  Paragraph 13, defendant represents to

10  the Court that he has met with his attorney a sufficient

11  number of times to discuss the case and receive advice.  He

12  has been truthful with his attorney.  And he understands all

13  the rights he's giving up by pleading guilty.

14         Paragraph 14, the defendant is aware that 18, United

15  States Code Section 3742 and 28 U.S.C. Section 2255 afford

16  every defendant certain rights to contest a conviction and/or

17  sentence.  Acknowledging those rights, the defendant, in

18  exchange for the concessions made by the Government in this

19  plea agreement, waives the right to contest either the

20  conviction or the sentence in any direct appeal or other

21  post-conviction action, including any proceedings under 28

22  U.S.C. 2255.  This waiver does not apply to claims of

23  ineffective assistance of counsel, prosecutorial misconduct,

24  or future changes in the law that affect the defendant's

25  sentence.  This agreement does not affect the rights or

39

1    obligations of the Government as set forth in 18, United

2    States Code, Section 3742B, nor does it limit the Government

3    in its comments in or responses to any post-sentencing

4    matters.

5          Paragraph 15, defendant waives all rights to request

6    or receive documents to the Government pertaining to this

7    case which may be sought under the Freedom of Information Act

8    or the Privacy Act of 1974.

9          Paragraph 16, the parties agree that this agreement

10    contains the entire agreement of the parties and supersedes

11    any and all prior promises, representations, or statements of

12    the parties.  And it can only be modified in writing signed

13    by all parties.

14          THE COURT:  All right.  Now, what she just went over

15    applies -- what she just summarized for us applies only to

16    Mr. Escobar's case.  Mr. Escobar, is that a correct summary

17    of what you agreed to in this case?

18          MR. ESCOBAR:  Yes, sir.

19          THE COURT:  Now, let's go over Mr. Britt's plea

20    agreement.  Mr. Britt, you listen very carefully.  The other

21    three, this does not apply to you.

22          MS. HINTON:  Your Honor, paragraphs 1 through 4,

23    defendant agrees to plead guilty to Counts 1 and 23 of the

24    superseding indictment now pending and lists the language of

25    those counts along with the applicable elements and

40

1    penalties.

2           Paragraph 5, defendant understands that the Court

3    may impose monetary penalties, fines, and/or special

4    assessments, and agrees to pay those as imposed by the Court,

5    and enter into the Bureau of Prisons's inmate financial

6    repayment program if sentenced to a term of incarceration

7    with an unsatisfied monetary penalty.

8           Paragraph 6, provided the defendant complies with

9    the terms of this agreement, the Government agrees to move to

10   dismiss the remaining counts of the indictment at sentencing.

11   Defendant understands that the Court can consider the

12   dismissed counts as relevant conduct.

13          Paragraph 7, terms of the plea agreement are

14   expressly contingent on defendant's abiding by federal,

15   state, and local law.  If the Government voids this agreement

16   based on defendant's noncompliance with the terms of this

17   paragraph, he does not have the right to withdraw his plea.

18          Paragraph 8, defendant agrees not to contest the

19   forfeiture of any assets and property listed in the

20   indictment subject to forfeiture.  The defendant agrees to

21   assist the Government in any asset forfeiture investigation

22   and abandon any claim he has to the property under assets

23   listed in the indictment, and covers all other forfeiture

24   matters related to this case.

25          Paragraph 9, defendant represents to the Court that

41

1   he has met with his attorney a sufficient number of times to

2   discuss the case and receive advice.  He has been truthful

3   with his attorney and he understands all the rights that he

4   is giving up by pleading guilty.

5          Paragraph 10, defendant and the Government agree

6   that the defendant's sentencing range should be 121 to 151

7   months of incarceration followed by a term of supervised

8   release.  If this agreement is not accepted, either party may

9   withdraw from this plea agreement pursuant to Federal Rules

10  of Criminal Procedure 11(c)(1)(C).

11         THE COURT:  Let me interrupt here again.  Mr. Britt,

12  this is an important paragraph, No. 10.  All the paragraphs

13  are important, but particularly No. 10.  There's a

14  stipulation here that you and the Government have agreed that

15  your sentence should be between 121 and 151 months of

16  incarceration.  Do you understand that?

17         MR. BRITT:  Yes, sir.

18         THE COURT:  Now, I have to tell you that that

19  stipulation is binding on the Government.  The Government

20  cannot come in in sentencing and argue it should be any

21  higher, but it is possible that after I look at the

22  presentence report and the information disclosed by the

23  probation officer in that report, that I determine that your

24  sentence should be something different from that.  And if I

25  make that decision that it should be something different, the

42

1    remedy is that we just start all over, that you withdraw your

2    plea and we go forward with a trial on these charges.

3          So it's a binding sentence in terms of what the

4    Government can argue, but it's not binding on me necessarily.

5    I am not telling you I am not going to go along with it, but

6    I'm required under the rules to tell you that I don't have to

7    go along with it.  Do you understand that?

8          MR. BRITT:  Yes, sir.

9          THE COURT:  Please continue.

10         MS. HINTON:  Paragraph 11, the defendant is aware

11   that 18 U.S.C. Section 3742 and 28 U.S.C. Section 2255 afford

12   every defendant certain rights to contest a conviction and/or

13   sentence.  Acknowledging those rights, the defendant, in

14   exchange for the concessions made by the Government in this

15   plea agreement, waives the right to contest either the

16   conviction or the sentence in any direct appeal or other

17   post-conviction action, including any proceedings under 28

18   U.S.C. 2255.  This waiver does not apply to claims of

19   ineffective assistance of counsel, prosecutorial misconduct,

20   or future changes in the law that affect the defendant's

21   sentence.  This agreement does not affect the rights or

22   obligations of the Government as set forth in 18 U.S.C.

23   3742B, nor does it limit the Government in its comments in or

24   responses to any post-sentencing matters.

25         Paragraph 12, defendant waives all rights to request

43

1   or receive documents from the Government pertaining to this

2   case which may be sought under the Freedom of Information Act

3   or the Privacy Act of 1974.

4          Paragraph 13, the parties agree that this agreement

5   contains the entire agreement of the parties and supersedes

6   any and all prior promises, representations, or statements of

7   the parties.  And it can only be modified in writing signed

8   by all parties.

9          THE COURT:  All right.  Mr. Britt, is that a correct

10  summary of your plea agreement?

11         MR. BRITT:  Yes, sir.

12         THE COURT:  And did you sign your signature on the

13  last page of this document that's been filed with the clerk?

14         MR. BRITT:  Yes, sir.

15         THE COURT:  Let's move on to Mr. Melton.  What Ms.

16  Hinton says now applies only to Mr. Melton's case.

17         MS. HINTON:  Paragraphs 1 through 3, defendant

18  agrees to plead guilty to Count 1 of the superseding

19  indictment now pending, and lists the language of that count

20  along with the applicable elements and penalties.

21         Paragraph 4, defendant understands that the Court

22  may impose monetary penalties, fines, and/or special

23  assessments and agrees to pay those as imposed by the Court,

24  and enter into the Bureau of Prisons inmate financial

25  repayment program if sentenced to a term of incarceration

44

1    with an unsatisfied monetary penalty.

2           Paragraph 5, provided the defendant complies with

3    the terms of this agreement, the Government agrees to move to

4    dismiss the remaining counts of the indictment at sentencing.

5    The defendant understands that the Court can consider the

6    dismissed counts relevant conduct.

7           Paragraph 6, the terms of the plea agreement are

8    expressly contingent on defendant abiding by federal, state,

9    and local law.  If the Government voids this agreement based

10   on the defendant's noncompliance with the terms of this

11   paragraph, he does not have the right to withdraw his plea.

12          Paragraph 7 through 10, the defendant agrees not to

13   contest the forfeiture of any assets and property listed in

14   the indictment subject to forfeiture.  The defendant agrees

15   to assist the Government in any asset forfeiture

16   investigation and abandon any claim he has to the property

17   and/or assets listed in the indictment.

18          Paragraph 11, defendant and the Government stipulate

19   that defendant's base offense level is level 30 pursuant to

20   Section 2D1.1 of the sentencing guidelines.  The defendant

21   understands this stipulation is not binding on the Court or

22   the probation office, and defendant has no right to withdraw

23   his plea if the stipulation is not accepted.

24          THE COURT:  Let me jump in here.  Mr. Melton, when

25   we calculate the sentencing guidelines, it's a complicated

1    formula that we have to go through.  But the first thing we

2    start with is the base offense level.  And here in this

3    paragraph 11, you've agreed with the Government that your

4    base offense level is 30.

5           Now, I'm required to tell you that I don't have to

6    go along with that at sentencing, if I look into the matter

7    provided by the probation office and determine it should be

8    something different.  I am not bound by that stipulation.

9    Now, don't over think this.  I am not saying I am not going

10   to go along with it, but I'm required to tell you that I

11   don't have to go along with it.  Do you understand?

12          MR. MELTON:  Yes, sir.

13          THE COURT:  Please continue.

14          MS. HINTON:  Paragraph 12, defendant represents to

15   the Court that he has met with his attorney a sufficient

16   number of times to discuss the case and receive advice.  He

17   has been truthful with his attorney and he understands all

18   the rights he's giving up by pleading guilty.

19          Paragraph 13, the defendant is aware that 18 U.S.C.

20   Section 3742 and 28 United States Code Section 2255 afford

21   every defendant certain rights to contest a conviction and/or

22   sentence.  Acknowledging those rights, the defendant, in

23   exchange for the concessions made by the Government in this

24   plea agreement, waives the right to contest either the

25   conviction -- excuse me, or the sentence in any direct appeal

46

1  or other post-conviction action, including any proceedings

2  under 28 U.S.C. 2255.  This waiver does not apply to claims

3  of ineffective assistance of counsel, prosecutorial

4  misconduct, or future changes in the law that affect the

5  defendant's sentence.  This agreement does not affect the

6  rights or obligations of the Government as set forth in 18

7  U.S.C. 3742B, nor does it limit the Government in its

8  comments in or responses to any post-sentencing matters.

9          Paragraph 14, the defendant waives all rights to

10  request or receive documents from the Government pertaining

11  to this case which may be sought under the Freedom of

12  Information Act or the Privacy Act of 1974.

13          Paragraph 15, the parties agree that this agreement

14  contains the entire agreement of the parties and supersedes

15  any and all prior promises, representations, or statements of

16  the parties, and it can only be modified in writing signed by

17  all parties.

18          THE COURT:  Mr. Melton, is that a correct summary of

19  your plead guilty?

20          MR. MELTON:  Yes, sir.

21          THE COURT:  Did you sign on the last page of that

22  document that's filed with the clerk?

23          MR. MELTON:  Yes, sir.

24          THE COURT:  We will move on to Mr. Lloyd.  This

25  applies only to Mr. Lloyd and no one else.

1           MS. HINTON:  Paragraphs 1 through 4, defendant

2    agrees to plead guilty to Count 1 of the superseding

3    indictment now pending and list the language of that count

4    along with the applicable elements and penalties.  The

5    Government also agrees to allow the defendant to plead to the

6    lesser-included offense of less than 500 grams of a mixture

7    or substance containing a detectable amount of cocaine.

8           Paragraph 5, defendant understands that the Court

9    may impose monetary penalties, fines, and/or special

10   assessments, and agrees to paid those as imposed by the Court

11   and enter into the Bureau of Prison's inmate financial

12   repayment program if sentenced to a term incarceration with

13   an unsatisfied monetary penalty.

14          Paragraph 6, provided the defendant complies with

15   the terms of this agreement, the Government agrees to move to

16   dismiss the remaining counts of the indictment at sentencing.

17   Defendant understands that the Court consider the dismissed

18   counts relevant conduct.

19          Paragraph 7, terms of the plea agreement are

20   expressly contingent on the defendants abiding by federal,

21   state, and local law.  If the Government voids this agreement

22   based on defendant's noncompliance with the terms of this

23   paragraph, he does not have the right to withdraw his plea.

24          Paragraphs 8 through 11, defendant agrees not to

25   contest the forfeiture of any assets and property listed in

48

1    the indictment subject to forfeiture.  The defendant agrees

2    to assist the Government in any asset forfeiture

3    investigation and abandon any claim he has to the property

4    and/or assets listed in the indictment.

5         Paragraph 12, the defendant represents to the Court

6    that he has met with his attorney a sufficient number of

7    times to discuss the case and receive advice.  He has been

8    truthful with his attorney and he understands all of the

9    rights that he is giving up by pleading guilty.

10        Paragraph 13, the defendant is aware that 18 U.S.C.

11   Section 3742 and 28 United States Code Section 2255 afford

12   every defendant certain rights to contest a conviction and/or

13   sentence.  Acknowledging those rights, the defendant, in

14   exchange for the concessions made by the Government in this

15   plea agreement, waives the right to contest either the

16   conviction or the sentence in any direct appeal or other

17   post-conviction action, including any proceedings under 28

18   U.S.C. 2255.  This waiver does not apply to claims of

19   ineffective assistance of counsel, prosecutorial misconduct,

20   or future changes in the law that affect the defendant's

21   sentence.

22        This agreement does not affect the rights or

23   obligations of the Government as set forth in 18 U.S.C.

24   3742B, nor does it limit the Government in its comments in or

25   responses to any post-sentencing matters.

49

1          Paragraph 14, defendant waives all rights to request

2    or receive documents from the Government pertaining to this

3    case which may be sought under the Freedom of Information Act

4    or the Privacy Act of 1974.

5          Paragraph 15, the parties agree that this agreement

6    contains the entire agreement of the parties and supersedes

7    any and all prior promises, representations, or statements of

8    the parties, and it can only be modified in writing signed by

9    all parties.

10          THE COURT:  All right.  Mr. Lloyd, is that a correct

11    summary of your plea agreement?

12          MR. LLOYD:  Yes, sir.

13          THE COURT:  And did you sign on the last page of

14    that document that's filed with the clerk?

15          MR. LLOYD:  Yes, sir.

16          THE COURT:  Now, to all four of you, speaking to all

17    four of you again as a group, there's a paragraph in your

18    plea agreement providing to a partial appeal waiver.  In any

19    criminal case, the defendant has a right to take an appeal to

20    the court of appeals to correct some error that might have

21    occurred in the case, and also has a second round of appeal

22    what's called a collateral attack under Section 2255.  These

23    appeal rights can be bargained away or given up as part of

24    the plea bargaining process.  And in all four cases here this

25    morning, there's a partial appeal waiver in your plea

50

```
1    agreement.  You would each preserve the right to appeal
2    ineffective assistance of counsel or prosecutorial misconduct
3    or future changes in the law that affect your sentence, but
4    you would give up your appeal rights in all other respects.
5              Do you understand that, Mr. Escobar?
6              MR. ESCOBAR:  Yes, sir.
7              THE COURT:  Mr. Britt?
8              MR. BRITT:  Yes, sir.
9              THE COURT:  Mr. Melton?
10             MR. MELTON:  Yes, sir.
11             THE COURT:  Mr. Lloyd?
12             MR. LLOYD:  Yes, sir.
13             THE COURT:  All right.  Now, there are certain
14   promises in these plea agreements that we've gone over,
15   promises to drop the remaining charges, promises to stipulate
16   a certain guideline level for some of you, promises to
17   specific sentence as to others.  We've gone overall those
18   promises.  Has anyone made any promise to you outside of the
19   plea agreement, in other words, any promise that I did not
20   know about, that caused to you plead guilty?
21             Mr. Escobar?
22             MR. ESCOBAR:  No, sir.
23             THE COURT:  Mr. Britt?
24             MR. BRITT:  No.
25             THE COURT:  Mr. Melton?
```

```
1              MR. MELTON:  No.

2              THE COURT:  Mr. Lloyd?

3              MR. LLOYD:  Yes, sir.

4              THE COURT:  So my question was, has someone made a

5     promise to you outside the plea agreement that we did not go

6     over?

7              MR. LLOYD:  No, sir.

8              THE COURT:  Very good.  All right.  At this time,

9     I'm going to ask Ms. Hinton to stand up again and summarize

10    for me the evidence that the Government has collected in this

11    case.  And she's going to tell me with precise detail what

12    the Government would be prepared to prove if we went forward

13    and held a trial in your case.  So please listen very

14    carefully.  When she finishes, I'm going to ask you if you

15    agree with the rendition that she gives me as to what the

16    facts are in this case.

17             Ms. Hinton.

18             MS. HINTON:  Thank you, Your Honor.  This is an

19    overview of the case in general.  At the end of 2018, the FBI

20    was informed by officers from the Lexington County Sheriff's

21    Office, the Richland Count Sheriff's Office, and the Kershaw

22    County Sheriff's Office uptick in gang-related violence in

23    Columbia, South Carolina.  These agencies were reporting

24    numerous carjacking, armed home invasions, robberies and

25    shootings.  They are all tied to the Rollin 60s Crips and the
```

52

1    Gangster Disciples.  Information gathered by these local

2    agencies indicated that drug trafficking was a primary cause

3    of much of the violence as the members of these gangs were

4    jockeying with other violent gangs for drug distribution

5    territory.  The FBI began conducting interviews with

6    confidential sources and cooperating defendants, and

7    ascertained that cocaine trafficking was a primary source of

8    income for the Rollin 60s Crips and the Gangster Disciples.

9    FBI then partnered with the DEA.  And through numerous

10   interviews, identified Maurice Leach and Anthony Britt as two

11   primary cocaine distributors that were providing kilogram

12   quantities of cocaine to members of these gangs.  That led to

13   a Title 3 wire interception.

14          Your Honor, specifically as to Mr. Escobar, based on

15   numerous intercepted calls, source information, and

16   cooperator statements, Nelson Escobar is a supplier of

17   kilogram quantities of cocaine.  Escobar has access to a

18   source of supply for his cocaine.  And he coordinates

19   incoming shipments of cocaine quantities -- of kilogram

20   quantities of cocaine to the Columbia area of South Carolina.

21   Escobar supplies Leach and others with between a half

22   kilogram to several kilogram of cocaine every few days or

23   weeks.  And Escobar determines the price of his narcotics

24   based on the price he receives from his suppliers.  Leach

25   frequently informs Escobar about the quality of his cocaine,

53

1   which Escobar then communicates with his suppliers to ensure

2   the organization is selling a quality product that will be

3   high in demand and yield a profit for all parties in the

4   cooperation.

5          Physical surveillance and intercepted calls

6   indicated that Escobar is a kitchen manager at Mobay's

7   Restaurant, also known as Legacy Bar and Grill and that he

8   keeps and distributes cocaine out of the restaurant.

9          On March 2nd, 2018, a search warrant was conducted

10  by the Richland County Sheriff's Department on Escobar

11  residence 49 Dove Creek.  Investigators recovered ammunition,

12  $370,003 in cash and packaging materials that based on their

13  size, shape, and composition, were believed to be used for

14  wrapping kilograms of cocaine.  The packaging materials later

15  tested positive for cocaine residue.

16         On June 23rd, 2020, federal search warrants were

17  conducted on 49 Dove Creek and Mobay's, at 49 Dove Creek,

18  agents found two packages of compressed frozen marijuana, a

19  Springfield .45 caliber handgun, .45 and .40 caliber

20  ammunition and drug paraphernalia.  During the search,

21  Escobar himself showed agents the trap in his Chevy Malibu

22  which was used to transport drugs.  The trap was photographed

23  by agents.

24         At Mobay's in the kitchen manager's office, agents

25  found a Glock 27 .40 caliber handgun, a Glock 15 magazine,

54

1    .40 caliber rounds, and over $32,000 in cash in various

2    envelopes, safes, or unmarked bags.

3            As to Mr. Britt, Your Honor, according to

4    intercepted calls, source information, controlled drug

5    purchases, physical and electronic surveillance, and

6    cooperating defendants, Britt is a cocaine supplier.  He was

7    distributing kilogram quantities of cocaine around the

8    Columbia area of South Carolina.  Britt is an associate of

9    many ranking gang members, including Maurice Leach.

10   Intercepted calls and cooperator statements indicate that

11   Britt used to partner with Leach while distributing cocaine.

12   However, Britt separated from Leach and began to run a drug

13   trafficking organization independent of Leach.  Britt

14   coordinated shipments of cocaine, quantities of cocaine --

15   excuse me, kilogram quantities of cocaine into Columbia,

16   which he then broke down into ounce quantities of cocaine for

17   your distribution to a reliable network of lower-level

18   cocaine dealers.

19           Cooperators also indicate that Britt manufactured

20   crack cocaine out of a portion of the cocaine powder he

21   received.  Britt met with Tommy Lloyd, Eric Cowan, Reggie

22   Furgess, and others almost every day at his home, at their

23   home, or at a mutual public location in order to give them

24   cocaine or receive payment for previous cocaine sales.

25   Lloyd, Cowan, Furgess, and others were in contact with Britt

1    when they needed cocaine.  And Lloyd and Cowan frequently

2    worked with Britt.  Britt maintained a relationship with

3    Leach and some of his associates.  And they regularly

4    discussed their drug trafficking activities.  However, the

5    content of the calls indicated that Leach and Britt were

6    competitors within the cocaine trafficking business in the

7    Columbia area by the time of the interception.

8            On March 26 of 2020, Mr. Britt was pulled over for a

9    traffic violation after agents surveilled Mr. Britt and

10   Mr. Lloyd meeting.  A canine alerted.  And the car was

11   searched.  Agents found a Glock model 22 .40 caliber pistol

12   and .40 caliber ammunition which had both traveled in

13   interstate commerce.  Mr. Britt is prohibited from a prior

14   conviction and is aware of that conviction and his prohibited

15   status regarding the firearm.

16           As to Mr. Melton, according to intercepted calls,

17   surveillance, cooperator information and source information,

18   Melton is a member of the Rollin 60s Crips and a subordinate

19   of Maurice Leach and Willie Simmons.  Melton helped Leach

20   manage the cocaine supply and distribute cocaine.  As a

21   leader, Leach distances himself from his drug trafficking

22   operation and relies on people like Melton to store his

23   cocaine, run his trap house, and deliver cocaine.

24           Melton would receive a small cut of Leach's profits.

25   And Leach would allow Melton to stay in one of Leach's trap

56

1   houses.  And Leach paid for Melton's phone, car, and other

2   utility bills.

3          On June 23rd of 2020, agents of the FBI conducted

4   the arrest of Mr. Melton at 8720 Windsor Lake Boulevard,

5   Apartment 126, in Columbia, South Carolina.  After knocking

6   and announcing, Melton's girlfriend answered the door and

7   informed agents that Melton was in the apartment.  As agents

8   entered the apartment to take custody of Melton, they

9   observed a handgun and a bag of suspected marijuana in the

10  kitchen.  Melton's girlfriend, Ms. Chapman, informed agents

11  that the apartment belonged to her, and signed a consent to

12  search form for the apartment.  Agents then conducted a brief

13  search, and found a .357 Magnum revolver, an assault rifle

14  magazine loaded with rounds, a scale with white residue,

15  three bags of suspected marijuana, cellophane wrap with

16  suspected crack cocaine, a pill bottle with suspected crack

17  cocaine, and a pill bottle with seven oxycodone pills.

18         During a Miranda and interview with agents during

19  this event, Melton claimed ownership of the guns and drugs in

20  the apartment.

21         As to Mr. Lloyd, according to intercepted calls,

22  surveillance, search warrant information, and traffic stops,

23  Mr. Lloyd is a frequent buyer of Britt with whom he

24  coordinated regular transactions of cocaine.  Mr. Lloyd

25  contacted Britt when he had buyers lined up, when he had drug

1    proceeds available to pay Britt for incoming cocaine, and

2    reported back to Britt about the quality of the cocaine.

3            Britt informed Lloyd about the status of his

4    incoming cocaine so that Lloyd was prepared to receive

5    Britt's cocaine when it was ready to be delivered.

6            On November 18th, 2019, Britt and Lloyd coordinated

7    a cocaine transaction.  And law enforcement observed them

8    meet at Lloyd's residence.  Intercepted calls indicated that

9    the money seized from Mr. Britt was given to him by Mr. Lloyd

10   in exchange for cocaine.

11           THE COURT:  All right.  Thank you very much.

12           Mr. Escobar, is what Ms. Hinton told us about your

13   involvement correct?

14           MS. FRANKLIN-BEST:  Your Honor, if I could just sort

15   of briefly state, I mean, we are prepared to concede to the

16   conspiracy to cocaine and in requisite amounts.  If we had

17   gone to trial, I think we would have had some disputes with

18   some of the Government's characterization of some of this.

19   But we do concede the material facts that should support the

20   guilty plea, Your Honor.

21           THE COURT:  Well, I'm thinking we need to be a

22   little bit more specific.  I mean, he agrees he joined the

23   conspiracy?

24           MS. FRANKLIN-BEST:  Correct.

25           THE COURT:  And he agrees that he was responsible

1   for the requisite amount of the controlled substance?

2          MS. FRANKLIN-BEST:  Yes, Your Honor.

3          THE COURT:  The other details may become important

4   at sentencing.  So we just agree to debate that and decide

5   that at the sentencing hearing?

6          MS. FRANKLIN-BEST:  Yes, Your Honor.

7          THE COURT:  Ms. Hinton, are you satisfied with that?

8          MS. HINTON:   Yes, Your Honor.

9          THE COURT:  Let me go over that with Mr. Escobar.

10          Mr. Escobar, your attorney just told me that you

11   agree on the facts I just heard that the Government can

12   establish that there was a conspiracy to distribute

13   controlled substances or to possess with intent to distribute

14   controlled substances, and you then willfully joined that

15   conspiracy; is that correct?

16          MR. ESCOBAR:  Yes, sir.

17          THE COURT:  And then the controlled substances that

18   were accountable to you, as I define that term, that

19   threshold has been met by what evidence the Government has in

20   terms of the weight of the controlled substances.  Do you

21   agree to that?

22          MR. ESCOBAR:  Yes, sir.

23          THE COURT:  Now, if there's anything else that Ms.

24   Hinton told us that you disagree with, today is not the time

25   to debate that.  We will take that up at your sentencing

1    hearing.  But you need to understand that if we do get to the

2    sentencing hearing, you will have been adjudicated guilty and

3    will be facing a sentence.  It will just be what sentence

4    should it be.  And we may have to hear some evidence and I

5    may have to make decision about the other disputed matters.

6    And some of those decisions may go in your favor.  Some may

7    go against you.  But you will bound by whatever I decide.

8    You will not have a right to a jury trial at that time.  Do

9    you understand?

10             MR. ESCOBAR:  Yes, sir.

11             THE COURT:  Very good.

12             Mr. Milling.

13             MR. MILLING:  Yes, Your Honor.  Similar to the

14   position just announced by Ms. Franklin, we disagree with

15   the -- some of the details that were outlined by Ms. Hinton.

16   However, my client is in a position where he acknowledges

17   that he knowingly and willingly entered into this conspiracy

18   as outlined in Count 1, and agrees with the threshold

19   quantities of 5 kilograms or more of cocaine and 280 grams or

20   more of crack cocaine.

21             He also agrees that on or about March 26th of 2020,

22   he did possess the identified firearm and ammunition and he

23   did admit to being someone who had previously been convicted

24   of a felony and, therefore, a prohibited person under federal

25   law.  And some of the details, similar to Ms. Escobar, we can

60

1    make a decision as to those at sentencing.  But for the

2    purpose of today, he does admit his involvement in the

3    conspiracy to distribute 5 kilograms or more of powder

4    cocaine and 280 grams or more of crack cocaine, and

5    possession of a firearm by a prohibited person as outlined in

6    paragraph 53.

7            THE COURT:  Mr. Britt, do you agree with what your

8    attorney just told me?

9            MR. BRITT:  Yes, sir.

10           THE COURT:  You admit there was a conspiracy to

11   possess with intent to distribute and distribute controlled

12   substances.  You knew about the conspiracy.  And then you

13   joined the conspiracy.  Do you agree with that?

14           MR. BRITT:  Yes, sir.

15           THE COURT:  And then as to the weight attributable

16   to you, Ms. Hinton told us about some transactions and

17   weights and so forth.  You agree that the requisite threshold

18   limit can be proved by the Government in this case; is that

19   correct?

20           MR. BRITT:  Yes, sir.

21           THE COURT:  All right.  You also agree that on the

22   date set out in the indictment, you possessed this firearm

23   after having been convicted of a felony offense; is that

24   right?

25           MR. BRITT:  Yes, sir.

61

```
1              THE COURT:  And you knew at the time you had a
2    felony conviction on your record; is that correct?
3              MR. BRITT:  Yes, sir.
4              THE COURT:  Now, that's all I need to hear today to
5    accept a guilty plea.  There may be some details around the
6    edges that might be important at sentencing.  I don't know.
7    Maybe they won't be important.  But they may be.  And you
8    need to understand that when we have the sentencing hearing,
9    if there are any disputes about any of the other details, I
10   will have to hear the evidence and make a decision.  You
11   don't have a right to a jury trial.  And you are stuck with
12   my decision on what I decide on those disputed facts.  Do you
13   understand?
14             MR. BRITT:  Yes, sir.
15             THE COURT:  All right.  Very good.
16             Then Mr. Lloyd --
17             MS. FRANKLIN-BEST:  I think Mr. Melton is next.
18             THE COURT:  I'm sorry, Mr. Melton.  I'm sorry.  I
19   skipped Mr. Melton.  Mr. Harvey.
20             MR. HARVEY:  Good morning.  Mr. Melton's position is
21   similar to those articulated by my colleagues.  Mr. Melton
22   acknowledges he's joining the conspiracy.  He acknowledges
23   the Government could prove for the purpose of today's
24   proceeding the amounts, the quantities set forth in the plea
25   agreement.  I've met with Mr. Melton on many occasions.  And
```

1  he understands for the purposes of today.  He acknowledges

2  his joining the conspiracy and the threshold drug amounts in

3  the indictment and in the plea agreement.  And he too will

4  address other details at the appropriate juncture, which will

5  most likely be sentencing.  So we will make sure to

6  articulate that on behalf of Mr. Melton.  Thank you, Your

7  Honor.

8        THE COURT:  Mr. Melton, you agree with what

9  Mr. Harvey just told me?

10        MR. MELTON:  Yes, sir.

11        THE COURT:  And specifically you agree there was a

12  drug-related conspiracy existing and you knew about it and

13  you joined that conspiracy.  Do you agree with that?

14        MR. MELTON:  Yes, sir.

15        THE COURT:  And then as to the threshold weight of

16  the drugs, do you agree the Government has evidence it could

17  prove attribution to you of that threshold weight of the

18  drugs?

19        MR. MELTON:  Yes, sir.

20        THE COURT:  Now, you understand there may be other

21  details that will become important at sentencing that we'll

22  agree to take those up later.  But for today, you said enough

23  for me to accept the guilty plea.  But you need to understand

24  that some of these other details that Mr. Harvey told us

25  about, at a sentencing hearing, I might have to hear evidence

63

1  to make a decision about those other details.  You will be

2  given a chance to be heard on it and present evidence if you

3  want to.  But you will be bound by my ruling on those

4  details.  You don't have a jury trial right on those details.

5  Do you understand all that?

6          MR. MELTON:  Yes, sir.

7          THE COURT:  All right.  Very good.

8          And, finally, Mr. Lloyd.

9          MS. FRANKLIN-BEST:  Thank you, Your Honor.  May it

10 please the Court.  Good thing about going fourth, I don't

11 have to articulate everything.

12         THE COURT:  You can just say ditto.

13         MS. FRANKLIN-BEST:  We would adopt all arguments

14 previously made.

15         THE COURT:  I appreciate that.  Mr. Lloyd, do you

16 agree that there was a conspiracy existing and you knew about

17 it and you willfully joined that conspiracy?

18         MR. LLOYD:  Yes, sir.

19         THE COURT:  And you agree that the amount of the

20 controlled substances attributable to you that we have

21 discussed earlier, the Government can prove that you should

22 be held accountable or attributable for those drug weights.

23 Do you agree with that?

24         MR. LLOYD:  Yes, sir.

25         THE COURT:  You understand there may be other

64

1  details about your background or your involvement in this

2  activity that may become important at sentencing.  We will

3  have to determine that later at a sentencing hearing.  But if

4  those details do become important, I'm the one that has to

5  make a call or finding rather on whether those details can be

6  proved by the Government.  You don't have a right to a jury

7  trial.  You have a right to present evidence and be heard by

8  way of argument.  But you will be bound by my ruling on those

9  other details if they become in dispute.  Do you understand

10  that?

11          MR. LLOYD:  Yes, sir.

12          THE COURT:  All right.  I'm satisfied then that a

13  proper showing has been made under Rule 11, rule of criminal

14  procedure in all four of these cases.  It is therefore the

15  finding of the Court in the case of United States v. Nelson

16  Durant Escobar, Anthony Charles Britt, Christopher Daquan

17  Melton and Tommy Novack Lloyd, that each of the four

18  defendants is fully competent and capable of entering an

19  informed plea in this case, and that their pleas to the

20  respective counts against them are knowing and voluntary

21  pleas, each supported by an independent basis in fact

22  containing each of the essential elements of the crime

23  charged.  They are, therefore, adjudged guilty of those

24  crimes.  And the pleas shall be entered on the record as

25  accepted by the Court.

65

1           THE COURT DEPUTY:  May it please the Court.  In the

2    case of United States of America v. Nelson Escobar, Anthony

3    Britt, Christopher Melton, and Tommy Lloyd, criminal Case No.

4    3:20-453, the defendants, having withdrawn their plea of not

5    guilty, now plead guilty after arraignment in open court,

6    signed by the defendants.

7           THE COURT:  All right.  Let me explain the procedure

8    from this point forward to each of you.  The United States

9    probation office will send one of its officers to meet with

10   you to get some information to go in your presentence report.

11   Your attorney can be with you at that meeting if you want

12   them to be there.  Once the report is completed, you will be

13   given a copy to read over with your attorney.  If there's

14   anything in the report that you disagree with that you think

15   is incorrect legally or factually, you may file an objection

16   through your attorney.  We will then schedule your sentencing

17   hearing.  The first thing we will do at the hearing is hear

18   the objections and rule on the objections.  Then we will

19   calculate the advisory sentencing guideline range in your

20   case.  And then we will hear from you and your attorney

21   before determining the sentence to be imposed.

22           We have one defendant who is on bond; is that

23   correct?

24           MS. HINTON:  Yes, Your Honor, Mr. Lloyd.

25           THE COURT:  Any objection to him continuing on bond?

1          MS. HINTON:  No, sir, Your Honor.

2          THE COURT:  All right.  Mr. Lloyd, technically

3    speaking, the mandatory detention act would apply in your

4    case.

5          Any basis for keeping him out, Ms. Hinton?  Can you

6    put anything on the record about his cooperation?

7          MS. HINTON:  No, Your Honor.  Really, it's just that

8    he was originally advised to self-report when this was an

9    original case on a complaint.  Due to some COVID issues, he

10   did self-report.  I checked with probation.  He's remained in

11   compliance with his bond.  So we just don't have any

12   objection.

13         THE COURT:  Mr. Lloyd, I'm going to leave you out on

14   bond.  You are still under all the conditions imposed by the

15   magistrate.  You must faithfully comply with all those

16   conditions for the duration of this case.  If you don't, you

17   could be taken into custody immediately and charged with

18   another crime.  Do you understand?

19         MR. LLOYD:  Yes, sir.

20         THE COURT:  All right.  Anything further?

21         MS. HINTON:  Your Honor, one other matter.  I

22   believe that Ms. Franklin-Best and Mr. Millings, I guess,

23   discovery motion is still kind of in abeyance or under

24   advisement.  So I didn't know if they wanted to address their

25   position on that.

1          THE COURT:  Good point.  I think we need to deal

2    with that.

3          MS. FRANKLIN-BEST:  Your Honor, if I may, with the

4    guilty plea, I think for the purposes of guilt or innocence,

5    it's now moot.  However, that issue may crop up again at

6    sentencing with regards to this particular witness if the

7    Government intends to or the probation agent relies upon that

8    information in the presentence report.  So for the purposes

9    now, I don't think that we need a ruling on that.  But you

10   may have to deal with it at sentencing.

11         THE COURT:  All right.  We will just leave it remain

12   pending.  It still remains unresolved and may not need to be

13   resolved.  Depends what happens at sentencing.  Ms.

14   Franklin-Best, do you agree with that?

15         MS. FRANKLIN-BEST:  I do.

16         THE COURT:  Anything else?

17         MS. HINTON:  No, Your Honor.

18         The COURT:  Nice to see all of you.  We will be in

19   recess.

20         (Whereupon, the proceedings are adjourned.)

21

22

23

24

25

68

1                    CERTIFICATE OF REPORTER

2

3           I, Karen V. Andersen, Registered Merit Reporter,

4    Certified Realtime Reporter for the State of South Carolina

5    at Large, do hereby certify that the foregoing transcript is

6    a true, accurate and complete Transcript of Record of the

7    proceedings.

8           I further certify that I am neither related to nor

9    counsel for any party to the cause pending or interested in

10   the events thereof.

11

12

13

14

15   Karen V. Andersen
     Registered Merit Reporter
16   Certified Realtime Reporter

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
**GREENVILLE DIVISION**

CASE NO: **3:20-cr-00453**

UNITED STATES OF AMERICA,

vs.

TOMMY NOVAK LLOYD

DEFENDANT.

NOTICE OF APPEARANCE

Please take notice that the counsel identified below has been retained to represent the above named defendant in the above-captioned matter. The Clerk of Court is requested to serve notice of all hearings, pleadings and motions upon counsel for the Defendant.

Respectfully submitted,

Steven M. Hisker
HISKER LAW FIRM, PC
126 East Main Street
Duncan, South Carolina 29334
SteveHisker@gmail.com
864-921-1432

ATTORNEY FOR THE DEFENDANT
FEDERAL ID #: 7666

Duncan, South Carolina

January 6, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
**COLUMBIA DIVISION**

### CASE NO: 3:20-cr-00453

UNITED STATES OF AMERICA,

vs.

TOMMY NOVAK LLOYD

DEFENDANT.

MOTION TO WITHDRAW GUILTY PLEA

The above-named defendant, by and through undersigned counsel, moves this Court pursuant to Fed. R. Crim. P. 11(d)(2)(B), to withdraw his guilty plea.

A defendant may withdraw a plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). However, a defendant does not have an absolute right to withdraw a guilty plea, United States v. Walker, 934 F.3d 375, 377 n.1 (4th Cir. 2019), and "bears the burden of demonstrating that withdrawal should be granted," United States v. Thompson-Riviere, 561 F.3d 345, 348 (4th Cir. 2009) (internal quotation marks omitted).

"The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the [Fed. R. Crim. P.] 11 colloquy at which the guilty plea was accepted," and "a properly conducted Rule 11 guilty plea colloquy . . . raises a strong presumption that the plea is final and binding." Nicholson, 676 F.3d at 384 (alteration and internal quotation marks omitted).

Additionally, Courts should consider (1) whether the defendant provided credible evidence that his plea was not knowing or voluntary; (2) whether he credibly asserted his legal innocence; (3) whether there was a delay between entering the plea and moving for withdrawal; (4) whether he had close assistance of competent counsel; (5) whether the withdrawal of the plea would prejudice the government; and (6) whether the withdrawal would inconvenience the court and waste judicial resources. United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991).

In this case, Mr. Lloyd concedes that the Court fully complied with Rule 11 in conducting the plea colloquy, however, Mr. Lloyd submits that he was misled by plea counsel and was never fully apprised of the discovery in the case nor the relevant law. Mr. Lloyd alleges that he was completely ignorant of the process and that plea counsel failed to advise him of several key aspects of the law, specifically, relevant conduct. Mr. Lloyd also maintains that plea counsel failed to fully investigate and advise Lloyd of any possible defenses and arguments. Finally, Mr. Lloyd feels that he was misled and effectively coerced into pleading guilty because plea counsel told him that a marijuana offense would be treated the same as a cocaine offense. Mr. Lloyd concedes that he answered all of the Rule 11 questions correctly but that he was a "deer in the headlights" and followed along with what everyone else said on the advice of his attorney. Mr. Lloyd submits that he did not did not receive close assistance of counsel as discussed in United States v. Bowman, 348 F.3d 408, 416 (4th Cir. 2003), and has "demonstrated (1) that his

counsel's performance fell below an objective standard of reasonableness and (2) that there was a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial" (brackets and internal quotation marks omitted)).

Mr. Lloyd maintains that he is innocent of the allegations that he knowingly entered into a conspiracy to distribute cocaine. To credibly assert legal innocence, a defendant must "present evidence that (1) has the quality or power of inspiring belief, and (2) tends to defeat the elements in the government's prima facie case or to make out a successful affirmative defense." Thompson- Riviere, 561 F.3d at 353 (italics and internal quotation marks omitted).

Mr. Lloyd has now had an opportunity to review all of the discovery in the case. The entirety of the government's case revolves on 4 recorded telephone calls between Lloyd and co-defendant Anthony Britt. In several of the calls, there is a vague mention of the number 18. The government alleges that the use of number 18 referred to 18 ounces of cocaine. However, there is no discussion in any of the calls that references cocaine. There is no use of code words, nor is a price ever discussed. Each of these calls purports to reference a meeting between Britt and Lloyd. The government only has evidence that one of these meetings actually took place. There is no evidence that the other 3 meetings actually happened. Regarding the one meeting that was confirmed, the authorities never found any drugs. Interestingly, the call discussing this meeting does not discuss the number

18 nor any other references to drugs or money. Authorities conducted a traffic stop after seeing Britt leave Lloyd's residence and found approximately $15,500.00 cash in Britt's car. The government merely speculates that this money came from Lloyd. Several months after the stop, the government executed a search warrant at the address where Lloyd met Britt. This search did not produce even a trace of cocaine.

Mr. Lloyd entered his guilty plea on June 7, 2021 and he formally asserted his request to withdraw his plea on November 5, 2021. This 5 month delay is not significant in light of Covid. Mr. Lloyd began having concerns earlier but he could not get sufficient explanation from plea counsel. Mr. Lloyd personally brought his concerns to the Court at the next available opportunity which was his scheduled sentencing hearing. Mr. Lloyd has now fully reviewed the matter with the undersigned counsel and he hereby confirms his desire to withdraw his guilty plea.

Finally, Mr. Lloyd does not believe that a withdrawal of his plea would prejudice the government nor waste judicial resources.

Wherefore, based on the above and such facts and arguments that may be presented at a hearing, Mr. Lloyd submits that he can show a fair and just reason for requesting the withdrawal of his guilty plea.

Respectfully submitted,

Steven M. Hisker
HISKER LAW FIRM, PC
126 East Main Street
Duncan, South Carolina 29334
SteveHisker@gmail.com
864-921-1432

ATTORNEY FOR THE DEFENDANT
FEDERAL ID #: 7666

Duncan, South Carolina

February 19, 2022

```
 1                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF SOUTH CAROLINA
 2                            COLUMBIA DIVISION


 3
     UNITED STATES OF AMERICA,          )
 4                                      )
             Plaintiff,                 )  Docket No. 3:20-453
 5                                      )
             vs.                        )  Columbia, SC
 6                                      )
                                        )
 7   TOMMY NOVACK LLOYD,                )
                                        )
 8           Defendant.                 )
     _____)  DATE:  March 15, 2022
 9

10            BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR
                UNITED STATES DISTRICT JUDGE, PRESIDING
11                          PLEA HEARING

12   A P P E A R A N C E S:

13   For the Plaintiffs:

14
     BRANDI BATSON HINTON
15   US Attorneys Office
     55 Beattie Place, Suite 700
16   Greenville, SC 29601
     864-282-2100
17   Email: brandi@ellishinton.com

18
     For the Defendants:
19
     STEVEN M. HISKER
20   126 E Main Street
     Duncan, SC 29334
21   864-921-1432
     Email: SteveHisker@Gmail.com

22

23

24   COURT REPORTER:                 KAREN V. ANDERSEN, RMR, CRR
                                      United States Court Reporter
25                                    901 Richland Street
                                      Columbia, SC  29201
```

2

1          THE COURT:  Good afternoon.  Ms. Hinton please call

2     the next case.

3          MS. HINTON:  Thank you, Your Honor.  This is United

4     States of America v. Tommy Novak Lloyd, Case No. 3:20-453.

5     Mr. Lloyd is present with his attorney Steve Hisker.  And

6     he's here on his motion to withdraw his guilty plea.

7          THE COURT:  Mr. Hisker is a new attorney in the

8     case.  Both attorneys have briefed the issue.  I reviewed the

9     brief.  And I'm well aware of the factor I'm supposed to

10    apply in addressing this motion.  This is your motion, Mr.

11    Hisker.  I will be glad to hear from you first.

12         MR. HISKER:  Thank you, Your Honor.  I would ask for

13    just about 30 seconds.  Me and Mr. Lloyd were discussing --

14         THE COURT:  Take your time.  Go right ahead.

15         MR. HISKER:  It won't take very long.

16         THE COURT:  Go ahead.

17         MR. HISKER:  Your Honor, we are prepared to proceed.

18         THE COURT:  Before we start, let me ask.  We don't

19    have a transcript of the guilty plea yet, do we?

20         MS. HINTON:  We do, Your Honor.

21         THE COURT:  We do?  All right.  Good.

22         Mr. Hisker.

23         MR. HISKER:  And I believe in my brief I allege that

24    there's no problem with that guilty plea.  He answered all

25    the questions correctly.  And I believe the Court asked all

3

```
1    the questions correctly.  But at this time, I would call

2    Mr. Lloyd to the stand.

3              THE COURT:  All right.  Certainly.

4              THE COURT DEPUTY:  Please raise your right hand and

5    state your name for the record.

6              THE DEFENDANT:  Tommy Lloyd.

7                        TOMMY LLOYD,

8         having been duly sworn, testifies as follows:

9              MS. HINTON:  Your Honor, before we begin his direct,

10   may I just put one thing on the record?

11             THE COURT:  Yes.

12             MS. HINTON:  And I have discussed this with Mr.

13   Hisker.  And Mr. Ellis has discussed this with Mr. Hisker.

14   And I know Mr. Hisker has discussed this with Mr. Lloyd.  But

15   given the nature of this hearing, the Government would like

16   to put on the record that if Mr. Lloyd testifies differently

17   than he testified under oath in his Rule 11 colloquy, the

18   Government does intend to ask Your Honor if he's not allowed

19   to withdraw his guilty plea to have the PSR revised to add

20   obstruction.  So I just wanted to make sure that Mr. Lloyd

21   was aware of our conversation with Mr. Hisker.

22             THE COURT:  All right.  Mr. Hisker, you are aware of

23   that possible issue?

24             MR. HISKER:  I am, Your Honor.  And I advised him of

25   also the possibility of losing his acceptance of
```

```
 1   responsibility.
 2          THE COURT:  And after you advised him, he still
 3   indicates he wishes to testify?
 4          MR. HISKER:  Your Honor, he does.
 5          THE COURT:  Very good.  You may proceed.
 6          MR. HISKER:  Is it all right if I question the
 7   witness from here?
 8          THE COURT:  You need to stand near the microphone.
 9                    DIRECT EXAMINATION
10   BY MR. HISKER:
11      Q.  Mr. Lloyd, who was your lawyer in the guilty plea?
12      A.  Stanley Myers.
13      Q.  Prior to your guilty plea, did you have an
14   opportunity to review your discovery in the case?
15      A.  I never went over my motion of discovery.
16      Q.  Why didn't you go over your discovery?
17      A.  I mean, each time, like I text him, asked him about
18   it, he always, you know, was on it.  Like or he just never
19   showed it to me.  It was always a different story.
20      Q.  Did you make appointments to go see your discovery?
21      A.  No, I never saw it at all.
22      Q.  Did you attempt to see it?
23      A.  No.  I mean, I asked him about it, but he never made
24   it appointment for me to go see it.  In order to go to his
25   office, it's got to be by appointment.
```

5

```
1              THE COURT:  Let me jump in.  Obviously, the
2    defendant was not in custody at the time?
3              THE DEFENDANT:  No, I wasn't.
4              MR. HISKER:  That is correct, Your Honor.
5    BY MR. HISKER:
6        Q.   Did you have a pretrial conference scheduled for
7    February 25th of 2021?
8        A.   Yes, sir.
9        Q.   And prior to that, did you contact your lawyer?
10       A.   Yes, I contact my attorney.
11       Q.   What method did you contact him?
12       A.   I called.
13       Q.   You called him?
14       A.   Yeah.
15       Q.   Did you also text him?
16       A.   Yes, I text as well.
17       Q.   And what was the result of those text messages?
18       A.   I mean, like I just said, either it was on like
19   trial -- like, no, he was on military duty the one time.  The
20   one time server was down.  It was always different scenarios.
21   The only time I really met with Stanley was for my
22   preliminary hearing.  After that, to sign like continuance
23   before my trial conference.
24       Q.   Tell the Court about your understandings of those
25   continuances.
```

0154

6

1          A.    He told me those continuance was from the

2     Government.

3          Q.    What do you mean they were from the Government?

4          A.    He told me the Government was asking for the

5     continuance each time.  It was several different times I was

6     due to go for a trial conference.  And each time I went in to

7     his office, he told me the Government was asking for an

8     extension due to COVID and everything else.  But when I did

9     read one of the waiver forms, it was saying that we was the

10    ones asking for the extension to have meaningful

11    conversations with the Government, which those conversations

12    never took place as well.

13         Q.    So do you understand now that you were waiving your

14    rights to a speedy trial?

15         A.    I mean, after speaking with you, yes.

16         Q.    What do you mean after speaking with me?

17         A.    Because before I thought that, I mean, I wasn't

18    waiving my rights, that the Government was asking for a

19    continuance due to the COVID.  That's what I was told by my

20    prior attorney.

21         Q.    And what's your understanding now?

22         A.    That I was the one waiving my rights to those trials

23    during that period of time.

24         Q.    So are you telling the Court that your attorney

25    never advised you about your speedy trial rights?

7

1        A.    Never, no, sir.

2        Q.    Why did you sign those forms?

3        A.    Because that's the advice I was given by my attorney

4    saying that the Government was the ones asking for those

5    continuance, and that that was the best advice that he gave

6    me.  That was it.

7        Q.    But why was it the best advice?

8        A.    I can't speak -- I mean, I don't know that.  Like,

9    when it comes to federal law, I'm ignorant to federal law.  I

10   mean, I paid Stanley to get the best advice from him as

11   possible.  So when he told me to come into his office and

12   sign those waivers forms, that's what I did.

13       Q.    So you didn't question at all why you were signing

14   those documents?

15       A.    Yes, I questioned him one time.  And that's when he

16   told me it was from the Government.  And that's what I

17   thought.

18       Q.    But that doesn't explain why you did it, even though

19   it was for the Government.  I mean, why did you sign it?

20       A.    That's the advice my prior attorney gave me, Stanley

21   Myers.  I mean, that the Government was asking for a

22   continuance in the case each time, so fill out those forms.

23   And that's what I did.

24       Q.    Now, on June 2nd, 2021, you also had another text

25   exchange with your lawyer; is that correct?

8

1    A.    Yes.

2    Q.    And did you tell your lawyer at that time that you

3    felt like you were being forced into pleading guilty?

4    A.    Yes.  During that period of time, I told him I was

5    forced into this guilty plea, yes.

6    Q.    And why was that your belief at the time?

7    A.    I mean, because prior to that text message, I think

8    right during the time I was making the guilty plea with Ms.

9    Brandy Hinton, I came in Stanley's office and spoke to him

10   again.  Like, throughout this whole process, like, I always

11   said, I was speaking of marijuana.  I mean, I got messages

12   and text messages showing that.  So, like, when I came and

13   spoke to him, he told me that marijuana carry a more severe

14   penalty than cocaine, so it was best that I did plead to a

15   quantity of cocaine due to the fact marijuana was a Schedule

16   I drug and cocaine was a Schedule II drug.

17   Q.    So they told you that marijuana was more serious

18   than cocaine?

19   A.    Right.  I mean, I had recordings to elaborate on

20   that as well that I did on my own.

21   Q.    Why then would it be in your best interest to plead

22   to a cocaine offense when you were only guilty of marijuana?

23   A.    Because they said marijuana was a Schedule II and --

24   I mean, marijuana was a Schedule I.  Cocaine was a Schedule

25   II.  And the judge might look at marijuana as being more

9

1    severe than the cocaine.  Like I said, I have recordings to

2    reiterate what I'm saying.

3        Q.   Well, prior to pleading guilty, did you ever discuss

4    the sentencing guidelines?

5        A.   No.

6        Q.   Did you ever discuss how drug weights were

7    calculated?

8        A.   No.

9        Q.   So that was on June 2nd.  Do you remember when your

10   guilty plea was?

11       A.   I think June 7th.

12       Q.   Did you have a text exchange with your lawyer prior

13   to that June 7th plea?

14       A.   Yes.

15       Q.   Did he text you something about your drug weights?

16       A.   Yes.  He told me that Ms. Hinton said my drug weight

17   and my guidelines would be low.  That's all he said.  And I

18   have that in text message as well.

19       Q.   Well, when you say "low", what was your belief of

20   what low would be?

21       A.   Well, when I first initially spoke with Stanley, I

22   was at a level 24.  Being like the very first day I spoke

23   with him, he was saying that I was looking at, like, 63

24   months.  And when I went home and looked at the federal scale

25   guideline, I think that placed me at a level 24.  So I

1  figured I was at a level 24 when I first talked to him before

2  saying I was going to trial. And I figured it would have

3  been lower than what that was then.

4      Q.  Well, that sentencing guidelines, though, so how did

5  you come to that understanding about the sentencing

6  guidelines? When did you talk and say it was a 24?

7      A.  No. What I'm saying, when I first talked to

8  Stanley, when I first met with him, like in June of 2020, he

9  told me right around the time I was looking at for 500 grams

10  or more, he said that would be right around like 63 months or

11  something like that. So once I went home and looked at the

12  table myself and went over with my sister -- my sister is an

13  attorney as well. So, I mean, we kind of went over it

14  ourselves. So I knew what I was supposed to be at based on

15  what he said. So when I initially said I was going to trial,

16  I was supposed to be taking a better deal, so I figured when

17  he said the guidelines would be low and the drug weight would

18  be lower, it would be lower than what I was already at.

19      Q.  Several times at your plea on June 7th, the Court

20  advised you that you were pleading guilty to being involved

21  from a cocaine conspiracy?

22      A.  Right.

23      Q.  Why did you go along with that?

24      A.  That was the advice that I was given by my attorney

25  and also somebody that worked out of my attorney's office

1    give when they told me that marijuana was more severe than

2    cocaine in a federal drug conspiracy.  So I thought I was

3    doing the best thing by pleading guilty to the cocaine based

4    on what my attorney said.

5        Q.   Prior to pleading guilty, did your attorney ever

6    discuss defenses with you?

7        A.   No, we never went over no defense.  Like I said, my

8    preliminary hearing, like July 2020 and every time after

9    that, I just went to his office to fill out continuance form

10   right before my trial conference.

11       Q.   And the discovery in your case, you've had an

12   opportunity to review it now, haven't you?

13       A.   Yes, I reviewed it in your office in February, yes.

14       Q.   And you had an opportunity to listen to

15   approximately four wiretap telephone calls?

16       A.   Yes, sir.

17       Q.   Did you ever have an opportunity to review those

18   wiretap telephone conversations with your attorney?

19       A.   No.  I never reviewed them with the attorney.  But

20   the day that the federal agents came out, they let me hear

21   two of the phone calls.

22       Q.   All right.  Did your attorney ever discuss a phrase

23   of different conspiracies?

24       A.   We never spoke about no different conspiracies at

25   all.

12

1    Q.   Did your attorney ever talk to you about mere
2 buyer-seller relationship?
3    A.   No, sir.
4    Q.   There was also a search warrant executed at your
5 house; is that correct?
6    A.   Yes, sir.
7    Q.   After reviewing discovery with me, would it be your
8 recollection that the last telephone call was about November
9 18th?
10    A.   Yes, sir.
11    Q.   And so that would be the last wiretap conversation
12 implicating a possible deal; is that correct?
13    A.   Yes, sir.
14    Q.   And that would be November 18th of 2019?
15    A.   Yes, sir.  Yes, sir.
16    Q.   And do you know when the search warrant was executed
17 at your house?
18    A.   June 23rd, 2020, approximately 6 a.m.
19    Q.   How do you remember that?
20    A.   I mean, I never forget it, just all those officers
21 and everything.
22    Q.   And but, I mean, how do you remember the date?
23    A.   Oh, because I went on a trip on June the 19th.  My
24 birthday was June 18th.  So June 19th, me and my fiancee went
25 to a trip in California to hang out for my birthday.  She

13

1    treated me that weekend.  And that was the date that we

2    returned.  That same day we returned from California, that's

3    when the raid took place.  So that's why I remember.

4        Q.  Did your attorney ever discuss with you options to

5    try to suppress that search warrant?

6        A.  No, we never did none of those.  We never did that

7    at all.

8        Q.  And in that search warrant, two guns were found

9    in -- was it your --

10       A.  my fiancee, yes.

11       Q.  Your fiancee had possession of two guns in the

12   house?

13       A.  Yes.

14       Q.  And they found those in the search warrant?

15       A.  Yes.

16       Q.  Did those guns play any role in your pleading guilty

17   as well?

18       A.  Yeah.  They came back up from time to time, which I

19   was never charged with them.  Like, throughout my -- I think

20   throughout the -- one of the sentences, they came back up

21   saying about the two points as well.  But it ain't really

22   played no role because I never was really charged with the

23   weapons.

24       Q.  So there was never a discussion about possibly

25   moving to suppress the evidence from that search warrant?

14

1       A.   No, there never was a motion for that.

2       Q.   And you never discussed the fact that it was some

3  seven months later that search warrant was executed?

4       A.   No, sir.

5       Q.   And by later, I mean, from the last time they had

6  some recording?

7       A.   Right, no.

8       Q.   So you were -- prior to the plea, you were telling

9  your lawyer you felt like you were being forced?

10      A.   Yes.  I was felt like I was being forced into

11  pleading guilty to this cocaine conspiracy, right.

12      Q.   And that was approximately five days before --

13      A.   Before I pled guilty, yes.

14      Q.   And you actually used the word being -- you actually

15  used the phrase, I feel like I'm being forced?

16      A.   Yes.  I sent you the same text message that I sent

17  him.  Yes, sir.

18      Q.   And how often -- how many times after the guilty

19  plea did you discuss it with your lawyer?

20      A.   Probably like each week I talked to him and asked

21  did he spoke with the, you know, the Government about --

22  because, like I said, it was a quantity that they said I pled

23  to.  So we was supposed to be getting with Brandy Hinton on a

24  quantity amount.  So each week I was calling him asking about

25  what's the quantity amount that I was pleading to.  And he

1  always brushed me off.  That's one of the times his server

2  was down, had a virus, and that's when that came into issue

3  right before I was due to do the variance motion or whatever.

4  Like, each week I was texting him trying to find out did he

5  got with the Government on the quantity amount and all that.

6       Q.   Did you ever tell him that you wanted to withdraw

7  your plea?

8       A.   Yes, I told him that.

9       Q.   How often did you tell him that?

10      A.   I -- I told him like a month before the actual

11  hearing was because, like, once I got the -- before -- like,

12  after the plea, I thought that, you know, I was pleading

13  guilty to a small quantity amount, like I was told.  So once

14  I got my -- I think it's called a PSR back from the

15  Government, that's when I was telling him that I was ready to

16  withdraw my plea, during that period of time.

17      Q.   And were you shocked when your PSR came about more

18  than two-and-a-half kilos of cocaine?

19      A.   Yes.

20      Q.   Did you discuss that with your lawyer?

21      A.   I discussed that with him.  That's why he filed the

22  objection.  I think, that's what it's called.  That's why he

23  did the objection.

24      Q.   Why did you wait five months before bringing it to

25  the Court's attention?

16

1     A.    I mean, I was waiting to get information back from

2  the courts.  Like I said, after I made the initial plea, we

3  was waiting on my PSR at the get back.  Like I said, based on

4  the conversations I had with my attorney, Herman Gill, I

5  thought that I was pleading to a small quantity of cocaine,

6  which equals a small amount of marijuana, due to the fact

7  they said that marijuana was more severe than cocaine.  So I

8  thought I was pleading guilty to the smallest amount up until

9  I got my PSR back.  That's when the questions came into

10 effect then.

11    Q.    What were you thinking through the course of your

12 guilty plea, though, when you were answering the Court's

13 questions?

14    A.    I mean, that was the advice that I was given by my

15 attorney, saying if I didn't go along that day with whatever

16 the judge was saying, that I could possibly get more time.

17    Q.    Well, that's usually correct information.  But why

18 were you going to agree to something that wasn't true?

19    A.    If -- like, I paid Stanley a substantial amount of

20 money to represent me in a federal case.  I know nothing

21 about federal law.  So I never told nobody that I was

22 discussing cocaine at no point.  So when my attorney telling

23 me that a small amount of marijuana was more severe and it

24 can cost me more time than cocaine, what else was there for

25 me to do?  You know, I was taking his advice throughout his

1   whole period of time because I don't know federal law.

2       Q.   You've had an opportunity to review the indictment

3   in this case, haven't you?

4       A.   Yes.

5       Q.   Were you involved with any of these other people

6   other than Mr. Britt?

7       A.   I mean, I wasn't involved with nobody other than

8   Britt.  That's on the record.  Nobody never said anything

9   about me.  That's on record.  I don't know none of those

10  guys.

11      Q.   Did you ever receive cocaine from Mr. Britt?

12      A.   No, I never received cocaine from Mr. Britt.

13      Q.   What were you receiving from Mr. Britt?

14      A.   Marijuana.  I mean, when the federal agents came out

15  and made the bust, that's what they found, marijuana.  I

16  mean, throughout this whole period of time, nobody never

17  pulled me over and found cocaine.  I mean, nobody never said

18  I sold anybody no cocaine.

19      Q.   We've reviewed everything in your case at this

20  point; would you agree with that?

21      A.   Yes, I agree to that.

22      Q.   Do you now have a clear understanding of your

23  discovery?

24      A.   Yes.

25      Q.   And you agree there were four recorded telephone

18

1   calls; is that correct?

2        A.   Yes.

3        Q.   And do any of them mention drugs?

4        A.   No, none of them mention no drugs.  There's only one

5   of the phone calls where I made a reference to weed.  That

6   was on the fourth phone call, I think November the 18th.

7        Q.   And there were no drugs found in your home except

8   for a few grams of marijuana; is that correct?

9        A.   I think right at like 14 to 15 grams of marijuana

10   was found, right.

11       Q.   And your fiancee' had two guns?

12       A.   Right.

13       Q.   You and I went over your sentencing guidelines

14   thoroughly; is that correct?

15       A.   Correct.

16       Q.   You now have a good understanding of the guidelines?

17       A.   Yes, sir.

18       Q.   Do you understand the drug weights?

19       A.   Yes, sir.

20       Q.   Do you understand where you would be if you were

21   responsible for marijuana as opposed to cocaine?

22       A.   Yes, sir.

23       Q.   And you don't know exactly where, but you know it's

24   less, right?

25       A.   Yes, sir.

1    Q.   Knowing what you know now, would you have pleaded

2    guilty?

3    A.   No, sir.

4         MR. HISKER:  Your Honor, no further questions.

5    Please answer any questions from Ms. Hinton.

6         THE COURT:  Thank you, cross-examination.

7         MS. HINTON:  Thank you, Your Honor.

8                        CROSS-EXAMINATION

9    BY MS. HINTON:

10   Q.   Mr. Lloyd, you concede that the Rule 11 hearing that

11   we had many, many months ago was done correctly, correct?

12   A.   You said many, many months ago what now?

13   Q.   You agree that when you came in here and pled

14   guilty, that that hearing was conducted correctly by Judge

15   Anderson; is that correct?

16   A.   Yes, the hearing was conducted correctly, yes,

17   ma'am.

18   Q.   And you agree that you swore to tell the truth

19   during that hearing; is that correct?

20   A.   Yes.

21   Q.   And you agree that you lied; is that correct?

22   A.   I mean, I did what my attorney told me to do.

23   Q.   That wasn't my question.  Are you agreeing that you

24   lied?  Yes or no?

25   A.   I mean, I never lied.  I went with what my lawyer

1  told me to go with.

2      Q.   So it's your testimony under oath right now that you

3  did not lie under your Rule 11 hearing?

4      A.   I went with whatever my lawyer told me to go with

5  during the Rule 11 hearing.  And like I said, throughout the

6  whole hearing, I didn't know what a Rule 11 was.  I thought

7  it was just a guilty plea.  And I was advised by my attorney

8  if I didn't go along with what was being said by the judge,

9  that I could get more time.

10     Q.   Okay.  I'm going to ask you a question, then you

11 answer yes or no, and then you can explain it.  Okay?

12     A.   Okay.

13     Q.   Did you lie during your Rule 11 plea hearing?  Yes

14 or no?

15     A.   Lied about what?

16     Q.   Anything.  Did you lie at all during your Rule 11 --

17     A.   No, I didn't lie about anything.

18     Q.   Okay.  So then you told the truth when you told the

19 judge on page 9, line 14 of the transcript, that you had had

20 an ample opportunity to discuss the case with your attorney

21 and you said yes, correct?  That was not a lie?

22     A.   I don't recall that.  Like, everything that was

23 going on that day, like, I really wasn't paying attention.

24 My mind was completely somewhere else that day.  Like I said,

25 my lawyer had already coerced me into making a plea.  So that

1   particular day, I kind of wasn't paying attention what was

2   going on, because the judge was talking to me and several

3   other people.  So I don't recall that, ma'am.

4         Q.   And then when he followed up and asked you on page

5   9, line 24, are you satisfied with your attorney's

6   representations, and you said yes, that was not a lie either,

7   correct?

8         A.   During that period of time I was satisfied.  Once

9   the information got out, no, I wasn't satisfied.  During that

10   period of time I was.  But once I found out that what he was

11   doing, then I wasn't satisfied.

12         Q.   So it's your testimony that at your plea hearing,

13   you were satisfied with your attorney's representation?

14         A.   Before then, yes, I was.

15         Q.   And then again when Judge Anderson asked you on page

16   10, line 9 of the transcript, has your attorney done

17   everything you asked him to do for you, and you said yes,

18   that was not a lie either, correct?

19         A.   Yeah, it was a lie.  He didn't do everything I

20   thought he was going to do.  I mean --

21         Q.   You did lie?

22         A.   Yeah.  But, like I said, that was after I found out.

23   That hearing took place in June.  We had several other months

24   for me to find out after that what was going on.  So during

25   that period of time, yes.  But I had, like, five other months

22

1   to figure out after that what was going on with my case.

2       Q.   And then on page 10, line 18, when the Court asked

3   you, is there anything that you need for your attorney to do

4   for you at this point before we proceed any further, and you

5   said no, that was the truth?

6       A.   Once again, during that period of time, ma'am, yes,

7   that was the truth.  But after other findings, no, that's not

8   the truth.

9       Q.   All right.  And you signed a plea agreement in this

10  case.  Do you recall that?

11      A.   Yes, I recall that.  But I also recall him saying

12  that you saying that if I did pled guilty, the drug weight

13  and the guidelines would be lower.  And that wasn't the case.

14  So that's the only reason why I did do that.

15      Q.   And you signed that plea agreement, correct?

16      A.   Yes.

17      Q.   And in your plea, we went over that plea agreement,

18  correct?

19      A.   No, we didn't go over no plea agreement.

20      Q.   We did not go over the plea agreement?

21      A.   No.

22      Q.   Okay.  So all these pages in the transcript

23  beginning on page 46, line 24, and continuing on to page 49,

24  line 15, where we go over your plea agreement, that never

25  happened?

1       A.   Like I said, all that took place that day on the

2    23rd.  But like I said, I made that plea unknowingly because

3    I was coerced by my lawyer into making my plea.

4       Q.   And when the judge asked you on page 49, line 10, is

5    that a correct summary of your plea agreement, you said yes,

6    sir, was that the truth?

7       A.   Yes, from the advice of my attorney, yes.

8       Q.   I am not asking you about what your attorney advised

9    you to do.  I'm asking whether or not you told the truth.

10   Those are two very different things.  So when you said --

11      A.   During that time --

12      Q.   Let me finish, please.  When you said that was a

13   correct summary of your plea agreement, was that -- and you

14   said yes, was that the truth?

15      A.   No, that wasn't the truth.

16      Q.   And when he said that you had signed the last page

17   and understood that it was filed, you acknowledge that was

18   true, correct?

19      A.   I don't recall.

20      Q.   All right.  And within that filed plea agreement,

21   paragraph 12, it talks about that you have met with your

22   attorney, that you've met with your attorney a sufficient

23   number of times, that you've been truthful with your

24   attorney, and that you are aware of -- y'all discussed the

25   information related to the case, any possible defenses,

24

1    including the existence of exculpatory or favorable evidence.

2    You discussed your right to a trial, your right to call

3    witnesses, your right to not testify, all of these rights,

4    and you signed and you acknowledged that you had done all

5    those things in your plea agreement, right?

6        A.   Wrong.  I don't recall none of that.  I mean, if it

7    was read to me that day that I made my plea, I don't recall

8    hearing that.  Like I said, it was several other people in

9    court that day.  So my mind was all over the place.

10       Q.   Well, you signed it.  So are you also alleging in

11   this Court that you didn't read it?

12       A.   No, I didn't read it that day.  All I did was sign

13   it.  No, I didn't read nothing that day at all.

14       Q.   So it's your testimony that your lawyer said, here's

15   a 10-page document, sign this, and you didn't at all read it?

16       A.   I mean, ma'am, like, you were here that day.  You

17   know nobody ain't read no 10-page documents.  It was me and

18   three other people.  Nobody didn't read those documents.

19       Q.   I am not asking in court.  When you met with your

20   attorney to sign that plea agreement, did you read it?

21       A.   No, ma'am.  I signed the document here.  I didn't

22   sign with my attorney in his office.  I signed the documents

23   here.

24       Q.   You have a college degree, correct?

25       A.   Right.

1      Q.   And your sister's a lawyer, correct?

2      A.   Correct.

3      Q.   And you want this Court to believe that you signed a

4  10-page document related to your plea and you never read any

5  of it?

6      A.   I never read any of it, correct.

7      Q.   You said that you were forced into pleading guilty,

8  correct?

9      A.   Correct.

10     Q.   But you never told the Court that during your

11 preliminary hearing; is that correct?

12     A.   I mean, the plea hearing was in June.  After I got

13 all the information, that's when I came up with that.  That's

14 what I'm saying.  That was after the fact, ma'am.

15         THE COURT:  Let me interrupt here.  What was the

16 date of the plea agreement was signed and what was the date

17 of the guilty plea?

18         MS. HINTON:  Your Honor, the plea agreement was

19 signed on May the 27th and his plea was on June the 7th.

20         THE COURT:  So, Mr. Lloyd, did you testify earlier

21 you signed the plea agreement in the courtroom on the day of

22 your plea, or did I misunderstand what you said?  I am not

23 arguing with you.  I'm just asking.

24         THE DEFENDANT:  Yeah, I don't really recall when I

25 signed the guilty plea, Your Honor, to be honest.

1          THE COURT:  All right.

2   BY MS. HINTON:

3      Q.   In fact, Mr. Lloyd, going back to you saying that

4   you were forced because you thought you were going to receive

5   a specific sentence, the judge actually addressed that with

6   you during your plea, correct?

7      A.   Like I said, ma'am, the judge was talking to me and

8   several other people.  So I'm being honest as I can be.  I

9   heard some of the things the judge was saying, but I didn't

10  hear everything.  It was so much going on that day.  And like

11  I said, this has been a nervous -- this had been wreck on my

12  brain.  So my focus be, I come and go.  I never went through

13  nothing like this before.  So I don't recall what really went

14  on that day in court.

15     Q.   Mr. Lloyd, you have been through something like this

16  before, because you pled guilty to trafficking cocaine

17  before, have you not?

18     A.   Yes.  But, I mean, you don't know the specifics of

19  that case, ma'am.  So I'm not going to speak on it either.

20     Q.   On page 32 of the transcript at line 23, the judge

21  advised that you if the sentence you receive is more severe

22  than you expected it to be, you will still be bound by your

23  plea and you will have no right to withdraw it.  You

24  indicated that you understood; is that correct?

25     A.   I don't recall that conversation, ma'am.

1    Q.   You stated that you are a weed dealer, right?

2    A.   No, I never stated I deal weed.  I said I buy

3    marijuana and smoke marijuana.

4    Q.   Okay.  So you stated that you buy marijuana from Mr.

5    Brett, right?

6    A.   Yes.

7    Q.   Okay.  And you said that Mr. Myers misled you

8    because he said that pleading to marijuana would be more

9    severe than pleading to cocaine; is that correct?

10   A.   Right.  Like, he labeled marijuana as being a

11   Schedule I drug and cocaine being a Schedule II, and the

12   penalties could be more severe with marijuana.  And I have a

13   recording with him stating that, him and one of his associate

14   attorneys, Gill.

15   Q.   Do you have those recordings with you today?

16   A.   I mean, my attorney may have them.

17   Q.   Did you read what your attorney filed on your behalf

18   at ECF 1130, this motion to withdraw your guilty plea?  Did

19   you read that?

20   A.   Yeah, he went over with me, yes.

21   Q.   So you will remember on page 2 of 5, or perhaps you

22   will remember, that he wrote, finally, Mr. Lloyd feels that

23   he was misled and effectively coerced into pleading guilty

24   because plea counsel told him that a marijuana offense would

25   be treated the same as a cocaine offense, not that it would

1   be treated more severely.  So which one is the lie?

2       A.   I mean, it's no lie at all.  I mean, that's what he

3   said.

4       Q.   So he did tell you that it would be treated the

5   same, right?

6       A.   The same or if not more severe, right.

7       Q.   Okay.  Because that's a concept called relevant

8   conduct.  Are you familiar with that?

9       A.   No.  We never talked about relevant conduct at all.

10      Q.   But he told me that pleading to marijuana would be

11  the same as pleading to the cocaine because it was all going

12  to come in anyway?

13      A.   Right, right.

14      Q.   And you say that Mr. Myers told you that your

15  guidelines would be low, correct?

16      A.   No.  Actually, I asked him about it.  And he said

17  that you said the guidelines and drug weight would be low.

18      Q.   Okay.  And acknowledging that that's a relative

19  term, 51 months compared to 120 or so months is fairly low,

20  right?

21      A.   Well, when I first initially went in Stanley's

22  office, that's how much time he said I was looking at, right

23  around 51 to 63 months.

24      Q.   Okay.  And on page 30 of the transcript at line 15,

25  Judge Anderson asked you, have you each had an opportunity --

1    or excuse me, have each of you discussed with your attorney

2    how these sentencing laws might come into play at your

3    sentencing hearing.  And you said yes.  Was that a lie?

4        A.    I don't recall.

5        Q.    And then on page 31 at line 19 and 20, he says that

6    the sentence imposed may be different from any estimate that

7    your attorney may have given you.  And you acknowledge that

8    you understood that.  Was that a lie?

9        A.    Like I said, I don't recall those questions that

10   day, ma'am.

11       Q.    Okay.  And then on page 32, again, he says, and if

12   it's more severe than you expected it to be, you will still

13   be bound by your plea.  And you don't remember that either?

14       A.    I don't recall that either, no, ma'am.

15       Q.    And you said this was chaotic because Judge Anderson

16   had several of you all kind of going at the same time, right?

17       A.    Right.  But at the same time, my mind wasn't really

18   here that day.  During that same day, my mom was having, I

19   mean, one of her breasts removed.  So I was all over the

20   place.  I wasn't really thinking about that court proceeding

21   that day.

22       Q.    Well, do you recall that the Court specifically

23   addressed you individually at the end of this plea colloquy?

24       A.    And said what, ma'am?  Maybe if you bring it back to

25   my attention I could remember.

30

1    Q.   On page 63 of the transcript at line 15 he says,

2    Mr. Lloyd, do you agree that there was a conspiracy existing

3    and you knew about it and willfully joined that conspiracy?

4    And you responded yes, sir; was that a lie?

5    A.   Like I said, my attorney told me if I didn't go

6    along with what was said in court, I could be facing more

7    time.  So if I said that, that was from the advice of my

8    attorney.  Yes, ma'am.

9    Q.   So was that a lie?

10   A.   Yes.

11   Q.   He said, and you agree that the amount of the

12   controlled substance attributable to you that we have

13   discussed earlier, the Government can prove that you should

14   be held accountable or attributable to these drug weights, do

15   you agree, and you said yes.  Was that a lie?

16   A.   We never -- like, we never got -- we never made an

17   agreement on what the drug weight was as far as the quantity

18   amount.  That's what he was supposed to be calling you back

19   and forth about.  So I never got no understanding on that as

20   well.

21   Q.   But you pled guilty to the facts that I read out.

22   And in those facts, it was that you were involved in a

23   cocaine conspiracy with Mr. Britt?

24   A.   Like I told you like in the beginning, upon the

25   advice of my attorney, I pled guilty to those charges because

1   he's saying that was the best -- that was the best thing to

2   do was to plead guilty because marijuana and cocaine in that

3   case was a little bit more severe.

4       Q.   Yeah, or that it didn't matter because it was all

5   going to come in any way, that's what he told you?

6       A.   Right.

7       Q.   And in fact, in your plea summary, I mentioned

8   cocaine at least seven times in three paragraphs.

9       A.   Ma'am, like I told you, I was under the impression

10  from my attorney and his -- Attorney Gill that pleading

11  guilty to marijuana would be better than pleading guilty to

12  cocaine.

13      Q.   And you've talked about four phone calls of you on

14  the wire.  Have you reviewed your PSR?

15      A.   Yes.

16      Q.   Okay.  So you know that there's actually nine calls?

17      A.   I never saw nine calls.

18      Q.   Well, they are all in your PSR.  So did you review

19  it?

20      A.   Yes.  I don't know about my PSR.  There's only four

21  calls.  It wasn't nine calls.  Even once I went over my

22  motion to discovery, it was only four calls.  It wasn't nine.

23      Q.   October 24th, 2019, one; October 31st, 2019, at

24  2:34, two; November 12th, 2019, at 1:07, three; November

25  17th, 2019 --

1      MR. HISKER:   Judge, I'm going to object.  Is the

2  Government going to testify to those calls?  He said he only

3  recalls four.

4      MS. HINTON:  Judge, I'm going to go through them and

5  then I'm going to ask him if he reviewed them in the PSR.

6      THE COURT:  Go ahead.  Overruled.

7  Q.   That not four; November 18th at 12:52 p.m., that's

8  five; November 18th at 2:41 p.m., that's six; November 18th

9  at 3:09 p.m., that's seven; November 18th, 5:29 p.m., that's

10  8; November 18th, 5:33 p.m., that's nine.  All of which are

11  included in your PSR from pages 8 to 15.

12  A.   Right.  And none of those phone calls state anything

13  about cocaine.

14  Q.   They also don't say marijuana either, do they?

15  A.   I mean, one of those phone calls did say something

16  about marijuana on the 18th.  But, no, all of them don't say

17  nothing about marijuana, but don't say nothing about cocaine

18  either.

19  Q.   My point is because drug dealers don't say, hey,

20  man, can I buy from cocaine from you, right?

21  A.   But, I mean, you are saying I'm a drug dealer.

22  There's nothing on record saying I'm a drug dealer.  Nobody

23  saying that.  Nobody wrote no statement attesting me to being

24  a drug dealer except the Government, which is the same person

25  trying to prosecute me.  I understand that.

1    Q.   You mentioned that you met with your attorney on

2   multiple occasions, correct?

3    A.   Correct.

4    Q.   And y'all talked each week, was that your testimony?

5    A.   No, we didn't talk each week.  That wasn't my

6   testimony.  I said we kind of talked each week after I pled

7   guilty about the guilty plea.

8    Q.   Okay.  And it's your statement before the Court that

9   he did not represent you well and he didn't do anything to

10   put you in a good position for this Court; is that correct?

11    A.   Correct.

12    Q.   Okay.  But, in fact, Mr. Myers got you a reduced

13   drug weight, which it was a lesser-included offense; is that

14   correct?

15    A.   What was the reduced drug weight, ma'am?  I don't

16   recall that.

17    Q.   Okay.  So you were unaware that you started with

18   (b)(1)(B) weight, which carries a mandatory minimum five

19   years, and Mr. Myers successfully negotiated that away from

20   you, and you went down to (b)(1)(C) weight which has no

21   mandatory minimum.  Are you aware of that?

22    A.   Yes, I was aware of that, but at the same time, the

23   sentence you said I was there faced with a mandatory minimum.

24   So I don't understand what's -- actually, ma'am, I don't know

25   what's going on.  One minute I don't have no mandatory

34

1    minimum.  Then next minute I do.  That's the whole thing

2    about this process.  I was misguided throughout this whole

3    process.

4        Q.   And you understand that Mr. Myers got multiple

5    charges dismissed on your behalf?

6        A.   Which charges?

7        Q.   You are not aware that you pled guilty to Count 1 of

8    the indictment but you were, in fact, indicted in Counts 1,

9    33, and 39 of the indictment?

10       A.   No, ma'am, I wasn't.  Like, I was only indicted on

11   Count 1.  It wasn't no other counts that I was indicted on.

12   Only Count 1, that's the only thing Stanley went over with me

13   with 500 grams or more of a mixture or substance.  No other

14   count I was indicted in other than the guns they found, but I

15   wasn't charged with no guns.

16       Q.   All right.  So, Mr. Lloyd, when we were in court

17   when you first got indicted and they asked, did you and your

18   lawyer go over the indictment and have you had a time to look

19   at it and do you know what you are charged with, and you told

20   the Court yes, that was a lie too?

21       A.   Ma'am, I was only charged with Count 1 of the

22   indictment.  I wasn't charged with no other counts.  So it

23   wasn't no other counts he got dismissed.

24       Q.   Did you go over the PSR with your lawyer?

25       A.   No, I didn't go over with him.

35

1      Q.   Had you been over it since?

2      A.   Yes.

3      Q.   So then you are aware in your PSR on page 5, it

4  outlines the charges that you were charged with, Count 1,

5  Count 33, and Count 39?

6      A.   I don't recall that Count 33 or -- what is Count 33

7  and what is Count 39?

8      Q.   Perhaps you weren't aware of it because he got it

9  dismissed, right?

10     A.   No.  That's the thing.  When I initially came to

11 court, when I came to my arraignment, I was only charged with

12 Count 1 of the indictment.  That's 500 grams or more of a

13 substance.  I never been charged with nothing less, ma'am.

14     Q.   And you are aware that Mr. Myers got the Government

15 to concede a two-point gun enhancement against you?  Yes or

16 no?

17     A.   No.

18     Q.   And you are aware that the Government was not going

19 to object to Mr. Myers's variance request?

20     A.   No.

21     Q.   You weren't aware of that?  And so -- but you were

22 aware that your guidelines were going to be at the low end,

23 51 months; is that correct?

24     A.   No, I wasn't.  That's what I was told in the

25 beginning.  But after speaking with him, he's saying you and

1  him discussed supposed to be lower than that, so ...

2      Q.   Okay.  And so you want this Court to believe that a

3  licensed lawyer in good standing with the Bar, who serves in

4  the military, lied and forced you to plead guilty in front of

5  this Court?

6      A.   I mean, I got recording saying what he did.  So,

7  yes, he did.

8      Q.   And it took you five months to bring this to the

9  Court's attention?

10     A.   I mean, I went by the proper protocol waiting until

11 I be called before the Court in order.  I didn't know no

12 other way to do it.  Like I said, I recorded those

13 conversations just for times like this right here because I

14 know the Court wouldn't believe that an attorney would do

15 that.  But like I said, I have those recordings.

16          MS. HINTON:  I don't have anything further.

17          THE COURT:  Any redirect?

18          MR. HISKER:  Briefly, Judge.

19                    REDIRECT EXAMINATION

20 BY MR. HISKER:

21     Q.   Throughout the process, did you trust your lawyer?

22     A.   No, that's why I started recording our

23 conversations.

24     Q.   Well, when you were standing up in front of a guilty

25 plea and admitting to cocaine, did you trust him that that's

37

```
1    what you were supposed to do then?
2        A.    No.   That's why I started recording conversations
3    after that.
4        Q.    At the time you pleaded guilty, why did you plead
5    guilty?
6        A.    Because that's the advice that I was given by my
7    attorney.
8        Q.    So you followed that advice, didn't you?
9        A.    Right.
10       Q.    Why did you follow that advice?
11       A.    Because during that time, I thought it was the right
12   thing to do until I seek other advice.
13       Q.    So at that time you did trust your lawyer?
14       A.    Yes, during that period of time, right.
15       Q.    Do you remember reading in the transcript that it
16   said that the most the Government would seek to prove is less
17   than 500 grams of cocaine?
18       A.    What did you say now?
19       Q.    Do you remember reviewing your transcript with me?
20       A.    Yes, I remember going over it with you, right.
21       Q.    Do you recall the Court advising you -- and I'm
22   looking at the bottom of page 20 top of 21:  So with that
23   understanding, the Government will not attempt to prove
24   anything more than -- less than 500 grams of cocaine?  Do you
25   understand that?
```

1    A.   I mean, I understand that now after you going over

2  the transcript with me.  Me standing there never went over

3  the transcript.

4    Q.   So did you have a belief after your guilty plea that

5  you would not be held accountable for any more than 500 grams

6  of cocaine?

7    A.   Throughout the guilty plea, I thought I was pleading

8  guilty to a small amount of cocaine which was a quantity

9  amount.

10    Q.   When you say a quantity, are you using that in some

11  technical phrase, a quantity of cocaine?

12    A.   A quantity, which would be the smallest amount.

13  That's what I was told by my attorney.  I mean, I sent you

14  the text message where he said the guidelines would be lower

15  and the drug weight would be low.

16    Q.   I understand.  Why did you record your conversations

17  with Mr. Myers?

18    A.   I told you.  I mean, just after some of these

19  conversations, after speaking with my sister, I felt like he

20  was lying about the marijuana and cocaine.  That's why I

21  started recording the conversations.

22    Q.   Is there no question in your mind that he made a

23  distinction about marijuana being Schedule I?

24    A.   No, it's no distinction.  I have the recording with

25  him stating it with his associate attorneys.

1               MR. HISKER: Judge, can we approach briefly.

2               THE COURT: Not a criminal case. I don't like any

3 off-the-record conversations in a criminal case. I've that

4 that come back to haunt me three years after the fact when

5 the defendant says something was said at sidebar that I did

6 not know about. So it's my strict rule.

7               MR. HISKER: Well, Judge, I can tell the Court, as

8 an officer of the court, I do have these recordings. And,

9 frankly, there's language in them that I did not -- that I

10 did not prefer to play before this Court. But I can tell you

11 as an officer of the court, those discussions are made. I

12 could play that recording. I can tell you that this is

13 something that Mr. Lloyd did on his own, that --

14               THE COURT: And the federal wiretap law was not

15 violated because at least one of the participants was aware

16 of the recording?

17               MR. HISKER: That's correct, Judge.

18               THE COURT: It's a recording between --

19 attorney-client recordings?

20               MR. HISKER: Yes, Your Honor. But it's in good

21 taste, because I don't believe an attorney could advise

22 somebody to do that surreptitiously. And I certainly didn't

23 play any role in that. Mr. Lloyd did that, essentially, to

24 prove his case to me, that he didn't think I would believe

25 him if I didn't hear the lawyer saying this.

1          THE COURT:  But they purportedly support what he

2    said about his lawyer's advice on the marijuana aspect of the

3    case and so forth?

4          MR. HISKER:  Yes, Your Honor, it does.

5          MS. HINTON:  Your Honor, I can't make heads or tails

6    of what Mr. Lloyd says about most things, certainly not his

7    conversations with his lawyer.  So if Your Honor is going to

8    rely on that, I would ask Mr. Hisker -- and I certainly trust

9    that what he tells you is true -- I would ask him to be very

10   specific about what Mr. Lloyd said.  While I don't in my

11   ultimate argument think it makes a difference, I would like

12   to know exactly what it was, because I think what he says

13   specifically is important.

14         THE COURT:  I assume you don't have transcripts of

15   the recordings?

16         MR. HISKER:  I don't have transcripts of the

17   recording, but I have the audio in my computer.  Like I said,

18   I did not intend to --

19         THE COURT:  Can you tell me, as Ms. Hinton just

20   asked, a specific statement that he made that would support

21   what was testified here to today?

22         MR. HISKER:  Yes, Your Honor.  There is a complete

23   discussion about Mr. Lloyd asking about, you know, him only

24   being involved in marijuana, and he doesn't know why he's

25   getting held accountable for cocaine.  And the lawyers are

41

1   essentially telling him it doesn't matter, marijuana is

2   actually Schedule I, which is worse than Schedule II, and

3   this Court still considers marijuana to be a very dangerous

4   drug.  And I can tell you it does give the impression that

5   marijuana is --

6           THE COURT:  So you claim to have documented evidence

7   of bad legal advice on relative punishment for drugs,

8   different types of drugs?

9           MR. HISKER:  Yes, Your Honor.  But to be fair, it's

10  also after the fact.  It's after the fact of his guilty plea.

11  So I can't say that Mr. Lloyd relied on that, but it is --

12          THE COURT:  All these recordings are after the fact?

13          MR. HISKER:  Yes, it was recorded after the fact,

14  after the guilty plea, before sentencing.  But it's Mr.

15  Lloyd's position that it's the same advice that he received

16  previously.

17          THE COURT:  Just never had this come up before.  We

18  don't have to resolve this issue today.  I might want to

19  think about this a day or two.

20          THE DEFENDANT:  Can I say?  That's the advice I got

21  throughout.  That's why I recorded it, because I wanted

22  somebody else to hear what I was then told throughout this

23  process.

24          THE COURT:  Let's just hold off on that for now.

25  Any other questions you want to ask him while you've got the

1    floor?

2              MR. HISKER:   None from me, Your Honor.

3              THE COURT:   Let me just ask.  Mr. Lloyd, I want to

4    be sure you understand that every time we have a proceeding

5    in this courtroom, this lady here, the court reporter, takes

6    down every word that's said and preserves it and can produce

7    a transcript, a written version of what all was said.  And a

8    lot of what you've told me here today -- and I am not trying

9    to pick an argument with you -- but it's directly

10   contradicted by what you said in earlier proceedings in this

11   court.  And I just want to ask you about that.

12             For example, just to pick out just two or three, you

13   said earlier that you never knew about your Speedy Trial Act

14   rights until after you signed the waiver.  But I know,

15   because I was here and I know what it's in the transcript,

16   that you sat in that jury box and I advised you about your

17   Speedy Trial Act rights, and asked you if you understood them

18   and asked if you wanted to waive that.  And that is supported

19   in the record in this case.  You said something different

20   today.  I am not asking you to explain it, but I'm telling

21   you I have to deal with that.

22             You said that you were forced to enter the guilty

23   plea.  But at the guilty plea hearing, I asked you

24   specifically, man to man, under oath, I told you you were

25   under oath, had anyone threatened you or forced you in any

43

1    way to plead guilty, and you said no.

2         I asked you if you were satisfied with the services

3    of your attorney, and you told me that you were.  And so here

4    today you are saying under oath once again, with all of this

5    being taken down, some things that are very different from

6    what you said earlier.  And that presents me with a problem

7    here.  Can you help me with that?

8         THE DEFENDANT:  Like I told Ms. Hinton, Your Honor,

9    that was the advice that I was given by my attorney

10   throughout this whole process.  Like I said, I don't

11   understand federal law.  That was the point of me getting

12   Stanley.  But throughout this whole process, I never told

13   nobody I was dealing cocaine or selling cocaine.  I mean, I

14   thought pleading guilty to a small quantity of cocaine would

15   be better than the marijuana that I was talking about because

16   that's the advice that I was given by my attorney.

17        THE COURT: Well, let's just again go back to a

18   simple one.  Knowledge of your Speedy Trial Act rights, I was

19   involved in that, because I sat right here and you sat over

20   there and I told you about your Speedy Trial Act rights.  You

21   told me just a minute ago you didn't know anything about them

22   until after the fact when you signed the document?

23        THE DEFENDANT:  Like that day in court, Your Honor,

24   my mom was going through a situation with breast cancer.  So

25   I wasn't -- I was here that day, but my mind was all over the

44

1   place, because I wanted to be to the hospital by her side

2   that day, but I couldn't.  I was here that day but, like I

3   keep saying, I wasn't paying attention to what you were

4   saying.

5           THE COURT:  Well, on a different day --

6           THE DEFENDANT:  Whether it's Speedy Trial rights --

7           THE COURT:  Let me finish.  On a different day, not

8   when your mother had breast surgery, when we tried to do the

9   sentencing hearing -- did we get into the presentence report

10  at the sentencing hearing or not?

11          MS. HINTON:  Judge, I think I left for the majority

12  of that.  So I'm not sure.

13          THE COURT:  I normally ask the very first question

14  if the defendant read the presentence report.  I guess we

15  didn't get that far in this case.

16          MS. HINTON:  I don't believe while I was here we

17  did.

18          THE COURT:  Did not?  All right.  Well, let's just

19  hold in abeyance for right now these tape recordings of the

20  conversations.  Anything else that you want to present or any

21  other questions of the defendant while he's on the stand?  I

22  don't have any more questions.

23          MR. HISKER:  None, Your Honor.  I would just like at

24  some point -- I don't know if -- I apologize.  I did not

25  intend to use them.  But at this point, I'll send them to the

45

1    Government and let them review it and then I would want to

2    submit them as evidence to the Court.

3              THE COURT:  All right.  I think maybe we ought to

4    adjourn today and you provide a copy to the Government to let

5    them look over these tapes and let's just decide how to go

6    with it.  I'm not sure how critical it's going to be to the

7    ultimate decision of whether the plea should be withdrawn.

8    But I don't want to prevent the defendant from making a

9    record at least.

10             MS. HINTON:  And I totally understand your ruling,

11   Your Honor.  That's fine.  Would you entertain us going ahead

12   and arguing?

13             THE COURT:  Yeah.  I can hear arguments, certainly.

14   And that might eliminate need to get everybody back together

15   again.  Let me hear from Mr. Hisker first.  This is your

16   motion.

17             MR. HISKER:  Thank you, Judge.  You do have my

18   motion.  And I laid out the standard.  And I believe it

19   concerns about five to six factors.  I really just consider

20   five because the first one would be that the plea was not

21   entered knowingly or voluntary.  The second would be he

22   asserted his legal innocence.  Third is delay between the

23   plea and the withdrawal.  And the fourth is that he had close

24   assistance and competent counsel.  And then the fifth and

25   sixth I combine as prejudice to the Government.  And then I

46

1     would say it's prejudice to the Court or waste of resources.

2          As to knowing or voluntary, I believe Mr. Lloyd has

3     allowed out a case that it was not knowing and voluntary.

4     And I understand the Government's question about why do you

5     answer a question yes and why do you say yes you did this and

6     was that a lie.  But I think sometimes people get up here in

7     court and they are doing exactly what their attorney tells

8     them to do.  They are following along.  And they've got a

9     complete misunderstanding about everything going on.  And

10    they believe something that they think their lawyer told

11    them.  And then other things confirm that.

12         And that's why I read the transcript where Your

13    Honor asked, so with that understanding, the Government will

14    not attempt to prove anything more -- less 500 grams of

15    cocaine.  But, in fact, in reality of the situation, the

16    Government through the PSR is going to attempt to prove 2 1/2

17    kilos of cocaine.

18         MS. HINTON:  Now I'm going to object to that, Judge,

19    because we never got to sentencing.  And that was not the

20    position that the Government was going to take.  That is

21    something probation correctly put in the PSR.  But I would

22    disagree with that but we never got to that point.

23         THE COURT:  You are going to stick by what you said,

24    not by what the probation officer said?

25         MS. HINTON:  That's correct.

47

1          MR. HISKER:  Well, Judge --

2          THE COURT:  Mr. Hisker, the trouble with all of this

3     is, I've been doing this for 35 years now and I know there's

4     always a temptation to cut corners and speed things up, but I

5     never attempt to cut corners or omit anything on a guilty

6     plea.  And I have a regimen I go through.  I've done it

7     thousands of times probably.  And I never knowingly omit any

8     question.  And one of the very first exchanges I have is I

9     tell the defendant he's under oath and he has an obligation

10    to answer my all of my questions entirely truthfully, and if

11    he does not, he could be charged with perjury.  I do that

12    every time.  And I try to emphasize how important it is for

13    them to listen to my questions and answer the questions.  And

14    then with that background, to have the defendant come in and

15    say, yeah, yeah, yeah, but my lawyer told me to say all of

16    this and I was just parroting exactly what my lawyer told me

17    to say, that's a lot to swallow.  Really is.

18         MR. HISKER:  I understand, Judge.  I've been before

19    this Court.  I also read the transcript.  I agree from the

20    very beginning that Your Honor did as thorough a job as could

21    be done.  The transcript was -- everything was asked that

22    needed to be asked.  And he answered every question

23    appropriately, appropriately at least for the purpose of that

24    hearing.

25         But what Mr. Lloyd is saying is that he was a deer

48

1    in the headlights.  I think I put that in my motion, he was a

2    deer in the headlights.  He was following along with what

3    everybody else was doing.  He was following along with what

4    his attorney told him to do.  He has, throughout the entire

5    case, from his interaction with law enforcement, he has

6    asserted that he was not guilty of any cocaine, that he was

7    buying marijuana from Mr. Britt.

8         The evidence in the case is -- there was no

9    discussion of cocaine ever.  And I know a lot of times we

10   have drug cases where they don't discuss drugs, they use code

11   words or something like that.  But there's really no code

12   word.  There's only a reference of 18.  And Mr. Lloyd

13   maintains that he was trying to get 18 grams of marijuana and

14   that's what he always bought from Mr. Britt.  The Government

15   has a position that that was 18 ounces of cocaine.  Some of

16   those telephone calls don't mention the word "18" at all.  We

17   don't know whether those transactions even took place.

18        And I advised Mr. Lloyd that would be something that

19   we could argue at sentencing if we challenge the drug weight.

20   But at this point, he's so shaken by the fact that his PSR

21   says 2,500 grams of cocaine, and that his level is

22   significantly higher than what he expected.  He believes he

23   was misled by his attorney.  And he believes that marijuana

24   was -- that the marijuana was actually worse because it's

25   Schedule I and cocaine was Schedule II.

1            The other thing that's interesting is that they

2    didn't execute a search warrant -- apparently, November 18th

3    was the last time that they had any alleged drug transaction

4    on the wiretap.  From my understanding of discovery, I don't

5    notice anything else that would have prompted a warrant to

6    probable cause.  But a warrant was issued seven months later

7    for the search of Mr. Lloyd's house.  There's no discussion

8    of suppressing that evidence.  Mr. Lloyd maintains he did not

9    know.  Those guns became involved.  And so the guns also

10   played a role in his decision to plead guilty because he

11   figured the potential of those guns coming in to hurt him.

12            The third factor is the delay between the plea and

13   the withdrawal.  And it was five months, but I would submit

14   Mr. Lloyd is not a lawyer.  He has no way to call his own

15   hearing.  I don't know that he even would have the means or

16   the wherewithal to contact the Court and say he wants to

17   withdraw a plea.  But I can tell the Court that there are

18   text messages from before the plea where he was saying he

19   already felt forced then.  And Mr. Lloyd's testified that he

20   was complaining about the plea after the fact.  It was for

21   his attorney to move to withdraw his plea.

22            THE COURT:  As you know, most of the reported

23   decisions which successfully revoke a plea, withdraw a plea

24   are a matter of weeks after the plea, and when you get down

25   to the day of the sentencing hearing, that's usually a

1   pretty -- no matter what the delay is, that's a pretty long

2   time usually.

3          MR. HISKER:  I understand.

4          THE COURT:  And that's what we have here, day of

5   sentencing, right?

6          MR. HISKER:  I understand.  That's why I say that

7   sometimes COVID played a role because things aren't scheduled

8   quite as quickly.  You don't have as many in-person meetings

9   with lawyers and everything.  Everything kind of slowed down.

10  And I know the Court did conduct business.  I read the

11  Government's reply.  But I think it's pretty common that

12  there were obstacles during that period.  There were

13  obstacles with scheduling.  There were obstacles to go

14  places.  There were other people's fear.

15         And so I would submit that five months is not that

16  long a period of time in the grand scheme of things.  And the

17  next available time for him to do something would be when it

18  got called for sentencing.  And at that point he says, wait,

19  I've got to speak up for myself.

20         So I would -- and I also think that the third factor

21  with the delay between plea and withdrawal really ties into

22  the fifth and sixth factors, whether or not it prejudices the

23  Government.  And I will talk about those now.  I mean, the

24  Government goes -- the Government alleged in their response

25  they might have to go to the BOP to interview witnesses.

1   They do that all the time.  They interview witnesses in BOP

2   for cases all the time.  And I would say that there's no

3   prejudice to the Government whatsoever.  Those witnesses are

4   all still readily available.  They can find those witnesses

5   just like they find them in every other case.

6           THE COURT:  Let me ask.  I get this case and

7   somewhat related cases mixed up sometimes.  Have all the

8   defendants in this case pled out?

9           MS. HINTON:  All have pled, Your Honor.  We have

10  three remaining for sentencing that's scheduled for week

11  after next.

12          THE COURT:  But the ones that have been sentenced

13  are presumably off in federal prison somewhere?

14          MS. HINTON:  I'm sorry.  We have four, I believe

15  four left to sentence.

16          THE COURT:  All the others are serving sentence

17  somewhere?

18          MS. HINTON:  Yes, Your Honor.  As far as I know,

19  they have all been transported because I've been receiving

20  e-mails from the BOP about separation orders.

21          MR. HISKER:  Judge, I would go back now to the

22  fourth factor, close assistance of counsel.  As an attorney,

23  I don't think anybody likes to make that allegation.  That's

24  another reason I didn't want to play the recording.  The

25  recording is -- I mean, it's got some very negative things in

1    it.  And I don't like to make those allegations.  But at this

2    point, I presented Mr. Lloyd's testimony that he didn't

3    review the discovery, that he attempted to review discovery,

4    that he was misled by his attorney, that he didn't discuss

5    any defenses.

6          I mean, Your Honor, I have tried conspiracy cases in

7    front of Your Honor.  We've talked about defenses of

8    different conspiracies.  We've talked about mere buyer-seller

9    relationships.  There was a lot of things that we -- a lot of

10   complicated issues that we dealt with in conspiracy cases.

11   Mr. Lloyd knew nothing about -- had no information whatsoever

12   about any of that.  Never was discussed anything about

13   whether or not he suppressed the search warrant.

14         At this point, I presented the evidence.  The

15   Government hasn't presented any evidence in reply.  I would

16   say that the evidence weighs in our favor.  Mr. Lloyd has

17   said he was completely misled and he did not have the close

18   assistance of competent counsel.  And he also made it clear

19   in his testimony, but for those errors, he would not have

20   pleaded guilty.

21         So I ask Your Honor to consider allowing Mr. Lloyd

22   to withdraw his plea.

23         THE COURT:  All right.  Ms. Hinton.

24         MS. HINTON:  Thank you, Your Honor.  As Your Honor

25   is well aware, it's the defendant's burden to demonstrate

53

1    that he should be permitted to withdraw his plea.  It is a

2    heavy burden of persuasion.  Your Honor, *United States v.*

3    *Lambey*, L-a-m-b-e-y, which is 974 F.2d 1389, which the

4    Government is going to ask Your Honor to look at specifically

5    related to several issues in this case, the court stated --

6    the Fourth Circuit stated in that case that a Rule 11

7    proceeding must be recognized to raise a strong presumption

8    that the plea is final and binding.

9         I understand Mr. Hisker's argument that a lot of

10   people are just going along and that Mr. Lloyd was a deer in

11   the headlights.  But that's not the standard, Your Honor.

12   And they have conceded that the Rule 11 proceeding was done

13   correctly.  So I believe that their burden becomes even

14   greater to prove that he is now allowed to withdraw his

15   guilty plea.

16        Your Honor, under the *Moore* factors, I know Your

17   Honor is familiar with, regarding it being knowing and

18   voluntary, him alleging now that it was not knowing and not

19   voluntary goes against the entire plea colloquy.  Mr. Lloyd

20   is of above-average intelligence.  He's a college graduate.

21   He holds down a job where he makes more than $18 an hour.

22   And every single time that this Court asked him about

23   understanding what was going on, understanding his plea

24   agreement, understanding what he was pleading to, being

25   satisfied with his lawyer, wanting his lawyer to do anything

1   else on his behalf, he answered all those questions -- I'm

2   going to use the term "correctly", but sufficient so that the

3   Court proceeded with the Rule 11 colloquy.

4         Your Honor, he also has to have a credible assertion

5   of legal innocence, or that is at least another factor for

6   Your Honor to consider.  And under the *Sparks* case, which is

7   67 F.3d 1153, it's outlined that he must do more than just

8   demonstrate that he had a bona fide belief that his actions

9   were lawful.  He must show that such a belief would translate

10   into a credible assertion of legal innocence.

11         In *United States v. Reed*, the Court found that a

12   bold assertion of innocence is insufficient to undermine a

13   defendant's guilty plea.  He must present evidence that has

14   the quality or power of inspiring belief and tend to defeat

15   the elements in the Government's prima facie case or make out

16   a successful affirmative defense.

17         Your Honor, I never dealt drugs, but I can tell you

18   in my years of prosecuting them, 18 grams of marijuana is not

19   a normal amount of marijuana.  That quantity doesn't

20   particularly make sense when you go about dividing drugs.

21         But what does make sense is 18 ounces of cocaine

22   because that's half a kilogram.  And what corroborates the

23   fact that Mr. Lloyd was, in fact, dealing at least half

24   kilogram quantities of cocaine, is he's dealing with a

25   kilo-level dealer, Mr. Britt, a person who the Government has

1  no evidence that Mr. Britt dealt in weed.  He was a cocaine

2  dealer.

3          On the car stop that is in question and included in

4  the PSR, there are five calls that precede that car stop of

5  various dates and times.  The car stop occurs, and then there

6  are four rapid phone calls between Mr. Britt and Mr. Lloyd

7  regarding that car stop.  That car stop was for, I believe,

8  speeding or failure to stop as the stop sign, something

9  relatively minor.  But on Mr. Britt that was approximately

10 $15,000, which as Your Honor is aware of, because you've

11 presided over these sentences before, that this group was

12 selling kilogram quantities of cocaine for 30 to 35 --

13 $37,000 a kilo.  So that tracks that it would be about a half

14 kilogram of cocaine.

15          One of the most important calls within that, Your

16 Honor, is a call on November the 18th at 5:33 p.m. between

17 Mr. Lloyd and Mr. Britt.  And this is after the traffic stop

18 and after the money has been seized.  Mr. Lloyd says to Mr.

19 Britt, I'm saying -- or whatever the case may be, say that

20 you made a car sale, you made a car sale here.  Man, you can

21 say that, dawg.

22          So it doesn't track that Mr. Lloyd would need to

23 provide Mr. Britt with an alibi as to why he has $15,000 if

24 he came to buy 18 grams of weed.  I also don't purchase weed.

25 I don't know what the street value is of 18 grams of weed,

1    but I would imagine it's probably 20 or $30.

2            So, Your Honor, that just does not -- the fact that

3    he was getting 18 grams of weed does not make sense from a

4    drug-dealing standpoint.  It doesn't make sense that Mr.

5    Britt would drive to Mr. Lloyd when he has customers buying

6    kilo quantities of cocaine, that he would drive for a 20 or

7    $30 sale, or that Mr. Lloyd would call so many times after a

8    traffic stop, so concerned, and offer Mr. Britt an alibi.

9            Your Honor, another factor for you to consider is

10   the timeliness of the motion.  As Your Honor is aware, again,

11   the *Sparks* court said that considerable delay weighs against

12   the defendant's request to withdrawal their guilty plea.

13   This is a five-month delay, Your Honor.  I go back to the

14   fact that we are not dealing with someone of average

15   intelligence in this court.  We are dealing with Mr. Lloyd,

16   who is a college graduate, holds down a job, has a sister who

17   is a lawyer.  Your Honor, receives handwritten letters from

18   the defendants all the time complaining about their lawyer or

19   wanting relief from the court.

20           So to say that Mr. Lloyd had no idea how to reach

21   the Court just doesn't make sense when we are talking about

22   something as important as going to federal prison.

23           The COVID argument, Your Honor, I don't believe

24   holds any weight, because as Your Honor is well aware, this

25   court was bustling during that time.  In fact, we picked a

1    jury for the Christopher Taylor trial that never went

2    forward, but it's my recollection that that was in September,

3    some two months before Mr. Lloyd's sentencing and his attempt

4    to withdrawal his guilty plea.

5            Your Honor, the absence of close assistance by

6    competent counsel, and I cannot stress this enough to Your

7    Honor as an officer of the court, Mr. Myers absolutely drove

8    me crazy about Mr. Lloyd, trying to negotiate about him.  We

9    talked over and over about his case.  And I know that it was

10   a tough pill for Mr. Lloyd to swallow about the cocaine,

11   which is why the Government made so many concessions.  And I

12   don't think I'm overstating when I say Government, based on

13   the argument of Mr. Myers, made more concessions in

14   Mr. Lloyd's case than any other defendant who did not

15   cooperate.  And those concessions were that we came off the

16   mandatory minimum, allowed him to plead to (b)(1)(C) weight.

17   We dismissed two other charges.  We were going to concede the

18   gun enhancement at the sentencing hearing.  And we didn't get

19   there, but the Government was going to essentially concede

20   the variance to satisfy Mr. Lloyd that he didn't want to be

21   held responsible for so much cocaine.  Of course Your Honor

22   knows we never got there.

23           He says over and over in his Rule 11 colloquy that

24   he was satisfied.  And he cannot prove that Mr. Myers's

25   conduct fell below objective standard of reasonableness and

1  certainly that it would have led to reasonable probability

2  that he wouldn't plead guilty.

3       Your Honor, I'm going to come back to the recordings

4  in just a minute, because I think that falls under this.  But

5  in regards to waste of judicial resources, we do travel to

6  the BOP.  That is not unheard of.  I certainly concede that.

7  But to have to travel to the BOP, potentially bring someone

8  back for a resentencing, assuming that they cooperate, to

9  transport people from the BOP to Mr. Lloyd's trial, those are

10  considerable resources.  This is not an one-time trip to the

11  BOP to interview somebody.  This is coordinating the

12  marshals, bringing people from -- I don't know where they are

13  currently located, and to testify regarding this conspiracy.

14       Your Honor, I don't believe that the recordings are

15  relevant because they occurred after the fact.  I do not

16  believe that Mr. Lloyd is credible.  I do not believe his

17  testimony has been credible.  He has admittedly lied to Your

18  Honor on multiple occasions.

19       But even assuming that Your Honor does consider it,

20  and I go back to *United States v. Lambey*, I think that's a

21  very important Fourth Circuit decision.  And in that

22  decision, the Fourth Circuit held that the district court did

23  not abuse its discretion by denying a motion to withdrawal a

24  guilty plea filed two weeks after the plea, which is

25  considerably shorter amount of time than Mr. Lloyd, for a

1   defendant's sentence to 360 months when he asserted that he

2   relied on his attorney's advice that he faced 78 to 108

3   months.  And what the Court went on to say is, we don't rule

4   out the possibility that a defendant's misapprehension of a

5   likely sentence based on the clear error and advice given to

6   him can be a fair and just reason for withdrawal of the

7   guilty plea if it is not corrected by the court at the Rule

8   11 hearing.  So if the information given by the court

9   corrects or clarifies the earlier erroneous information given

10   by the defendant's attorney, and the defendant admits to

11   understanding the Court's advice, the criminal justice system

12   must be able to rely on the subsequent dialogue between the

13   Court and the defendant.

14          And I think that that case, Your Honor, is the most

15   important, relevant case to this particular situation.  And

16   I'm going to ask Your Honor to rule that he not be allowed to

17   withdrawal his guilty plea.  And if Your Honor is inclined to

18   rule in the Government's favor, we would ask that the PSR be

19   reprepared to remove the one-level acceptance offered by the

20   Government, the two-level acceptance for this generally

21   adding when someone plead guilty, and to add obstruction of

22   justice based either on his Rule 11 dishonesty to the Court

23   or his dishonesty here today under oath, Your Honor.  And the

24   Government also would like to be heard on bond at the

25   appropriate time.

1              THE COURT:  All right.

2              MR. HISKER:  Judge, if I could just address briefly.

3     The Government made reference to -- when I talk about

4     recordings this time, I'm talking about the wiretaps.

5     Paragraph 23 of the PSR talks about the first of those

6     wiretaps where Mr. Lloyd supposedly gives Mr. Britt an alibi.

7     Nowhere in those conversations does it mention $15,000.

8     Nowhere in those conversations does it mention cocaine.  The

9     conversations that Mr. Lloyd is having is just about money in

10    general.  Because the opening line from Mr. Britt is:  Man,

11    be careful, they pulled me and took my money.  I ain't got no

12    drugs on me.  My car don't smell like weed.  And they are

13    searching my car.

14             That's, essentially, what the information that

15    Mr. Lloyd has given.  So it's very well possible that

16    Mr. Lloyd was given information that they took his couple

17    thousand dollars, or whatever, or couple hundred dollars.  I

18    don't even know how much marijuana costs.  There's no mention

19    at all about them taking $15,000.  No reason why Mr. Lloyd

20    would know that.  So to say that he's giving an alibi for him

21    to get $15,000, there's just no facts to that.  That's all I

22    wanted to address, Your Honor.

23             And I would like to -- I think at this point, I

24    would want to enter the recorded attorney call.  Do I need to

25    send that to Ms. Hinton?

1          THE COURT:  I think I would like to take this motion

2    under advisement today and let you share those recordings

3    with the Government.  And then let me find out the

4    Government's position on whether they should be put in the

5    record or not.  I just -- I've never had this come up before,

6    a recording with an attorney having a conversation with a

7    client.

8          I thought about letting it be sent to me for

9    in-camera review, but before I do that, I would like the

10   Government to take a stake at a position one way or the other

11   first.  Let's take at a five-minute recess and we will come

12   back and talk about the remaining issues.  Let me see

13   probation.

14          (Whereupon, recess transpired.)

15          THE COURT:  All right.  We are back on the record.

16   The break took a little longer than I anticipated, because I

17   wanted to carefully ponder over this new issue of these

18   recorded telephone conversations between the attorney and

19   client.  I have some grave misgivings about setting a

20   precedent of allowing that into evidence.  Before the break,

21   I said I was inclined to allow them to be turned over to the

22   Government and get the Government's position.  But I'm going

23   to reverse myself and determine that they are not admissible

24   in this proceeding, primarily because they post-date the

25   guilty plea in this case.  So whatever the conversations the

62

1  attorney and client had, post-guilty plea would not be

2  relevant to the issues raised in this case.

3       Now, it may well come back on a 2255 petition.  So,

4  Mr. Hisker, you need to preserve those recordings very

5  carefully because we may need them later.

6       MS. HINTON:  And, Your Honor, in full disclosure to

7  the Court, over the break, Mr. Hisker e-mailed them to me.  I

8  have not listened to them.  I have now double deleted them

9  from my e-mail, meaning I cannot recover them.  So I just

10  wanted the Court to be aware of that.

11       THE COURT:  That's good.  I would rather keep it at

12  that stage for now.  Do hold on to them, Mr. Hisker.  And I

13  will take the motion under advisement and we will get you a

14  written order in due course.

15       MS. HINTON:  Your Honor, may I be heard on bond?

16       THE COURT:  All right.

17       MS. HINTON:  Your Honor, very briefly, ECF-225

18  outlines Mr. Lloyd's bond conditions.  It's your standard

19  bond condition order that Your Honor is familiar with.  The

20  very first one is that he not violate any state or federal

21  law while out on bond.  It was signed by Mr. Lloyd.  It has

22  been the bond in this case.  It's the Government's position,

23  not in an effort to punish Mr. Lloyd for his motion to

24  withdraw, but he has, in fact, admitted to committing perjury

25  either under the Rule 11 colloquy or when Your Honor asked

0211

63

1    him about his speedy trial rights or any of the number of

2    times he appeared in court saying that he had reviewed the

3    indictment, all of those things, and so for that reason, Your

4    Honor, the Government believes he's violated his bond and

5    would ask that he be taken into custody.

6        THE COURT:  Probation told me during the break that

7    initially he was on location monitoring with a curfew and

8    that was removed.  They also said he has a stable job and a

9    family here locally.  That's correct?

10       PROBATION OFFICER:  Yes, Your Honor.

11       THE COURT:  Mr. Hisker, what's your position?

12       MR. HISKER:  Your Honor, I would ask you to allow

13   him to stay out on bond.  He appears -- he comes up to my

14   office in Spartanburg County whenever I need him to.  He's

15   here on time.  He was early today.  I mean, I think if Your

16   Honor rules against us, I would like to shed it in the light

17   of this was -- we just didn't meet our burden but that he did

18   not commit perjury, and that he was truly a deer in the

19   headlights, and perhaps we did not pass our burden.  But I

20   would ask Your Honor not to find that he's violated his bond.

21       MS. HINTON:  And just to be clear, Your Honor, the

22   Government is not alleging that he's a flight risk.  The

23   Government is just simply arguing that he has very clearly

24   violated the condition of his bond that is worthy of a

25   revocation.

64

```
 1            THE COURT:  I think what I would like to do is just
 2   reimpose the location monitoring with a curfew and leave it
 3   up to the probation officers to establish the curfew times to
 4   work around his work schedule.  And he will certainly be able
 5   to go to medical meetings, church, meetings with attorneys
 6   and so forth and all the standard exceptions with the curfew.
 7   And it's too late in the day to do it now.  Can it be set up
 8   tomorrow?
 9            PROBATION OFFICER:  Yes, Your Honor, it can be set
10   up tomorrow.  For tomorrow, in fact, we would like for
11   Mr. Lloyd to report to our office tomorrow at three o'clock
12   for that.
13            THE COURT:  Mr. Lloyd, can you do that?  Are you
14   working tomorrow at three o'clock?  Can you be there
15   tomorrow?
16            THE DEFENDANT:  Yes, sir.  I get off at four o'clock
17   tomorrow.
18            THE COURT: Can you be there by 4:30?
19            THE DEFENDANT:  I work in Lugoff.  It will take me
20   probably about 45 to 50 minutes to get here from there.
21            THE COURT:  Is that your schedule every day of the
22   week?
23            THE DEFENDANT:  Yes, sir, 6 to 4.
24            THE COURT:  You work 6 to 4?
25            THE DEFENDANT:  Yes, sir.
```

1          THE COURT:  Could you all stay late one day to meet
2     with him?
3          PROBATION OFFICER:  Your Honor, yes.  Your Honor, we
4     can.
5          THE COURT:  You get off at 4, you can be here at 5
6     or shortly after?
7          THE DEFENDANT:  I can be here right at 5, like 4:50.
8          THE COURT:  Let's just say we expect you right at
9     five o'clock.  How long would it take you to do that.
10          PROBATION OFFICER:  Roughly 30 minutes to an hour,
11     Your Honor.  Just to be clear, you are ordering location
12     monitoring with curfew.  The curfew will be set by the
13     probation office.  And you are allowing the probation office
14     to determine the technology in this case?
15          THE COURT:  Correct.  That's my ruling.
16          PROBATION OFFICER:  And you would like for that to
17     start tomorrow?
18          THE COURT:  Tomorrow.  And he will be at your office
19     very close to five o'clock tomorrow.
20          PROBATION OFFICER:  Yes, sir.
21          THE COURT:  You know where the office is, Mr. Lloyd?
22          THE DEFENDANT:  No, sir.
23          PROBATION OFFICER:  He has been to our office.  The
24     pretrial services office where you see Mr. Bunch, sixth
25     floor.

66

1          THE DEFENDANT:  I never met at Mr. Bunch's office.

2    He came out to my residence to see me.

3          PROBATION OFFICER:  Okay.  I will give --

4          THE COURT:  Give him the street address and floor

5    number right after this hearing.

6          MS. HINTON:  Your Honor, just to be clear, you don't

7    need any additional information from us?

8          THE COURT:  No, I don't need any more briefing or

9    anything.

10         MR. HISKER:  Judge, the Government and I did have

11   some discussions.  I don't mean to put Your Honor in any kind

12   of time frame, but can you wait a week before issuing your

13   ruling so we can discuss --

14         THE COURT:  I can wait a week.  I've got plenty of

15   work next week to keep me business.  We will hold off for at

16   least a week.  All right.  Thank you.

17         (Whereupon, proceedings are adjourned.)

18

19

20

21

22

23

24

25

67

```
1                    CERTIFICATE OF REPORTER

2

3          I, Karen V. Andersen, Registered Merit Reporter,

4    Certified Realtime Reporter for the State of South Carolina

5    at Large, do hereby certify that the foregoing transcript is

6    a true, accurate and complete Transcript of Record of the

7    proceedings.

8          I further certify that I am neither related to nor

9    counsel for any party to the cause pending or interested in

10   the events thereof.

11

12

13

14

15        Karen V. Andersen
          Registered Merit Reporter
16        Certified Realtime Reporter

17

18

19

20

21

22

23

24

25
```

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

UNITED STATES OF AMERICA

v.

TOMMY NOVACK LLOYD

CR No.: 3:20-cr-453-JFA

**ORDER**

This matter is before the Court on Defendant Tommy Novack Lloyd's ("Lloyd" or "Defendant") motion to withdraw his guilty plea. (ECF No. 1130). The government responded in opposition to the motion. (ECF No. 1144). A hearing on this motion took place March 15, 2022.

**I.     FACTUAL HISTORY**

Defendant pleaded guilty during a Rule 11 hearing on June 7, 2021, to the lesser included offense of count 1 in his superseding indictment — conspiracy to possess with intent to distribute a controlled substance — pursuant to a written plea agreement (ECF No. 758). (ECF No. 788). Before the change of plea hearing, Defendant's former counsel requested that the government allow Defendant to plead guilty to a lesser included charge of conspiracy to possess with intent to distribute less than 500 grams of cocaine. The government agreed, and the stipulation was included in Defendant's plea agreement. (ECF No. 758 at 3).

Defendant's former counsel filed an objection to the Presentence Report ("PSR") (ECF No. 915) regarding the two-point enhancement for possession of a dangerous weapon

1

0217

and moving the Court to depart from the guidelines. (ECF No. 967). The government conceded to the objection for the two-point enhancement for possession of a dangerous weapon and Defendant's criminal offense level was decreased.

On November 5, 2021, Defendant informed the Court that he wanted a new lawyer and to withdraw his plea rather than move forward with sentencing according to the plea agreement. (ECF No. 983). The Court allowed Defendant to obtain new counsel and then Defendant filed this motion to withdraw his guilty plea. (ECF Nos. 1068 & 1130). The government responded in opposition to the motion to withdraw the guilty plea on March 4, 2022. (ECF No. 1144). This issue has been fully briefed and is ripe for review.

## II.    LEGAL STANDARD

A defendant may withdraw a guilty plea if the defendant shows "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). However, there is no absolute right to withdraw from a guilty plea and the defendant bears the burden of demonstrating that withdrawal should be granted. *United States v. Ubakanma*, 215 F.2d 421, 424 (4th Cir. 2000).

Courts consider multiple factors when determining whether a defendant has met the burden of showing a fair and just reason for requesting withdrawal. Those include:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or otherwise involuntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether there has been a delay between entry of the plea and filing of the motion; (4) whether the defendant has had close assistance of counsel; (5) whether withdrawal will cause prejudice to the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources.

*Id.* citing *United States v. Moore* 931 F.2d 245, 248 (4th Cir. 1991). Where the court conducts a proper Rule 11 colloquy, it rases a strong presumption that the plea is final and binding. *United States v. Nicholson*, 676 F.3d 376, 384 (4th Cir. 2012).

When the motion to withdraw asserts an ineffective assistance of counsel claim, the defendant "must establish: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Ubakanma*, 215 F.2d at 425.

## III. DISCUSSION

Lloyd argues that he should be permitted to withdraw his guilty plea for several reasons. First, he states that he was not fully informed as to the discovery in the case nor the relevant law. Second, that he was not advised on several key provisions of the law, in particular, the relevant conduct considerations for sentencing. Third, that his plea counsel "failed to fully investigate and advise him of any possible defenses and arguments." (ECF No. 1130). Finally, that he was essentially coerced into pleading guilty because his counsel misled him on the assertion that a marijuana offense would be treated the same as a cocaine offense.

However, Lloyd concedes "that the Court fully complied with Rule 11 in conducting the plea colloquy." (ECF No. 1130). The government states in response that Defendant informed the Court during the Rule 11 colloquy

> that: (1) he 'had an ample opportunity to discuss [his] case with [his] lawyer';
> (2) he was 'satisfied with his attorney's representations' and his attorney had

'done everything [he asked him to do for [him]' and (3) there was nothing more that Defendant wanted his attorney to do before the Court proceeded.

(ECF No. 1144 (quoting ECF No. 1106)). Moreover, the Court explained the law relevant to count 1 of the superseding indictment in detail to Defendant. (ECF No. 1106). The same law pertinent to count 1 of the superseding indictment was also stated in the signed plea agreement. (ECF No. 758).

While summarizing the plea agreement during the Rule 11 colloquy, the government re-iterated the portion of the plea agreement where Defendant affirmed that he understood that "the Court can consider the dismissed counts [of the superseding indictment] as relevant conduct." (ECF No. 1144). Further, Lloyd stated that he understood the sentence imposed may differ from any estimate that his attorney may have speculated and that the sentence could "possibly be more severe than he expected it to be." (ECF No. 1106). Finally, he stated that he was not threatened or forced to plead guilty and that he was "pleading guilty of [his] own free will because [he was] in fact guilty." *Id.*

### A. *Moore* Factors

Factor 1: Plea was not Knowing or Otherwise Involuntary

Lloyd cannot offer credible evidence that his plea was not knowing or otherwise involuntary. Largely based on the Rule 11 hearing, the government contends that the defendant cannot satisfy his burden to show the proceeding was not fundamentally fair. Lloyd stated that he understood the consequences of his guilty plea and the rights he was giving up by pleading guilty. Lloyd's allegations that he was completely ignorant of the process and that plea counsel failed to advise him on several aspects of the sentencing

4

process, including relevant conduct, are thus unavailing. Defendant stated on the record that he had ample time to discuss these issues with his attorney, that he understood the charges, what he was pleading to, the ramifications of pleading guilty, and that sentencing was at the Court's discretion. The Court addressed the relevant portions of the law with Lloyd during the Rule 11 colloquy and his dissatisfaction with prior plea counsel is not sufficient to reach the threshold of a fundamentally unfair hearing.

<u>Factor 2: Defendant Credibly Asserted Legal Innocence</u>

Defendant never credibly asserted his legal innocence. To credibly assert legal innocence, a defendant must "present evidence that (1) has the quality or power of inspiring belief, and (2) tends to defeat the elements in the government's prima facie case or to make out a successful affirmative defense." *United States v. Thompson-Riviere*, 561 F.3d 345, 353 (4th Cir. 2009). The assertions that he makes now are contrary to what he told the Court at the plea hearing. Lloyd states that he has now had the opportunity to review all the discovery in the case. He contends that the government's entire case is centered on 4 recorded telephone calls between Lloyd and a co-defendant (Britt). In the calls, there is a mention of the number "18" and to meetings between Lloyd and Britt. He posits that the government's contention that this refers to 18 ounces of cocaine is tenuous at best, as there is no discussion or reference to cocaine, use of code words, nor any type of pricing discussed. Further, he contends that the government has evidence that only one of the alleged meetings with Britt took place and that the authorities never found drugs. Lloyd's motion asserts that the government can only speculate that the money found in Britt's vehicle during a traffic stop after allegedly meeting with Lloyd came from the meeting.

5

In opposition, the government cites to both the factual recitation during Britt's plea and Defendant's plea hearing. The factual basis that was placed on the record solidifies that Defendant agreed: (1) "there was a conspiracy existing and [he] knew about it and [he] willfully joined the conspiracy"; (2) "he agreed that the amount of the controlled substances attributed to [him] as [was] discussed earlier, the government can prove that he should be held accountable or attributable for those drug weights"; and (3) he "will be bound by [the Court's] ruling on [the] other details if they become in dispute." (ECF No. 1106 at pp. 63 & 64). These admissions were fairly given during the Rule 11 hearing and strongly weigh against Defendant's assertion that he maintained his legal innocence and that there is no factual basis for his plea.

<u>Factor 3: Delay Between Entry of the Plea and Filing of the Motion</u>

Additionally, the delay in Defendant's entry of his plea and the first time he stated he wanted to withdraw the plea was five months. Defendant argues that the delay is not significant in light of Covid-19 in addition to the fact that he initially had concerns about the plea but could not get sufficient explanation from plea counsel. Lloyd then brought his concerns to the Court's attention at his next hearing, sought advice from his current counsel, and still wishes to withdraw his guilty plea. The government asserts in response that in one instance the Fourth Circuit held that a district court had not abused its discretion when denying a motion to withdraw a guilty plea that was filed two weeks after the plea was accepted. *Lambey*, 974 F.2d at 1394-96. The Court can place different weight on the factors as they are each dependent on the unique circumstances of the case. Here, the five-

month delay would only way slightly in favor of the government as the ongoing COVID-19 pandemic has created exigent circumstances in some instances.

<u>Factor 4: Whether Defendant had Close Assistance of Counsel</u>

Even if Lloyd was not informed on the relevant conduct application by his plea attorney, that would still not amount to fundamental unfairness allowing him to withdraw his guilty plea. The Fourth Circuit has held that although a defendant's "misapprehension of a likely sentence, based on a clear error in advice given him, can be a fair and just reason," that will not suffice where the court corrects the misapplied notion at the Rule 11 hearing. *United States v. Lambey*, 974 F. 2d 1389, 1394-96 (4th Cir. 1992) (en banc). The court went on, stating that if the Rule 11 hearing accurately clarifies the process and the defendant asserts that he understands the information the court has given him, then "the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant." *Id.*

In this case, Lloyd objectively acknowledged that the Court may consider the dismissed counts in the superseding indictment as relevant conduct for sentencing purposes. (ECF No. 1106). Moreover, as the court held in *Lambey*, incorrectly estimating the potential guideline range does not necessarily qualify as an action by counsel that falls below an objective standard of reasonableness. 974 F.2d at 1395. Therefore, his assertion that his plea was involuntary or not knowing is unpersuasive.

Additionally, Lloyd avers that his counsel erroneously advised him that a cocaine offense carried a less severe punishment than a marijuana offense.[1] Defendant is also unable to persuade the Court that but for counsel's error in this regard he would not have pleaded guilty and instead insisted on going to trial. Even if plea counsel did give this advice in error, Defendant still pleaded guilty to a conspiracy charge relating to the distribution of controlled substances in the superseding indictment. In doing so, he admitted to trafficking cocaine. Therefore, the ultimate penalty for distributing cocaine, as opposed to marijuana, is irrelevant. Defendant was advised during the plea hearing that he was under oath and answered affirmatively that he was guilty. Lloyd's prior plea counsel was successful in obtaining a reduced sentence even though Defendant never cooperated with the government and was able to procure a two-level reduction based on an objection to the PSR. Therefore, the Court is unable to find that Defendant was not closely assisted by counsel even if this error in advice occurred.

<u>Factors 5 & 6: Prejudice to the Government and Inconvenience to the Court</u>

Finally, Lloyd avers that a withdrawal of his plea would not prejudice the government nor would it waste judicial resources. The government concedes it did not investigate the case as extensively once the plea agreement was reached. However, this would require the government to expend resources on travel to bring forward potential witnesses, most of whom have been transported to BOP facilities. Additionally, it would

---

[1] Lloyd states that his plea counsel informed him cocaine, as a Schedule II drug (with some medicinal use), would not carry as severe of a punishment as a marijuana offense, a Schedule I drug (with no medicinal use).

USCA4 Appeal: 22-4359    Doc: 9    Filed: 07/25/2022    Pg: 228 of 309

require the government to submit several more motions and extensive hours to locate those co-defendants and witnesses who may be called to testify against Defendant. This factor ultimately weighs against Defendant's motion to withdraw his guilty plea as well.

## IV.    CONCLUSION

The defendant is unable to meet the high burden required to withdraw his guilty plea under any of the *Moore* factors. Defendant is unable to demonstrate that counsel's performance fell below an objective standard of reasonableness or that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Defendant's motion to withdraw the guilty plea is denied.

IT IS SO ORDERED.

April 6, 2022                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                         United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
**COLUMBIA DIVISION**

CASE NO: **3:20CR00453-0012JFA**

UNITED STATES OF AMERICA,

vs.

TOMMY NOVAK LLOYD

DEFENDANT.

<u>CONSENT MOTION TO AMEND CONDITIONS OF RELEASE</u>

NOW COMES the Defendant, by and through his attorney and moves this Honorable Court for an Order amending the defendant's conditions of release to allow him to travel to Atlanta, Georgia to assist with his son's rehabilitation.

The defendant is awaiting sentencing after pleading guilty to Conspiracy to Possess with Intent to Distribute Less than 500 Grams of a Mixture or Substance Containing a Detectable Amount of Cocaine. He is requesting permission to travel to Atlanta, Georgia from April 30, 2022 until May 1, 2022 and such other times as approved at the discretion of U.S. Probation. This travel is requested due to a spinal cord injury sustained by Defendant's son which has left him unable to walk. Mr. Lloyd's son is being treated at the Shepard Center located at 2020 Peachtree Road NW, Atlanta, Georgia. The telephone number for the Shepard Center is 404-352-2020 and Mr. Lloyd will also be reachable on his personal cell phone number which is 803-996-7990. He will be staying at the Shepard Center with his son. He intends to depart early morning on Saturday, April 30, and will return in the evening Sunday, May, 1.

Counsel has discussed this matter and has received the consent of U.S. Probation Agent Kevin Pharis and Assistant United States Attorney Brandon Hinton who defers to Probation's recommendation.

WHEREFORE, the undersigned prays for an Order permitting Mr. Lloyd to travel as outlined above.

Respectfully submitted,

Steven M. Hisker
HISKER LAW FIRM, PC
126 East Main Street
Duncan, South Carolina 29334
SteveHisker@gmail.com
864-921-1432

ATTORNEY FOR THE DEFENDANT
FEDERAL ID #: 7666

Duncan, South Carolina

April 28, 2022

```
1              IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF SOUTH CAROLINA
2                      COLUMBIA DIVISION

3
   UNITED STATES OF AMERICA,       )
4                                  )
           Plaintiff,              )  Docket No. 3:20-453
5                                  )
           vs.                     )  Columbia, SC
6                                  )
                                   )
7  TOMMY NOVACK LLOYD,             )
                                   )
8          Defendant.              )
   _____)  DATE:  June 4, 2022
9

10         BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR
              UNITED STATES DISTRICT JUDGE, PRESIDING
11                     SENTENCING HEARING

12 A P P E A R A N C E S:

13 For the Plaintiffs:

14
   BRANDI BATSON HINTON
15 US Attorneys Office
   55 Beattie Place, Suite 700
16 Greenville, SC 29601
   864-282-2100
17 Email: brandi@ellishinton.com

18
   For the Defendants:
19
   STEVEN M. HISKER
20 126 E Main Street
   Duncan, SC 29334
21 864-921-1432
   Email: SteveHisker@Gmail.com

22

23

24 COURT REPORTER:              KAREN V. ANDERSEN, RMR, CRR
                                United States Court Reporter
25                              901 Richland Street
                                Columbia, SC  29201
```

1    MS. HINTON:  Thank you, Your Honor.  This is United

2  States of America v. Tommy Lloyd, 3:20-453.  Mr. Lloyd is

3  present with his attorney, Steve Hisker.  He's here for a

4  sentencing hearing.

5    THE COURT:  This is a hearing we scheduled for about

6  a week ago.  And there was a late development in terms of the

7  the Government's objection to the presentence report.  Based

8  upon the effort to withdraw the plea that led the Government

9  to suggest the defendant needs to have an acceptance of

10  responsibility taken away and have an enhancement for

11  obstruction of justice added.  So when Mr. Hisker confided

12  with his client, Mr. Lloyd, last week, he said that he needed

13  more time to prepare for this.  So we adjourned that hearing

14  and we are back here today.

15    So with that, Mr. Hisker, let me ask you, have you

16  had enough time to read over the most recent version of the

17  presentence report and discuss it carefully with your client?

18    MR. HISKER:  Yes, Your Honor, I have.

19    THE COURT:  And I'm aware of two objections that you

20  made, one related to the drug weight and one related to the

21  gun enhancement.  And probation reveals that the Government

22  will not press forward on the gun enhancement.  So you will

23  prevail on that.  But do we still have the objection on drug

24  weight?

25    MR. HISKER:  Yes, Your Honor, we do.

3

1       THE COURT:  And, Ms. Hinton, the Government is still

2  moving forward on both of those two objections, on

3  obstruction and acceptance?

4       MS. HINTON:  Yes, sir.

5       THE COURT: Let's take up drug weight first, I guess.

6  This is an enhancing factor, which means the burden of proof

7  by preponderance of the evidence is on the Government.  So,

8  Ms. Hinton.

9       MS. HINTON:  Thank you, Your Honor.  Essentially,

10  the defendant is contesting the relevant conduct portion of

11  the PSR.  As Your Honor is aware, under the relevant conduct

12  section of the sentencing guidelines, which is 1B1.3, it

13  states that all acts and omissions committed, aided, abetted,

14  counseled, commanded, induced, procured, or willfully caused

15  by the defendant are considered as acts against the

16  defendant, acts that were the same course of conduct or

17  common scheme or plan, if they are sufficiently connected or

18  related to each other as to warrant the conclusion that they

19  are part of a single episode, spree, or ongoing series of

20  offenses.

21       Your Honor, specifically in this case, there was a

22  series of telephone calls.  And I don't see the need to call

23  a witness to discuss them again, because we did that in the

24  prior hearing on Mr. Lloyd's motion to withdraw.  And they

25  are outlined very clearly beginning on page 8 of the

4

1    presence report.  And I think they are accurately

2    outlined.  And the amount of drugs attributed to Mr. Lloyd as

3    a result of those phone calls are accurately calculated by

4    probation.

5         Your Honor, specifically in determining drug types

6    and quantities, under 2D1.1, it says, in an offense involving

7    an agreement to sell a controlled substance, the agreed-upon

8    quantity of the controlled substance shall be used to

9    determine the offense level unless the sale is completed and

10   the amount delivered more accurately reflects the scale of

11   the offense.

12        So, Your Honor, the Government relies on those

13   telephone calls.  We rely on the credibility of the officer,

14   or excuse me, Special Agent Loomis who testified as to what

15   those calls meant based on his training and experience and

16   the specifics of this case.

17        THE COURT:  Mr. Loomis did a lot of so-called

18   translation for us in terms of code words used to identify

19   certain weights and certain type drug; is that right?

20        MS. HINTON:  That's correct, Your Honor.  I think he

21   also testified that Mr. Britt was a high-level cocaine

22   dealer, that the amount of money found on Mr. Britt after

23   agents pulled him over from meeting with Mr. Lloyd was over

24   $15,000, which he testified was the equivalent of 18 ounces

25   of cocaine, what the street valve of that was.  So he -- the

1    Government views that as corroboration that that, in fact, is

2    the weight.

3         I have heard no credible evidence that it is

4    anything other than cocaine.  I realize Mr. Lloyd stated that

5    it was marijuana.  But outside of that, it just does not add

6    up given the facts as we know it, Your Honor.  In addition to

7    that, just as a reminder, he didn't plead to marijuana.  The

8    factual summary that the Government read at the guilty plea

9    related to the sale of cocaine.  And he agreed that that was

10   correct and that was what he was guilty of and that's what he

11   was pleading to.

12        So, therefore, Your Honor, the Government believes

13   that the probation appropriately counted the drug weight

14   attributable to him and that the relevant conduct is

15   appropriately calculated.

16        THE COURT:  All right.  And does the -- the

17   Government does bear the burden of proof on this.

18        Mr. Hisker, do you want to put up any evidence on

19   your end?  Your client testified at the earlier hearing to

20   withdraw the plea, but you can put him back up again if you

21   want to.

22        MR. HISKER:  No, Your Honor, I don't need to call

23   any other witnesses.  I have an argument when you are ready.

24        THE COURT:  Anything by way of argument from the

25   Government?

6

1        MS. HINTON:  No, Your Honor, just that we would

2    simply rely on the previous testimony of Special Agent Loomis

3    under oath in front of Your Honor where he was subject to

4    cross-examination, and also on the telephone calls that are

5    outlined in the presentence report.

6        THE COURT:  All right.  Mr. Hisker.

7        MR. HISKER:  May it please the Court.  The first

8    point that I would like to raise to the Court's attention, it

9    certainly implies to the drug weight, but I think it speaks

10   to the entire progress of this case and how we had a motion

11   to withdraw the plea and how there was great misunderstanding

12   on the part of Mr. Lloyd.

13       Mr. Lloyd pleaded to a quantity of cocaine less than

14   500 grams.  His guilty plea transcript on page 20, 21.  The

15   Court advised him, so with that understanding, the Government

16   will not attempt to prove anything more than -- less than 500

17   grams of cocaine.

18       And so from the very beginning, Mr. Lloyd believed,

19   even at his guilty plea, that his exposure on the drug weight

20   would be fairly minimal, which really plays into what he was

21   advised and how he was advised by his attorney.  When I first

22   got this case, I spoke with the U.S. attorney about those

23   limits and felt that if the plea transcript was -- if the

24   plea transcript was representing an upward bar of what the

25   Government would prove, that would put him at a base level of

7

1   22 for 400 or 500 grams.  Of course, at that point in the

2   negotiations, the Government didn't agree and said, that's

3   different, relevant conduct is different.

4           THE COURT:  Let me back up.  The plea agreement

5   didn't -- did it contain a specific agreement on the drug

6   weight?

7           MS. HINTON:  No, sir, it did not.  And it also

8   contained a provision discussing relevant conduct.

9           THE COURT:  So there is a reference in the plea

10  agreement to the weight alleged in the indictment, 500 grams,

11  the reason for the foreseeable paragraph.  But it didn't have

12  an agreement on drug weight per se overall, right?  I mean,

13  you agree with that, Mr. Hisker?

14          MR. HISKER:  In the plea agreement, that is correct.

15  Maybe I was incorrect.  I was talking about the plea

16  transcript.

17          THE COURT:  Right.

18          MR. HISKER:  The change of plea transcript on page

19  20, 21, when he's being advised of what his offense level

20  will be --

21          THE COURT:  You better read that to me then, read

22  that pertinent line.

23          MR. HISKER:  I'm starting off on page 20.  All

24  right.  Now you've been -- this is from the Court.  All

25  right.  Now, you've also been allowed to plead guilty to a

1  lesser-included offense which will take -- which will just be

2  500 grams of cocaine.  Do you understand that?

3         THE COURT:  That's me speaking?

4         MR. HISKER:  Yes, Your Honor.  And Mr. Myers

5  responds, Your Honor, it's actually less than.  And then the

6  Court, less than, less than 500 grams of cocaine.  And then

7  Mr. Lloyd responds, yes, sir.  And the Court, so with that

8  understanding, the Government will not attempt to prove

9  anything more than -- less than 500 grams of cocaine.  Do you

10  understand that?  Mr. Myers says correct.  And Mr. Lloyd

11  says, yes, sir.

12         THE COURT:  Ms. Hinton, how do we deal with that?  I

13  didn't recall that happening.  How do we deal with that?

14  Seems like the Government did agree that it would be limited

15  to 500.

16         MS. HINTON:  Well, Your Honor, I don't know that I

17  specifically agreed to that.  I think that was something that

18  was an exchange between Your Honor and Mr. Myers.

19         THE COURT:  I know, but I confess here, I think I

20  may have flubbed it up there.

21         MS. HINTON:  Well, Your Honor, I mean, I think that

22  you also clarified the rule in the colloquy that as we go to

23  paragraph 6 of relevant conduct, you talk about relevant

24  conduct, how the sentencing might be different than anything

25  that his lawyer gave him, that, you know, the drug weight --

1   that you might have to determine what the appropriate drug

2   weight is.  So I don't think that the fact that he

3   interpreted the plea colloquy one way has anything to do with

4   whether or not relevant conduct was appropriately applied in

5   this case.

6          THE COURT:  But I'm concerned that I was the one

7   that was telling him that.  I'm concerned about that.  Read

8   it to me again.

9          MR. HISKER:  Judge, I don't know if you mind if I

10  just pass it up.

11         THE COURT:  I can read it better.  Just pass it up.

12         MS. HINTON:  Your Honor, these are e-mails.  I don't

13  particularly want them to become a court's exhibit.  I think

14  we have -- do you have the transcript?

15         THE COURT DEPUTY:  The transcript has been filed,

16  but I don't know what page number.

17         MR. HISKER:  It's page 20 and rolls over to page 21.

18  But I will read it to the Court.

19         THE COURT:  No.  Let's just print it out.  Probably

20  needs to be in the record for the appeal anyway.  Just print

21  it out.

22         THE COURT DEPUTY:  20 and 21.

23         THE COURT:  I just had a bad day at work when I

24  said, so with that understanding, the Government will not

25  attempt to prove anything more than -- less than 500 grams of

1    cocaine.

2         MS. HINTON:  And, Your Honor, I understand that that

3    might have been not entirely in line with how we generally do

4    things, but I also think you have to look at the Rule 11

5    colloquy and the totality of the circumstances.  I mean, I

6    think you have to look at it as a whole.  From time to time

7    we all misstate things within the plea colloquy.  But that

8    doesn't necessarily mean that the plea is invalid or

9    improper, because we go through a series of questions for a

10   reason.  We reiterate certain things for a reason.  And

11   that's why those things are in there.  And he acknowledged

12   that he understood that relevant conduct could be used

13   against him.  He acknowledged that provision of his plea

14   agreement.

15        THE COURT:  I understand that is in the standard

16   boilerplate language about relevant conduct.  And then we

17   always ask the standard questions about, do you understand

18   the plea may be different from what you think it's going to

19   be.  But here I told the defendant myself that the Government

20   was not going to try to prove more than 500 -- less than 500.

21        MS. HINTON:  I mean, in that case, Your Honor, we

22   are -- I mean, we will agree to a level 24, but I do not

23   agree that it is any less than that.  And if that is the

24   case, I think Mr. Lloyd needs to file some sort of appeal

25   regarding whether or not that was proper, because I don't

11

1    think that that was a fatal error.  And I also think that is

2    entirely different from the argument about relevant conduct.

3           THE COURT:  How much of a difference are we talking

4    about?  Pretty big difference, aren't we?

5           MS. HINTON:  It would just be two levels.  Well,

6    Your Honor, I think he ended up at a level 26.  But, I mean,

7    the Government would be willing to give him a level 24 to

8    resolve the issue.  But if he wants any less than that, the

9    Government is not inclined.

10          THE COURT:  I don't want to get involved in a plea

11    bargain, but can probation tell me, if I agree with what Mr.

12    Hisker told me, that we are going to cap it at less than 500

13    grams --

14          MR. HISKER:  He would have been a level 22 and --

15          THE COURT:  Let her answer.  Is that right, it would

16    be a 22 and not a 24?

17          PROBATION OFFICER:  Your Honor, if it's less than

18    500, he would be 22.

19          THE COURT:  As a base offense level?

20          PROBATION OFFICER:  Yes, Your Honor.

21          THE COURT:  And then we have to do all the math on

22    the other things after that.

23          MS. HINTON:  Your Honor, can I say another thing

24    regarding what you told him?  I mean, that is also the

25    language that is in the plea agreement, that the conspiracy

1   is less than 500 grams.  I mean, that is the language that we

2   use, because that is the (b)(1)(C) level that he was pleading

3   to.  But --

4          THE COURT:  Right.  That (b)(1)(C) sets the

5   sentencing provisions.

6          MS. HINTON:  The maximum that he could possibly

7   receive and the lack of a mandatory minimum.  But that does

8   not mean that relevant conduct is not applied, because that

9   is very clearly stated.  Even though it says less than in

10  paragraphs 3 and 4, in allowing us to get to a level

11  (b)(1)(C) weight, on paragraph 6 of the plea agreement, on

12  page 5, it is very clear that the defendant understands the

13  Court may consider the dismissed counts as relevant conduct

14  pursuant to 1B1.3.

15         THE COURT:  And that happens a lot where an

16  indictment charges a specific amount, but the defendant

17  understands going forward that no limitation is placed on my

18  consideration of evidence.  And we look at dismissed counts

19  and all that.  And the sentence may be different from what he

20  thought it was going to be.  And that happens all the time,

21  whether the drug weight ends up being something more than

22  what is alleged in the indictment.  But I just don't know if

23  I ever had a case where I said the Government will not

24  attempt to prove anything more than 500 grams.

25         Let me take a recess and converse with the probation

13

1    officer for just a moment.  Let's take a five-minute recess.

2              (Whereupon, a recess transpired.)

3              THE COURT:  All right.  I spent considerable time

4    discussing with the probation officer the implications of

5    this drug weight and looking over the transcript of the

6    guilty plea.  And it's an awfully close call to me.  And to

7    me,  when I say that in a criminal case, in baseball, the tie

8    goes to the runner.  In criminal law, the ruling of leniency

9    comes into play.  And I think I misspoke in a big way at the

10   guilty plea when I implied to the defendant that there would

11   be a cap on the drug weight of less than 500 grams of

12   cocaine.  So I'm going to sustain the objection on drug

13   weight.  Probation tells me that with that, the base level

14   would be a 22 instead of a 24.

15             PROBATION OFFICER:  That's correct, Your Honor.

16             THE COURT:  And that's over the Government's

17   strenuous objection.  So now we still have the twin issues of

18   obstruction and acceptance which might affect that total

19   offense level in a big way.

20             MS. HINTON:  Yes, sir, Your Honor.  And if I may

21   before I move on, because I will need to let my bosses know,

22   can I just put on the record two Supreme Court cases --

23             THE COURT:  Certainly.

24             MS. HINTON:  -- related to that issue?

25             THE COURT:  Go ahead.

0240

1          MS. HINTON:  First is *United States of America vs.*

2   *Vonn*, this is 535 U.S. 55.  Your Honor, that stated that an

3   unobjected to error in a trial court's guilty plea colloquy,

4   which, to be clear, the Government does not concede that this

5   is error, was reversible only upon showing that such error

6   was plain and that it affected a defendant's substantial

7   rights.

8          THE COURT:  But he did object to it here.  And gives

9   me a chance to fix it though, right?

10          MS. HINTON:  Yes, Your Honor.  I guess the

11   Government's argument is that it does not affect a

12   substantial right, because under *Rosales v. United States,*

13   which is 138 Supreme Court 1897, a substantial right is

14   defined as a right that seriously affects the fairness,

15   integrity, or public reputation of judicial proceedings.

16          THE COURT:  All right.

17          MS. HINTON:  Thank you.

18          THE COURT:  All right.  That's my ruling.  Now

19   anything else?  I sustained that one objection.  The

20   Government is not going to press the gun enhancement.  So we

21   are at a base offense level of 22.  We have the Government's

22   objections to the acceptance of responsibility guideline,

23   which could potentially take us down three levels, and the

24   Government's objection to the failure to give obstruction of

25   justice enhancement, which would take us up two levels.  So

1    the issue are interrelated.

2              And I guess on obstruction, the Government bears the

3    burden of proof.  On acceptance, I think it's on the

4    defendant, correct?

5          MS. HINTON:  Your Honor, I think if Your Honor finds

6    that he obstructed, then it would shift to the defendant.  So

7    Your Honor, under 3C1.1, which is obstructing or impeding the

8    administration of justice, the guideline says that if the

9    defendant willfully obstructed or impeded or attempted to

10   obstruct or impede the administration of justice with respect

11   to -- and it gives several things, but one being the

12   sentencing of the instant offense of conviction, and the

13   obstruction related to the defendant's offense of conviction

14   and any relevant conduct or closely related offense, then you

15   increase by two levels.

16             The application notes make it clear in Application

17   Note 2, it says that a defendant's denial of guilt other than

18   denial of guilt under oath that constitutes perjury does not

19   automatically mean that they obstructed.

20             However, it is the Government's contention that in

21   the hearing before Your Honor, either at his plea colloquy or

22   at his motion to withdraw, that he lied to the Court.  Some

23   of the covered conduct under Application Note 4, Application

24   Note 4B says, committing or attempting to suborn perjury,

25   including during the course of a civil proceeding if such

1    perjury pertains to conduct that forms the basis of the

2    offense of conviction.  And under F, providing materially

3    false information to a judge or magistrate judge.

4         Your Honor, certainly, the Government concedes he

5    committed perjury.  He was under oath both at the Rule 11

6    colloquy and at his motion to withdraw his guilty plea, and

7    those two testimonies cannot be reconciled, that if he didn't

8    admit that he lied, he affectively admitted that he lied in

9    almost every question that Your Honor asked him in the Rule

10   11 colloquy.  So, certainly, at least at some point, he

11   provided materially false information to Your Honor under F.

12   And so, therefore, the Government believes that he's guilty

13   of obstruction of justice.

14        And I'm happy to let counsel respond to that and

15   then move on to the acceptance, if that's how Your Honor

16   would like to handle it.

17        THE COURT:  All right.  Mr. Hisker.

18        MR. HISKER:  Judge, if we could, I would like to

19   back up just a little bit because, really, I think we've

20   skipped a few things and part of my argument about the

21   statement in the guilty plea transcript.  I mean, I am not

22   criticizing the Court by any means.  I've been in front of

23   this Court many times.  And I know it's been a while, but I

24   know this Court has always been abundantly clear and

25   abundantly honest with defendants.  But we would not be here

1    today but for the Government's denial of what was in that

2    transcript.

3         Back when I was brought onto this case in February,

4    I contacted the Government, said that Mr. Lloyd feels he's

5    been cornered and that he was advised by his attorney that

6    his drug weight was low.  And I hate to tell you, those texts

7    from the attorney were before the plea that your drug weight

8    would be low.  Mr. Lloyd was already feeling uncomfortable

9    with his attorney.  But at that point, had blindly followed

10   him up to that point.

11        Believes that his drug weight was going to be low,

12   goes through with the plea, he's told by the Court that he's

13   going to be looking at 500 grams.  Gets his PSR that it's in

14   the 2 1/2 kilo range, which is totally foreign to him,

15   totally not what he was expecting at all.

16        And, Judge, I think as attorneys, we all take it for

17   granted that we are dealing with extremely complex matters.

18   We have to -- you know, I told Mr. Lloyd I don't expect you

19   to understand what relevant conduct is.  I have to go to a

20   CLE every single year to have probation educate me on what

21   all the ins and outs of relevant conduct are.  But we tell

22   him one thing in a plea, and Your Honor already ruled and I

23   appreciate that, but we tell him one thing in a plea and then

24   he comes back 45 or 60 days later and sees his PSR saying

25   he's going to, you know, be held accountable for 2 1/2 kilos.

1    He, of course, panics.

2              He hired another attorney.  And that's how I got

3    here.  But in February when I got here and contacted the U.S.

4    Attorney's Office and I said, you know, to the U.S. attorney,

5    the transcript limits him to 500.  I said, if we could just

6    limit him to that, he could be -- my e-mail says we would be

7    at a level 22, which would take us down to a 19 with

8    acceptance, 19 pre-variance.  If we could just agree to that,

9    we wouldn't be here today, Judge.

10             THE COURT:  I'm looking for the motion to withdraw

11   the plea and I don't see a copy of it in my file.

12             Ms. Floyd, can you print me out a copy?

13             I don't remember the motion to withdraw the plea

14   being hinged solely on drug weight.  I thought it was a lot

15   of other complaints as well about being misled by his

16   attorney, about pleading to cocaine instead of marijuana and

17   so forth.  Am I wrong about that?

18             MR. HISKER:  No, Your Honor, you are correct.  And I

19   believe that was the gist of his argument at that point, was

20   that, you know, he was really only involved in the marijuana.

21   But my primary argument is that if we had resolved the issue

22   of the drug weight, we wouldn't have the motion to withdraw

23   the hearing.  We wouldn't be here at all.  We would have had

24   sentencing already and it would have been resolved.  But even

25   still, before we even get to that point, I still don't

1    believe that we've conceded what the drug weight is.

2          THE COURT:  Well, you won on drug weight.  I'm just

3    saying -- you told me that Ms. Hinton was getting ahead of us

4    because the whole motion to withdraw the plea was hinged on

5    the miscalculation of drug weight.  But I'm looking at your

6    motion and you complained that he didn't see the discovery he

7    was supposed to see, that his counsel failed to investigate

8    the case, he was coerced into pleading guilty to cocaine

9    because he was told that marijuana was more severe -- that

10   cocaine was less severe penalized than marijuana, and that

11   he's innocent of the allegations that he knowingly entered

12   into a conspiracy.

13         I mean, there's a whole lot of grounds for

14   withdrawing a plea just besides the disagreement about drug

15   weight.

16         MR. HISKER:  Judge, I can concede that's what we put

17   in the motion, but before I filed the motion --

18         THE COURT:  Well, I heard in the testimony he

19   repeatedly said his lawyer incorrectly told him to plead

20   guilty to cocaine versus marijuana because marijuana was a

21   Schedule I, cocaine is Schedule II, which means cocaine is

22   punished less severely.  That was a big deal in his testimony

23   at the hearing.  And then he says he didn't see a discovery.

24   I think he just ran through the whole laundry list of

25   everything that was wrong with his guilty plea.

1          And I'm looking through your written motion.  I

2    don't see a single thing yet about the drug weight being

3    changed on him.  Give me just a minute to go through this

4    whole entire.  Let's don't get in a hurry here.

5          I've been through the written motion to withdraw the

6    plea which is docket entry 1130 several times now.  And just

7    to itemize out the assertions that were made, Mr. Lloyd

8    admitted first that he didn't get all the discovery.  That's

9    one.  He was ignorant of the process.  That's two.  His

10   counsel failed to investigate the case fully.  That's three.

11   He was coerced into pleading guilty because he thought

12   cocaine was less than marijuana.  That's four.  He's

13   factually innocent of the charges that he knowingly entered

14   into a conspiracy.  That's five.  And then another reference

15   to discovery, not reviewing the discovery.  But that's

16   already been mentioned once, so we are still at five.

17         And then there's a discussion of the telephone

18   calls, making mention of the No. 18, and the items that were

19   found on the traffic stop.  And so the motion to withdraw the

20   plea was not centered solely on the mischaracterization of

21   the drug weight by any means, by any means.  So he alleged a

22   lot of other things that I found to be factually not correct.

23   And so we are right back to obstruction.

24         MR. HISKER:  Well, Judge, what I point out is on

25   page 3 and 4, the long paragraph at the bottom of page 3 is

1    primarily all about drug weight.  It's about the telephone

2    calls discussing how the Government has come to this drug

3    weight all the way into five.  I mean, into paragraph -- I'm

4    sorry, bottom of page 3, top of page 4, is all the discussion

5    about the drug weight.  I think the factors that I listed

6    are --

7              THE COURT:  I grant you that does infer indirectly

8    to drug weight.  But nowhere was I squarely presented with

9    the argument this defendant wanted to withdraw his plea when

10   he got his presentence report and saw that his drug weight

11   was calculated differently from what he was told at the

12   guilty plea.  That argument was not made.

13             MR. HISKER:  That is correct.  I did not make that

14   argument to the Court.  I made that argument to the

15   Government before I filed the motion.  And my position today

16   is, had the Government conceded their position back then, we

17   would not have argued that motion to withdraw the plea.  We

18   did that solely because Mr. Lloyd felt that he was completely

19   and utterly trapped, that he was facing guideline ranges that

20   were vastly higher than what he was told at his plea hearing

21   by his lawyers.  We would not be here but for the fact that

22   the Government would not just go along with --

23             MS. HINTON:  Judge, respectfully, that is not a

24   legal argument.  The fact that I would not concede a position

25   that Mr. Lloyd wants me to concede has no legal basis for

1    this argument.

2         THE COURT:  All right.  I agree.

3         MR. HISKER:  Well, then I would ask Your Honor when

4    we are complete to conclude that in my motion for variance,

5    that Mr. Lloyd is here, and all these problems stem from the

6    fact that the complexities of this case were overwhelming for

7    Mr. Lloyd.  When he's advised different things from his

8    lawyer and then from a court, and then he gets his PSR and he

9    sees that his understanding is vastly different than what he

10   expected, an ordinary nonlawyer is going to have problems

11   justifying that.  And I think at that point he felt he had no

12   choice but to fight, but to fight everything, I just got to

13   get out of this plea.

14        And I would just ask you to consider the fact that

15   he would not have even filed that had we gotten to a drug

16   weight that conformed with what his belief that it would be.

17        THE COURT:  All right.  Well, having heard fully

18   from both parties, it's this Court's determination that the

19   defendant does deserve an enhancement for obstruction of

20   justice under the Guideline 3C1.1.  I've carefully, although

21   I "had a bad day at work" when I mentioned drug weight, the

22   transcript reveals that I carefully complied the requisite

23   all the requisites of Rule 11 in accepting the defendant's

24   plea.  I ensured that he understood that he was under oath.

25   I ensured that he understood his obligation to answer

1    truthfully.  I ensured that he understood that if he did not

2    follow the proceedings or understand my questions, I would

3    repeat them for him, did all of that up front.  Went through

4    a very careful Rule 11 colloquy.

5          And then in came the motion to withdraw, at which

6    time the defendant took the stand, once again under oath just

7    as he was at the plea, and under oath specifically

8    contradicted virtually everything he had told me at the

9    guilty plea regarding things such as his satisfaction with

10   his attorney, his understanding of the process, right down

11   the line, under oath both times.

12         And so I find that he did provide materially false

13   information to a judge at an official proceeding, that being

14   his guilty plea colloquy and his later testimony of this

15   motion to withdraw the plea.  So I sustain the Government's

16   objection as to obstruction, which takes us up two points.

17         So then we get to the question of whether we go back

18   down three points for acceptance of responsibility.  I will

19   be glad to hear from the defendant on that.

20         MR. HISKER:  Judge, can we first start out with the

21   base drug offense level?  I understand your ruling was that

22   he be limited to 500 grams.  It's still our position the

23   Government hasn't proved 400 grams.  Each of these telephone

24   calls vaguely references the number 18.  For all we know,

25   that can be 18 grams.  They just presume it's 18 ounces.  Mr.

1  Britt is a big cocaine dealer, got to be 18 ounces.  There's

2  no evidence whatsoever that we were talking about anything

3  versus ounces or grams.

4        There's also no evidence that any of those phone

5  calls actually were accomplished.  There was no surveillance

6  of any of those calls.  We don't know that anything actually

7  went through.  The only telephone call that the Government

8  has evidence that some meeting actually took place is the

9  one -- is the last one that they conducted surveillance on

10  Mr. Britt going to Mr. Lloyd's house.  They later pulled him

11  over and he's got $15,000 in the car.

12        As I mentioned in the motion, interestingly enough,

13  that's one of the phone calls where they don't even discuss

14  the number 18.  That was just a meeting.  So we have no way

15  to know whether Mr. Lloyd provided that $15,000.

16        We can follow up in the PSR where -- I mean, these

17  are conversations -- just bear with me, Judge.  Page 15 --

18  well, it's paragraph 26, is the conversation on November

19  18th.  This is a conversation between Mr. Lloyd and Mr. Britt

20  where Mr. Britt says he got documentation for that money.

21        THE COURT:  Let me interrupt.  I hate to tell you

22  this.  But you are from out of town, Mr. Hisker?  You

23  practice out of Columbia?

24        MR. HISKER:  Judge, I used to practice with Mr.

25  Swirling.

```
1              THE COURT:  Right.  But you are from --
2              MR. HISKER:  I'm from the upstate.
3              THE COURT:  Ms. Hinton is too.  Let me just tell
4    you.  A life-long friend of mine is scheduled to be sworn in
5    at the chief judge at the Court of Appeals.  And he invited
6    me to sit up on the bench with them wearing my robe.  And I'm
7    supposed to be there at 3:40.  I've got to make a command
8    decision to pass that up.  But I think a good thing to do is
9    adjourn that hearing.  I will run over there just for the
10   ceremony, which will take 30 minutes.  I won't go to the
11   reception.  And I will come right back over there and pick
12   this up.  I don't want to get too big of a rush on this case.
13             MR. HISKER:  Can we do it another day?
14             MS. HINTON:  No, Judge, please.
15             MR. HISKER:  I coach on a 10-year-old lacrosse team
16   at six o'clock.  They don't have any equipment.  They don't
17   have anything.  I would like to be in the upstate at six so I
18   can coach --
19             THE COURT:  Ms. Hinton is leaving the Government
20   service soon --
21             MS. HINTON:  And, Judge, I have a four-year-old
22   birthday party to go to.  But this needs to be accomplished,
23   it's the Government's contention.
24             THE COURT:  Ms. Floyd.
25             (Off-the-record conference.)
```

1          THE COURT:  I'm going to do what I said.  I'm going

2    to adjourn now.  I'm going to go to the ceremony and have

3    somebody waiting outside with a car to pick me up as soon as

4    it's over and drive did straight back over here and we will

5    finish today.  Ceremony starts at 4.  The reception is

6    supposed to be starting at 5.  So I'm assuming we will be

7    through by 4:30.  So let's just say be back here at 4:30 and

8    we will pick up then.  We will be in recess.

9          (Whereupon, a recess transpired.)

10          THE COURT:  I know both had family proceedings that

11   were interrupted by this proceeding.  I'm very sorry.  I had

12   my law clerk on standby right outside the building.  As soon

13   as the ceremony was over, we jumped in and we came straight

14   back.

15          So let's see where we are.  Mr. Hisker, one thing I

16   thought about that somewhat concerns me, you basically said

17   when you went to the Government and asked the Government to

18   concede on drug weight and they refused, that's what prompted

19   the motion to withdraw the plea, which included allegations

20   that he was factually innocent, that he didn't understand the

21   charges, that he didn't understand the procedure, all of

22   which I found to be meritless in my order.

23          So I just think that I have no -- I'm compelled by

24   the record before me to find that obstruction of justice

25   enhancement should be applied in this case.  I find as a fact

1    after hearing the defendant's testimony under oath at the

2    Rule 11 hearing and then his testimony under oath at the

3    motion to withdraw the plea, that that testimony was entirely

4    inconsistent in many respects, all of which are set out in

5    the record in this case and was highlighted by the prosecutor

6    in arguing against the motion to withdraw the plea.

7          So I'm going to sustain the objection with a

8    two-level enhancement for obstruction.  Pretty much

9    established law says when that happens, the defendant loses

10   acceptance of responsibility except in extraordinary

11   circumstances.  I don't have that case at my fingerprints.

12   My law clerk handed it to me as I was walking in the

13   building.  But I did not bring it in the courtroom.

14         MS. HINTON:  Your Honor, it's also located in 3E1.1,

15   Application Note 4.

16         THE COURT:  Read that to us, if you would.

17         MS. HINTON:   Yes, Your Honor.  It says, conduct

18   resulting in enhancement under 3C1.1, which is obstructing or

19   impeding the administration of justice, ordinarily indicates

20   that the defendant has not accepted responsibility for his

21   criminal conduct.  There may, however, be extraordinary cases

22   in which adjustments under both 3C1.1 and 3E1.1 may apply.

23         THE COURT:  Well, that's exact language from the

24   case.  And so we are left with a question does this case

25   present extraordinary circumstances.

28

1          Mr. Hisker?

2          MR. HISKER:  Judge, I have to concede I understand

3   that to be the law.  And I don't think that I have anything

4   to present this rises to any level that would overcome that

5   law.  I would prefer just to preserve my argument on those

6   facts.

7          THE COURT:  All right.  Well, with that, I will add

8   base offense level is 22 based on the reduced drug weight.

9          MR. HISKER:  Judge, I think that's what we actually

10  left off.  I believe my objection was as to the maximum drug

11  weight, which would be 500.

12         THE COURT:  That is where we left off.  All right.

13         Ms. Hinton, do you want to be heard on the precise

14  details of the calculation to the drug weight?

15         MS. HINTON:  Well, Your Honor, as you are aware, the

16  Government objects to him being at a base offense level 22,

17  it's the Government's argument that even one 18-ounce deal

18  would put him at 501 grams, which would put him at a level

19  24, because that is 500 grams, but less than 2 kilos.

20         It's the Government's contention that there are

21  multiple instances where they discussed the number 18.  And

22  that is corroborated by the pulling over of Mr. Anthony

23  Britt, who had the street value of 18 ounces of cocaine,

24  which would equate to 501 grams.

25         The Government would rely on the credibility of

1   Special Agent Josh Loomis in this case, Your Honor.  And it

2   essentially comes down to the credibility of him versus the

3   credibility of Mr. Lloyd and his testimony before Your Honor

4   that he never dealt with cocaine, he only dealt with

5   marijuana.

6        So it's the Government's contention that Mr. Lloyd

7   is not credible, that Special Agent Loomis is, as Your Honor

8   has found in multiple occasions when he's appeared and

9   testified before Your Honor that he is, in fact, credible.

10        So the Government, you know, believes that the

11   previously calculated base offense level by probation of 26

12   is the correct calculation.  But we understand Your Honor's

13   ruling.

14        The concern of the Government is that if Your Honor

15   bases the drug level off of what Your Honor has said is a

16   misstatement, but the Government does not concede as error,

17   then that's not -- that's a difficult starting point.  And

18   that essentially removes all relevant conduct and makes

19   relevant conduct irrelevant, frankly.

20        And so if Mr. Hisker wants to open this can of worms

21   again, the Government thinks that probation --

22        THE COURT:  But even as we stand now, it's a level

23   22, correct?

24        MS. HINTON:  That's what Your Honor has ruled, yes.

25        THE COURT:  Mr. Hisker, are you suggesting it should

1    go below 22?

2         MR. HISKER:  Yes, Your Honor.  I can present that.

3    The evidence that the Government has put forward is all in

4    the PSR.  When we opened the hearing, they said they are not

5    going to call witnesses, they are going to rely on the

6    statements in the PSR.

7         Paragraph 17 discusses the conversation on October

8    24th.  There's a meeting discussed and the number 18.  As to

9    that one transaction, we don't know whether or not that

10   transaction actually took place.  We don't have any

11   information that there is any present ability to carry out

12   that transaction.  Furthermore, we don't know whether it's

13   pure speculation on what the number 18 references.

14        He's pleading guilty to cocaine.  Your Honor upheld

15   his guilty plea.  But is that 18 grams?  Is that 18 ounces?

16   It's pure speculation they are talking about 18 ounces as to

17   that transaction.

18        Paragraph 18 talks about -- it's just a recorded

19   conversation from October 31st, same thing.  No way to

20   confirm whether it actually took place.  No evidence that

21   there was present ability to make it take place.  And there's

22   nothing but pure speculation that 18 refers to ounces and not

23   grams.

24        Paragraph 19 is the same situation.  It's a

25   conversation on November 12th.  We don't know whether these

1    transactions took place.  If one of those transactions was to

2    replace a different transaction that didn't happen, there's

3    no evidence that any of these -- there were surveillance of

4    any of these.  There's only surveillance as to the November

5    18th call, which is in paragraph 21, 22, and 23, where they

6    found $15,000 in Mr. Britt's car.

7         Now as to that more specifically, the Government

8    just wants to extrapolate that and say $15,000 is approximate

9    street value of 18 ounces of cocaine.  But if you read those

10   transactions and read those telephone calls, for example, in

11   paragraph 23, there's a call between Mr. Britt and Mr. Lloyd

12   that says, they took my money, my damn money.  He didn't say

13   he took your money.

14        He says further on down the conversation, I've got

15   documentation, I am not worried about that, I've got

16   documentation, so it doesn't even matter.

17        This is the evidence that the Government has

18   presented to establish that Mr. Lloyd purchased 18 ounces of

19   cocaine.  And I would say it's pure speculation that's 18

20   ounces, not 18 grams or not some other drug.  It's pure

21   speculation that the money found in Mr. Britt's car on

22   November 18th came from Mr. Lloyd.

23        And the way this case was investigated, they could

24   have immediately went to Mr. Lloyd at the same time they

25   pulled offense Mr. Britt and searched him, found cocaine.

1  They didn't do any such thing.  They didn't search Mr. Lloyd.

2  They executed a search warrant on his house several months

3  later where they don't find a shred of cocaine.  They don't

4  find any cocaine residue.  They found a little bit of

5  marijuana and I think $500.

6          There's no way the Government can take this amount

7  of evidence and somehow extrapolate 18 ounces of cocaine for

8  each and every phone call.

9          THE COURT:  All right.  Ms. Hinton.

10          MS. HINTON:  Thank you, Your Honor.  Going back to

11  the phone calls, of course, Mr. Britt refers to it as his

12  money because he just gave Mr. Lloyd 18 ounces of cocaine.

13  Mr. Lloyd gave him $15,500.  So at that point, the

14  transaction has occurred.  So it is, in fact, his money.

15          Later, in the multiple phone calls, Mr. Lloyd

16  continues to call Mr. Britt over and over to discuss this

17  traffic stop and his concern over the traffic stop.  He ends

18  up saying things like, I was about to say, the next time we

19  hook up, you want me wherever you want to come so you don't

20  have to come up in this MFer.  Next time we hook up, we go

21  somewhere else, man.  We don't have to come to this MFer if

22  they doing that shit.

23          Then he goes on to say, Mr. Britt says:  But it

24  seems like they knew.  You know what I'm saying?  It seems

25  like they knew I had something on me.

33

1          Mr. Lloyd says:  If you don't smoke no weed.

2          Mr. Britt says no.  He goes on to say:  I can

3    relocate to my mama house to do business from, because I

4    don't need -- feel like moving nothing from up here out this

5    MFer.  I'm about to tell you.  I'm about to tell you, when

6    everything go forward and you in the process of getting the

7    money back, if you need my old lady to say, you know, you

8    have peoples and you coming from here, you know what I'm

9    saying or whatever case may be, you made a car sale, you made

10   a car sale here.  Man, you can say that, dawg.  You can say

11   ou sold somebody a car here for a certain amount of money.

12          And then he goes on to say:  Yeah, but ain't going

13   to bring no heat on me.  Like, when I said you want to say

14   you sold a car here at the people's house, you can do that

15   man.

16          So Mr. Britt doesn't say, I've got $15,500 ripped

17   from me.  Mr. Lloyd already knows the amount.  And he knows

18   it's worthy of a purchase of a car.  So he knows exactly what

19   it is because he gave it to him.  18 grams of marijuana, the

20   street value of that, while I don't know it off the top of my

21   head, is certainly nothing that would afford a car.

22   Certainly, $15,500 could get you a car.

23          And in addition to that, Your Honor can look to his

24   prior conviction.  He has a prior conviction for trafficking

25   cocaine from 2008 that he did 7 years on and was released

34

1    from custody in 2013, which is not that far removed from his

2    current transgressions.  So this is not out of thin air.

3    There's a traffic stop with $15,500.  Mr. Lloyd has a history

4    of trafficking cocaine.  And he calls him incessantly talking

5    about wanting to move his spot and giving him an alibi for

6    $15,500.  This goes down to the credibility of Special Agent

7    Loomis, who is a federal agent above-board who has been

8    working this investigation for years versus an admitted liar

9    to the Court in Mr. Lloyd.

10              THE COURT:  All right.  Let me see probation just

11   one second.

12              All right.  Based on the record before me,

13   especially the testimony on -- based on the record in front

14   of me, especially that of the testimony Special Agent Loomis

15   who testified in the motion to withdraw the plea here in this

16   case and in several other sentencings, I am convinced that he

17   is a credible witness.  And also, that based upon his

18   experience, he has special expertise in the code words and

19   slang words and so forth used by drug dealers.  And I accept

20   his statement that at least one of these four phone calls

21   that were intercepted where the number 18 was referenced,

22   that that was, in fact, referring to 18 grams of cocaine in

23   return for 15,000, or $15,500 cash.  I don't need to find but

24   one 18-ounce transaction, which then takes us up to the 500

25   or 499, below 500, and it stops right there.

1              MS. HINTON:  Yes, Your Honor, I believe one 18-ounce

2    transaction would equate to -- it's my understanding -- I

3    know probation said 504 grams.  I think it's anywhere between

4    501 to 504 grams.

5              THE COURT:  So one 18-ounce equals more than 500

6    grams?

7              MS. HINTON:  That's right.

8              THE COURT:  But I'm going to stop at less than 500

9    grams consistent with my earlier statement.  So I only need

10   to find one of these transactions occurred.  And I find that

11   based on the record before me, after carefully considering

12   the testimony of Agent Loomis, the testimony of the

13   defendant, the arguments made by able counsel in this case,

14   and this Court's experience in listening to these secretly

15   recorded conversations between those who would distribute

16   drugs, I'm familiar with this fact that they often use code

17   terms and abbreviated sentences and so forth to mask their

18   activity.  And I accept the interpretation given by Agent

19   Loomis as to at least one of these transactions where the

20   number 18 is referenced.

21             For that reason, I would overrule the objection as

22   to drug weight.  But I will, consistent with my earlier

23   ruling, stop at less than 500 grams of cocaine.

24             With that, we can now turn to the presentence

25   report.  Correct me if I am wrong, but we are looking at the

36

1  following:  After the rulings that I have made this far this

2  afternoon, under the applicable statute, the maximum sentence

3  is 20 years of incarceration.  Under the advisory guidelines,

4  we start with a base offense level of 22.  We add two points

5  for obstruction.  We don't take anything away for acceptance

6  of responsibility, leaving us with a total offense level of

7  24.  Criminal history category is II.  That gives us a

8  sentencing range of 57 to 71 months incarceration, three

9  years of supervised release.

10        The fine was not calculated due to inability to pay.

11  There's no restitution in this case.  And the mandatory

12  special assessment is $100.

13        Anything from the Government regarding sentencing

14  generally?

15        MS. HINTON:  Yes, Your Honor.  And just to make the

16  record clear, the Government also withdraw the one point

17  acceptance of responsibility that's in the Government's

18  purview.

19        THE COURT:  You are correct.  I can only deal with

20  the two.  It's your call on the additional one.

21        MS. HINTON:  That's correct, Your Honor.  And the

22  Government did move to withdraw that one point.

23        Your Honor, related to the nature and circumstances

24  of the offense and the history and characteristics of the

25  defendant under 18 U.S.C. 3553E.  Your Honor, Mr. Lloyd falls

37

1    in kind of the middle part of this conspiracy.  So he's

2    certainly not at the top.  He's certainly not at the bottom,

3    but more the middle level of this conspiracy.

4         He, as I mentioned to Your Honor, has a prior

5    conviction for trafficking cocaine that is -- at least his

6    release from prison was not so far removed from this

7    conspiracy that began, you know, in 2016.  Admittedly, I

8    don't know that we have necessarily firm evidence that

9    Mr. Lloyd began in 2016.  But he was released from prison in

10   2013 after serving a significant sentence of 7 years.  And

11   was at least shortly thereafter back to dealing in similar or

12   a more substantial quantities.

13        Your Honor is also familiar with the rest of his

14   prior record, which includes other convictions for drug

15   offenses.  And while he's only at a category III, his

16   criminal history is nothing to thumb its nose at.

17        THE COURT:  You said III.  Isn't it II?

18        MS. HINTON:  Yes.  Three points, Your Honor, and

19   criminal history category II.  But he has convictions for

20   failure to police, malicious injury, and other drug

21   convictions.  So it is certainly a fairly significant record.

22        Your Honor, I believe that the sentence in this

23   case, accepting the guideline range of 57 to 71 months, and

24   the Government is going to ask you for a guideline sentence,

25   needs to reflect both the seriousness of his conduct during

1    this conspiracy and the seriousness of his conduct before

2    this court.  Because if it wasn't so important for the Court

3    to take notice of that conduct, it wouldn't be allowed to be

4    an enhancing factor.

5              And so I know that Mr. Hisker is ultimately going to

6    ask you for a variance.  But the Government believes that

7    because of his conduct both during the conspiracy and after

8    he pled guilty, that that sentencing range is appropriate to

9    reflect the totality of the seriousness of the offense and to

10   promote respect for the law and to be a just punishment for

11   what he has done.

12             Your Honor, it would also protect the public from

13   Mr. Lloyd.  Mr. Lloyd clearly has an issue dealing drugs.

14   These drugs are serious.  This group is serious, giving

15   $15,000 to a high-level drug trafficker so that he can

16   continue to fund his business, a business that is violent and

17   dangerous throughout the Midlands and the Lexington area, is

18   certainly something that the public needs to be protected

19   from.

20             Your Honor, I completely understand Your Honor's

21   willingness to be fair to Mr. Lloyd given what Your Honor

22   said in the sentencing hearing.  And while the Government

23   thinks that you have been more than fair to him, the

24   Government thinks that the current guideline range should be

25   significantly higher based on what he has actually done.  So

1    that is why the Government believes that a sentence of 70

2    months is appropriate, because that would encompass the very

3    low end of probably what he's actually responsible for under

4    relevant conduct, which Your Honor has already found Special

5    Agent Loomis credible.  But given your concession, we think

6    that that certainly inadvertently ends up being a variance.

7    So, therefore, the Government would ask you for a sentence of

8    70 months.  We believe that's sufficient but not greater than

9    necessary to achieve the purposes of sentencing.

10             THE COURT:  Thank you, Mr. Hisker.

11             MR. HISKER:  Thank you, Judge.  May it please the

12   Court.  I previously alluded to you to consider the

13   trajectory of this case and injecting that into my variance

14   motion.

15             Mr. Lloyd -- I think this Court's ruling that he

16   should be held to 500 grams, if we had had that prior to, we

17   wouldn't be here, and that Mr. Lloyd felt that he was being

18   treated unfairly.  And he felt that he was grossly misled.

19   He testified that his attorney, you know, did not fully

20   explain everything to him.

21             And I think, frankly, he had a lot of trust issues.

22   And I think he had trust issues throughout.  Even once I was

23   involved in the case, he still wanted to go forward and

24   withdraw his plea because he felt that even though I had --

25   and I know the Government doesn't like me to say this, and I

40

```
 1    am not accusing them of anything, but I do think that I
 2    presented the opportunity for the Government to be reasonable
 3    and say, yep, the transcript does say 500 grams, he should be
 4    limited to that.  And if that happened then, he started out
 5    at a 22, he got three points for acceptance of
 6    responsibility, he would be at a 19.  All of this would have
 7    been avoided.  All these arguments would have been avoided
 8    and he would have had a 19.  And we would have laid down our
 9    sword.
10         But at that point, Mr. Lloyd felt like his back was
11    against the wall.  He felt like he didn't fully understand
12    what was going on.  He felt like he was told one thing and
13    shown something else that he was now going to be facing
14    sentencings for 2 1/2 kilos, which in his mind, is not low
15    according to what his attorney told him.  And that is the
16    reason why this case took that turn.
17         Could we have -- if we could do it all over again
18    and do it a different way, we would have.  But Mr. Lloyd felt
19    that he was completely overwhelmed and had no way to resolve
20    the situation in his mind.
21         So I would ask Your Honor to consider -- I know you
22    found that he has obstructed justice and he lost his
23    acceptance of responsibility.  But I would ask Your Honor to
24    consider a variance to put him back into position he would be
25    had we just all conceded your earlier ruling that he should
```

1    be kept at 500 grams.  I mean, he's not a lawyer.  He depends

2    on us to explain these things to him.  And at that point, I

3    really believe that he felt trapped, that he had no choice

4    but to fight it every step of the way.  And if that might

5    getting up on the stand and testifying, that he didn't

6    understand.  But I believe that I would have convinced him to

7    withdraw that.  I believe if we would have resolved it to 500

8    grams, that I would have convinced him that it's not in his

9    best interest to argue over the plea and to just accept it.

10             But not only that, Judge, I would ask you to

11    consider a variance because he's a dedicated family man.

12    He's got five children.  And you've got -- I think there's

13    been several letters from the community talking about

14    Mr. Lloyd that had been submitted.  But he has five children.

15    He has a three-year-old daughter and a 21-year-old son who

16    lives in the home with him.

17             Whatever sentence Your Honor imposes, I would ask

18    you to consider allowing him to self-report primarily because

19    his son has a very serious condition.  He was injured.  He

20    has had a spinal cord injury.  And I've got a letter from the

21    Shepherd Center that says he's going to be in Atlanta for

22    approximately four to eight weeks doing spinal cord

23    rehabilitation so he can learn to walk again.  This is a

24    letter from Julie Shepherd.  And I have not submitted it yet

25    because I need to send it to the Court.  But I have it.  I

1    can share it with the Government.  But I would ask Your Honor

2    to consider whatever sentence you do impose to allow him to

3    delay that report so that he can take care of his son.

4         I mentioned his work.  He's been at Target for 20

5    months.  He's actually -- he trains people in the Target

6    organization.  And somewhat this criminal case has held him

7    back a good bit because he would be up for upward promotion,

8    but because of the pending case, it's not available.  But

9    he's got his degree in healthcare administration.

10        I would ask Your Honor to consider a sentence in the

11   33- to 41-month range.  Thank you, Your Honor.

12        THE COURT:  All right.  Before I hear from the

13   defendant, I need to put on the record.  I did neglect to say

14   this.  In announcing the statutory and guideline provisions,

15   I have adopted the presentence report as written with the

16   modifications announced earlier, that is to say, limiting the

17   drug weight to less than 500 grams of cocaine.

18        With that change being made, all of the other

19   provisions are adopted as the Court's findings for the

20   purposes of guideline sentencing.  And I previously announced

21   the statutory and guideline provisions.

22        Mr. Lloyd, you have a right under our rules of

23   procedure to make any statement you wish before the Court

24   decides upon a sentences.  This is your chance to speak up.

25   I will be glad to hear anything you want to say.

43

1            THE DEFENDANT:  Yeah.  I just want to say I want to

2    apologize to my family for taking them to this type of

3    situation again.  I want to apologize to the Court for, you

4    know, actually being here, having y'all to go through this as

5    well.  But at the same time, you know, I take full

6    responsibility for what I did do.  And, like, it will never

7    happen again.  I just, you know, ask the Court just to allow

8    me some time to spend before being incarcerated to spend with

9    my son that's been seriously injured.

10            THE COURT:  All right.  Thank you, sir.  Anything in

11   reply?

12            MS. HINTON:  Your Honor, just may I put his son's

13   injuries into context, if that's something Your Honor is

14   going to consider?

15            THE COURT:  All right.

16            MS. HINTON:  Your Honor, it's my understanding that

17   that is -- that a family member of Mr. Lloyd's was shot

18   trying to sell a gun, that they were holding some sort of

19   memorial, and there was essentially a drive-by shooting.  And

20   Mr. Lloyd's son was shot as part of that drive-by shooting.

21   It is my understanding in just consulting with the Richland

22   County Sheriff's Department, and this has been my

23   understanding since the shooting as --

24            THE COURT:  It occurred here in Richland County?

25            MS. HINTON:  That's my understanding yes, Your

44

1    Honor.  And I was made aware of it when it happened.  None of

2    the family has been cooperative in that situation.  So while

3    I'm certainly sensitive to the fact that his son was

4    significantly injured, I am not denying that, I certainly

5    think Your Honor needs some context as to that situation.

6           THE COURT:  So the family is not cooperating with

7    the sheriff in terms of investigating the drive-by shooting?

8           MS. HINTON:  That is my understanding in speaking

9    with the sheriff's department, yes, sir.

10          MR. HISKER:  Judge, I just ask you -- I object to

11    that.  I would ask you not to consider that.  That is

12    something that is -- that is something that is very difficult

13    to define whether the family is cooperating.  I mean, I think

14    the only thing that the Court should really consider at this

15    point that's uncontroverted is Mr. Lloyd's son wasn't

16    shooting anybody, that he was a victim of a violent crime.

17    Whether their family is cooperating or anything, we don't

18    know what family are they referring to?  Are they saying

19    Mr. Lloyd was there?  It's not fair for this Court to

20    consider what the family -- and I'm using air quotes --

21          THE COURT:  Was the defendant there during the

22    shooting?

23          MR. HISKER:  Judge --

24          THE DEFENDANT:  May I speak?

25          MR. HISKER:  No.  I just don't think that's a fair

45

1   consideration.  His son was injured.  He was a victim and his

2   spinal cord has been injured.

3        THE COURT:  Five or six weeks at least, you say?

4        MR. HISKER:  According to this letter from the

5   Shepherd Center, he will remain in Atlanta for inpatient and

6   possibly comprehensive outpatient therapy for four to eight

7   weeks.

8        MS. HINTON:  And, Your Honor, I am not asking you to

9   punish Mr. Lloyd for not cooperating with the police, what I

10  am asking you to consider is that the full circumstances of

11  that, in deciding whether or not Mr. Lloyd should

12  self-report, because Mr. Lloyd has been out longer than

13  anybody else, I mean, if anyone has had an opportunity to get

14  his affairs in order, it's Mr. Lloyd.  And while I certainly

15  understand this is a unique circumstance that developed

16  outside of Mr. Lloyd's control, I do think Your Honor needs

17  the full context of what happened.

18       THE COURT:  Was Mr. Lloyd present at either one of

19  the two shootings?  Do we know?

20       MS. HINTON:  It is my understanding that he was

21  present when his son was shot.  That is my understanding.

22       THE COURT:  But that was at a memorial service for

23  the first person that was shot, right?

24       MS. HINTON:  This was -- yes.  I think his nephew or

25  somebody like that was murdered.  And they were having a

1　gathering outside of someone's house as a kind of memorial to

2　that person who is now deceased.

3　　　　THE COURT:  And that's where we had a drive-by

4　shooting of another family?

5　　　　MS. HINTON:  That's correct, by, it's my

6　understanding, by the group that shot the original family

7　member.

8　　　　MR. HISKER:  Judge, I don't know how this can be

9　related to Mr. Lloyd.  I don't know whether -- you know, he's

10　on electronic monitor.  I would assume if you were to allow

11　him to delay his report, he would remain on electronic

12　monitor.  I would just ask you to consider to allow him to

13　continue that so that he can see that his son is treated.  I

14　don't think there's any allegation that he's out, you know,

15　running around doing things he's not supposed to do.

16　　　　MS. HINTON:  I mean, Your Honor, if he's at the

17　Shepherd Center, he is being treated.  I am familiar with the

18　Shepherd Center, as I have a family member who went there.

19　It is an intensive treatment for spinal cord injuries.  I

20　don't know how much Mr. Lloyd can contribute to that.  Are we

21　going to be back in front of Your Honor when he gets released

22　to his home and then Mr. Lloyd has to tend to him there?  I

23　don't know where this ends.

24　　　　THE COURT:  Let's get the sentence out of the way

25　first.  Having calculated and considered the advisory

47

1    sentencing guidelines --

2            THE COURT DEPUTY:  Did you rule on the variance?

3            THE COURT:  I'm going to say that in just a minute.

4            Having calculated and considered the advisory

5    sentencing guidelines, and having also considered the

6    relevant statutory sentence factors of Section 3553(a) of

7    Title 18, it is the judgment of the Court that the defendant,

8    Tommy Novak Lloyd, is hereby committed to the custody of the

9    Bureau of Prisons to be imprisoned for a term of 70 months,

10   which is within the guideline range, near the top end.

11           I find the defendant does not have the ability to

12   pay a fine; therefore, the fine is waived.  He shall,

13   however, pay the mandatory special assessment of $100 due and

14   payable immediately.  Upon his release from imprisonment, the

15   defendant shall be placed on supervised release for a term of

16   three years.  Within 72 hours of his release, he shall report

17   to the probation office in the district to which he is

18   released.

19           While on supervised release, the defendant shall

20   comply with the mandatory and standard conditions of

21   supervision that are set out in Title 18, Section 3583(d) and

22   Guideline 5D1.3(c).

23           My reasons for imposing these standard and mandatory

24   conditions are set out on a green sheet of paper we placed on

25   counsel table.  The Fourth Circuit has indicated we can

1   incorporate by reference a writing outlining the reasons for

2   these conditions.

3         Mr. Hisker, can you confirm on the record those have

4   been made available to you and your client?

5         MR. HISKER:  Yes, Your Honor, I have the green

6   sheets on the table, and I have discussed to him what they

7   refer to.

8         THE COURT:  Very good.  Additionally, the defendant

9   shall comply with the following special conditions.  He must

10   submit to substance abuse testing to determine if he's used a

11   prohibitive substance.  If able, he must contribute to the

12   cost of the program according to the probation officer's

13   sliding scale for services.  He must also cooperate in

14   securing payment from any applicable third-party, such as

15   insurance or Medicaid.  The reason for this special condition

16   is to promote sobriety and serve the statutory purposes of

17   public protection, deterrence, and rehabilitation.

18         Now, Mr. Lloyd, you signed a plea agreement

19   containing a waiver of your appeal rights in this case.  Only

20   in very narrow circumstances may a defendant who has waived

21   his appeal in this fashion, nevertheless, attempt to pursue

22   an appeal.  You should discuss carefully with Mr. Hisker

23   whether you have any grounds for appeal and whether an appeal

24   would be in your best interest or not.

25         If you wish to appeal, you would have to file your

49

1    sentence within 14 days from the date the judgment order

2    containing your sentence is filed with the clerk.  If you

3    wish to appeal and cannot afford an attorney, the Court would

4    appoint one for you.

5         My reasons for imposing this sentence are as

6    follows.  I have respectfully declined to issue a variance in

7    this case as requested by the defense counsel.  The arguments

8    advanced on behalf of a variance include, first, the amount

9    of drugs the defendant is held accountable for.  I have sided

10   with the defendant on the limitation that I misspoke when I

11   accepted the plea, which worked to great advantage of the

12   defendant.  So that fact has already been baked into the

13   cake, so to speak, and has worked to a great benefit of the

14   defendant.

15        It's argued that the fact that the defendant is a

16   good family man with five children.  I'm fully aware of that

17   argument.  The guidelines say ordinarily family

18   responsibilities and family ties should not result in a

19   sentence outside the guidelines absent very extraordinary

20   circumstances.  And I do not find any extraordinary

21   circumstances here.

22        It's also argued that the many character letters

23   that have been furnished suffice to support a variance.  I

24   have reviewed those character letters.  I take them at their

25   face value.  I accept them as true as stated.  But having

1    read each and every one of those, I do not find anything in

2    those statements from character witnesses that takes this

3    case outside of the heartland of the guidelines.

4         Also, in the written motion for variance, the

5    argument is advanced that the defendant was arrested while --

6    I'm sorry, when the defendant was arrested the criminal

7    conspiracy was well underway and the defendant was never

8    caught in the physical act of distributing narcotics.

9    Instead, he was arrested at his home after he and his wife

10   returned -- after he and another gentleman returned from

11   vacation.

12        I'm aware of that argument, but I do not find it in

13   any way supports a variance.  The fact that he was arrested

14   while the conspiracy was well underway, someone can join a

15   conspiracy at the beginning or at the middle or at the end,

16   but it's still a member of the conspiracy.  And I don't think

17   the fact that he joined it at some point in the middle takes

18   this case out of the heartland of the guidelines.

19        It's also argued that the defendant was given a

20   courtesy summons for his arraignment and was released on bond

21   and has complied with the conditions of his bond.  Once

22   again, that's commendable, but I do not find anything in

23   those facts alone to warrant a sentence outside the

24   guidelines in this case.

25        And then in the written motion, there's a second

51

1    reference to the character affidavits, which I've already

2    addressed.

3        Additionally, my reason for imposing this sentence

4    are as follows.  Regarding the nature and circumstances of

5    the offense, Mr. Lloyd pled guilty to the lesser-included

6    offense of Count 1 of the superseding indictment, which

7    charged conspiracy to possess with intent to distribute less

8    than 500 grams of a mixture or substance containing a

9    detectable amount of cocaine.

10       In an ordinary case, we would not be limited to the

11   less than 500 grams language in the superseding indictment.

12   Because of the way I phrased it at the plea hearing, I

13   decided to hold the Government to less than 500 grams, which

14   allowed the defendant to shave several points off of his base

15   offense level.

16       The investigation showed that the defendant was

17   involved in a conspiracy with Anthony Britt and others to

18   distribute quantities of cocaine in the midlands area South

19   Carolina.  Evidence showed Mr. Lloyd was a subdistributor for

20   Mr. Britt.  As Ms. Hinton indicated, I find him to be

21   somewhere in the middle of the conspiracy pyramid, not at the

22   top, not at the bottom.

23       When the search was conducted of his residence, he

24   was found in possession of two firearms, a quantity of

25   marijuana, and proceeds derived from drug trafficking

1    activities.  He was not held accountable for the firearm that

2    was found based on the Government's concession regarding that

3    episode.

4         Evidence obtained from intercepted phone calls

5    revealed that Mr. Lloyd was involved in discussing and

6    coordinating at least four transactions with Mr. Britt, each

7    for 18 ounces of cocaine.  I'm only holding him accountable

8    for one of those conversations, 18 ounces, which takes us

9    right up close to the 500 grams of cocaine.

10        So I'm only -- even though the evidence -- the

11   probation officer suggested the evidence would support four

12   calls, four times 18.  I'm only looking at one call for 18.

13        Regarding his criminal history, Mr. Lloyd has two

14   felony convictions for trafficking cocaine.  And in addition,

15   he has a variety of other offenses on his record, including

16   one for simple possession, failure to stop for police

17   command, petty larceny, simple possession of marijuana,

18   malicious injury to personal property, and then the

19   trafficking charges I mentioned earlier.

20        Mr. Lloyd has six children who depend on him for

21   some type of support.  He has some medical problems which are

22   outlined in the presentence report that I'm aware of, which

23   do not need to be put on the record in this case.  He's

24   currently employed at the Target distribution center.  So I'm

25   fully aware of his biographical situation and his family

1    situation and his medical situation.

2           I've also considered as required the need for the

3    sentence imposed in this case to promote respect for the law,

4    to reflect the seriousness of the offense, to provide just

5    punishment and adequate deterrence to the defendant and

6    others, and also to protect the public from future crimes of

7    the defendant.

8           I've also carefully monitored the sentences imposed

9    in this same case with co-defendants and in like cases around

10   the district and elsewhere to avoid unwarranted disparities

11   in sentencings.  Those are all my reasons.

12          Let's talk about voluntary surrender.  I'm sorry.

13   Also, the defendant shall forfeit to the Government the

14   property described in the preliminary order of forfeiture

15   which was filed on November the 3rd, 2021.  And that order is

16   incorporated as part of the judgment in this case.

17          Thank you, Ms. Floyd.

18          I denied the request for a variance for the reasons

19   I said.

20          MS. HINTON:  Your Honor, before you move to

21   self-surrender, may -- I believe the Court's addressed all

22   the defendant's arguments in favor of a different sentence

23   and sufficiently explained the reason for the sentence as

24   well as the terms of supervision that the Court is imposing,

25   but I would appreciate if defense counsel would confirm that

1  for the record, that they also agree with that.

2          THE COURT:  Mr. Hisker, can you confirm that I've

3  stated my reasons, I've addressed all your variance requests?

4          MR. HISKER:  Yes, Your Honor.  I think there may be

5  one mistake on this criminal history.  I think you mentioned

6  he had two felony convictions.  There's only one on the PSR.

7          Now, there were two counts.  And that may be what

8  the Court is referring to.  I've got one three-point

9  conviction for trafficking.  It's paragraph 45.  I mean,

10 unless you are talking about the instant offense.

11         THE COURT:  No, I'm not talking about the instant

12 offense.  You are right.  There's only one conviction that

13 occurred on February the 13th of '08, trafficking in cocaine,

14 28 grams or more, but less than 100.

15         And then there's a second count for trafficking ice,

16 crank, crack, and apparently, those were disposed of at the

17 same time and he was given a seven-year sentence.

18         Can probation -- was that one case or was that two

19 cases?

20         PROBATION OFFICER:  Your Honor, it's two cases.  He

21 was sentenced to them at the same time.  For the first count

22 he was sentenced for seven years.  For the second count he

23 was sentenced to five years.  And they ran together.  So

24 while he only served one period of time in incarceration, it

25 does count as two felony convictions.

1          THE COURT:  All right.  So that's on the record.

2          All right.  Let's talk about surrender.  He's on

3     electronic monitoring with an ankle bracelet now?

4          PROBATION OFFICER:  Yes, Your Honor.

5          THE COURT:  Has he complied with all the conditions

6     as far as you know?

7          PROBATION OFFICER:  Yes, Your Honor, he's in

8     compliance.

9          THE COURT:  Mr. Hisker, I'm very sympathetic -- if

10    my son had a spine injury, I would be very concerned.  But

11    I'm just concerned.  What can he do to help?  Because like

12    Ms. Hinton said, if we postponed this for two months, he will

13    be back home.  But then I will be met with the argument that

14    the defendant needs to stay home to help his son in person.

15    I just -- I know it sounds cruel, but help me with that a

16    little bit.

17         MR. HISKER:  Judge, just because it's relatively

18    new, I mean, it's in the tender stages of the care, and I'm

19    sure he's deeply worried about his son.  He knows he's not

20    going to be able to put this off forever.  But in the early

21    stages, I mean, he was just -- I think this incident occurred

22    April 14th.  So it hasn't been that long ago.  I would just

23    ask Your Honor to allow him to self-surrender.  I imagine he

24    will be designated in a month or so.

25         THE COURT:  Let me ask you this.  If I ask the BOP

1  to expedite this designation, does that usually work or not?

2  I mean, what's the normal time for designation, six weeks?

3          PROBATION OFFICER:  Your Honor, I'm not sure.  I

4  know it's a case-by-case situation depending on, like, some

5  of the health issues that he mentioned in the presentence

6  report.  I'm not sure, Your Honor.

7          THE COURT:  Is he still working at the Target

8  distribution center?

9          MR. HISKER:  Yes, sir.

10          THE COURT:  And that is where?

11          THE DEFENDANT:  Lugoff.

12          THE COURT:  Does he live in Lugoff?

13          THE DEFENDANT:  No, I stay in Richland County.

14          THE COURT:  Ms. Hinton, anything further?

15          MS. HINTON:  No, Your Honor.  We would just object.

16  Like I said, he's had plenty of time to get his affairs in

17  order.  And, certainly, his life is significantly changed now

18  that he has been sentenced and knows what he's facing, which

19  is not insignificant time.  So, therefore, we think that

20  might change, you know, his willingness to report next time.

21          THE COURT:  With the ankle bracelet, if he did want

22  to do something bad, would you know it right away?  It could

23  always be cut off, I guess.

24          PROBATION OFFICER:  Yes, sir.  If he was to cut his

25  ankle monitor off, we would be notified immediately.  And

1  also, we can track where he's going, like --

2          THE COURT:  But you can't do it once the ankle

3  bracelet is cut off?

4          PROBATION OFFICER:  That is correct, Your Honor, if

5  he were to cut it off, we wouldn't be able to find him

6  immediately.

7          MR. HISKER:  And he would know that that would make

8  things significantly worse than that 70-month sentence.

9          THE COURT:  All right.  Mr. Lloyd, stand up, please,

10  sir.  I'm going to go out on a limb and let you stay out in

11  light of your son's condition.  But I want you to hear me

12  very clearly.  If you try to run, I promise you, I promise

13  you, you will be apprehended.  It might take two weeks.  It

14  might take two months.  But, eventually, the marshal catches

15  all fugitives in this day and time.  And so I just want to

16  emphasize to you, I'm giving you a big break because of your

17  son's condition.  I have a son myself.  I'm trying to

18  sympathize with you.  And I will let you stay out until your

19  institution is designated by the BOP.

20          And when you get that designation, you have to show

21  up there at your own expense on time.  If you don't show up,

22  you will be charged with another crime.  And all of the

23  conditions of the bond imposed by the magistrate remain in

24  place in terms of staying in contact with probation, not

25  using drugs, not associating with known felons, not leaving

58

1    the district without notifying -- requesting permission to

2    leave the district and so forth.  Do you understand?

3              THE DEFENDANT:  Yes, sir.

4              MR. HISKER:  Thank you, Judge.

5              THE COURT:  Let me just say, whenever the reporting

6    date is announced, I do not intend to extend it further.

7    Just serving fair notice.  Mr. Lloyd, please don't let me

8    down.  If you skip out on us, you will be back right here in

9    this same courtroom looking at the same judge on a new

10   federal felony charge.  Are we clear on that?

11             THE DEFENDANT:  Your Honor, I don't plan on doing

12   anything other than what you ask of me.

13             THE COURT:  All right.

14             MS. HINTON:  Your Honor, the Government would also

15   move to dismiss the remaining counts as to Mr. Lloyd.

16             THE COURT:  So ordered.  Thank you very much.  Nice

17   to see all of you.  We will be in recess.

18             (Whereupon, the proceedings are adjourned.)

19

20

21

22

23

24

25

59

1                    CERTIFICATE OF REPORTER

2

3          I, Karen V. Andersen, Registered Merit Reporter,

4    Certified Realtime Reporter for the State of South Carolina

5    at Large, do hereby certify that the foregoing transcript is

6    a true, accurate and complete Transcript of Record of the

7    proceedings.

8          I further certify that I am neither related to nor

9    counsel for any party to the cause pending or interested in

10   the events thereof.

11

12

13

14

15   Karen V. Andersen
     Registered Merit Reporter
16   Certified Realtime Reporter

17

18

19

20

21

22

23

24

25

AO 245B (SCDC Rev. 10/20) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

District of South Carolina

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|---|
| v. | ) | |
| | ) | Case Number: CR 3:20-453-012-JFA |
| TOMMY NOVACK LLOYD a/k/a "T-Lloyd" | ) | USM Number: 02994-509 |
| | ) | Steven Hisker (Retained) |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

X  pleaded guilty to count(s)  1 (lesser included offense) of the superseding indictment on 6/7/21

☐  pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐  was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| **Title & Section** | **Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|---|
| 21:846 | Conspiracy to Distribute Cocaine | 12/15/20 | 1 |

The defendant is sentenced as provided in pages 2 through    6    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐  The defendant has been found not guilty on count(s) _____

X  Count(s)  Original indictment, 33,39 of the superseding indictment    ☐ is    X  are dismissed on the motion of the United States.

Forfeiture provision is hereby dismissed on motion of the United States Attorney.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

May 4, 2022
Date of Imposition of Judgment

Signature of Judge

Joseph F. Anderson, Jr., United States District Judge
Name and Title of Judge

May 6, 2022
Date

0287

AO 245B (SCDC Rev. 10/20) Judgment in Criminal Case
Sheet 2 — Imprisonment

| | Judgment — Page | 2 | of | 6 |

DEFENDANT:     TOMMY NOVACK LLOYD a/k/a "T-Lloyd"
CASE NUMBER:   CR 3:20-453-012-JFA

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Seventy (70) months

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

   ☐ as notified by the United States Marshal.

X The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before 2 p.m. on _____ .

   X as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

0288

AO 245B (SCDC Rev. 10/20) Judgment in a Criminal Case
        Sheet 3 — Supervised Release

Judgment—Page   3   of   6  

DEFENDANT:      TOMMY NOVACK LLOYD a/k/a "T-Lloyd"
CASE NUMBER:    CR 3:20-453-012-JFA

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:
Three (3) years

The defendant must comply with the standard conditions that have been adopted by this court as well as with any other conditions listed below.

1. The defendant must submit to substance abuse testing to determine if you have used a prohibited substance. You must contribute to the cost of such program not to exceed the amount determined reasonable by the Court approved U.S. Probation Office's "Sliding Scale for Services," and you will cooperate in securing any applicable third-party payment, such as insurance or Medicaid.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

         ☐ The above drug testing condition is suspended, based on the court's determination that you
           pose a low risk of future substance abuse. (check if applicable)

4.  ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

AO 245B (SCDC Rev. 10/20) Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page 4 of 6

DEFENDANT:        TOMMY NOVACK LLOYD a/k/a "T-Lloyd"
CASE NUMBER:      CR 3:20-453-012-JFA

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines, based on your criminal record, personal history or characteristics, that you pose a risk to another person (including an organization), the probation officer, with the prior approval of the Court, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

0290

AO 245B (SCDC Rev. 10/20)  Judgment in a Criminal Case
           Sheet 5 — Criminal Monetary Penalties

Judgment — Page   5   of    6  

DEFENDANT:      TOMMY NOVACK LLOYD a/k/a "T-Lloyd"
CASE NUMBER:    CR 3:20-453-012-JFA

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ | $ | $ |

☐   The determination of restitution is deferred until_____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $_____ | $_____ | |

☐   Restitution amount ordered pursuant to plea agreement
     $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

     ☐   the interest requirement is waived for   ☐   fine   ☐   restitution.

     ☐   the interest requirement for   ☐   fine   ☐   restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

0291

AO 245B (SCDC Rev. 10/20) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page   6   of   6

DEFENDANT:       TOMMY NOVACK LLOYD a/k/a "T-Lloyd"
CASE NUMBER:     CR 3:20-453-012-JFA

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**   X   Lump sum payment of $  100.00        due immediately, balance due

☐   not later than                        , or
☐   in accordance with ☐   C    ☐   D,   ☐   E, or    ☐ F below; or

**B**   ☐   Payment to begin immediately (may be combined with    ☐C,        ☐D, or    ☐ F below); or

**C**   ☐   Payment in equal            (e.g., weekly, monthly, quarterly) installments of $              over a period of
            (e.g., months or years), to commence          (e.g., 30 or 60 days) after the date of this judgment; or

**D**   ☐   Payment in equal            (e.g., weekly, monthly, quarterly) installments of $              over a period of
            (e.g., months or years), to commence          (e.g., 30 or 60 days) after release from imprisonment to a
term of supervision; or

**E**   ☐   Payment during the term of supervised release will commence within          (e.g., 30 or 60 days) after release from
imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

Case Number
Defendant and Co-Defendant Names
*(including defendant number)*                     Total Amount

Joint and Several
Amount

Corresponding Payee,
if appropriate

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

X   The defendant shall forfeit the defendant's interest in the following property to the United States:
As directed in the Preliminary Order of Forfeiture, filed 11/3/21 and the said order is incorporated herein as part of this judgment.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

|  |  |
|---|---|
| ) | Criminal No. 3:20-cr-00453 |
| ) | |
| United States of America, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| ) | |
| Tommy Novack Lloyd ) | |
| _____ ) | |

Notice is hereby given that Tommy Novak Lloyd in the above-captioned case, hereby appeal to the United States Court of Appeals for the Fourth Circuit from the Order/Judgment entered in this action on the 6th day of May 2022.

/s/ Elizabeth Franklin-Best
Elizabeth Franklin-Best, P.C.
Fed ID #9969
2725 Devine Street
Columbia, South Carolina 29205
(803) 445-1333
elizabeth@franklinbestlaw.com

May 16, 2022.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Case No. 3:20-cr-00453 |
| Vs. | ) | |
| | ) | |
| Tommy Novack Lloyd, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MOTION FOR RELEASE PENDING APPEAL**

To:     The Honorable Joseph F.  Anderson, Jr.
        *Senior U.S. District Judge*

The Defendant-Appellant, Tommy Lloyd, respectfully asks this Court to grant him release pending the outcome of his direct appeal which is currently docketed in the Fourth Circuit Court of Appeals. Case No. 22-4297.  Mr. Lloyd currently has a surrender date of June 27, 2022 to FCI Edgefield. He asks this Court to allow him to remain on bond while his appeal in the Fourth Circuit is pending. Counsel anticipates that the main claim raised in the appeal will be the Court's decision not to allow Mr. Lloyd to withdraw his guilty plea even though, as he informed the Court, he believes he was misled by counsel and was never fully apprised of the case against him. Specifically, as Mr. Lloyd informed this Court during his hearing to withdraw his guilty plea, he believes his attorney provided him with erroneous advice when he was informed that a marijuana offense would be treated the same (or worse) in terms of potential sentencing as a cocaine offense. Mr. Lloyd maintains that he did not understand the implications of pleading guilty to a cocaine offense until after he entered his guilty plea and as the parties were preparing for the sentencing hearing. This erroneous advice, as subsequent counsel, Steve Hisker, informed the Court, is

1

captured on recordings Mr. Lloyd made of his communications with prior counsel.[1] The record also contains multiple other instances in which initial counsel's performance fell below professional standards. Mr. Lloyd continues to maintain his innocence with regards to a conspiracy to distribute cocaine and requests a jury trial.

## I.    Relevant Background Information

Mr. Lloyd was indicted for conspiracy to possess with intent to distribute and distribution of controlled substances in the amount of 500 grams or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(B) and maintaining a stash house in violation of 21 U.S.C.§856(a)(1). On May 27, 2021, while represented by his former attorney, Lloyd entered into a plea agreement which allowed him to plead to a lesser-included offense. Specifically, paragraph 3 of the agreement, allowed Lloyd to plead to conspiracy to possess with the intent to distribute and to distribute less than 500 grams of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §841(a)(1), 841(b)(1)(C) and 846.

Mr. Lloyd was released on a secured $50,000 bond pending the resolution of his criminal charges on July 9, 2020. An order setting the conditions of release was signed by the Honorable Magistrate Judge Paige J. Gossett on that date. He has spent this entire time on bond and has not had any violations. He is now scheduled to surrender at FCI Edgefield on June 27, 2022. Upon filing of that plea agreement, the Court scheduled Lloyd's plea date for June 7, 2021. On that date, Lloyd entered the guilty plea. Lloyd remained on bond. A sentencing hearing was scheduled for November 5, 2021. At that point, Lloyd expressed dissatisfaction with his lawyer and requested a

---

[1] As later discussed, the Court decided not to make these recordings a part of the record at this point.

continuance. This Court allowed him 14 days to discuss the case with counsel and to file any motions.   The Court, on November 30, 2021 then scheduled a sentencing date of December 8, 2021. Mr. Lloyd filed a motion for hearing on status of counsel on December 1, 2021.  That hearing was then scheduled for December 8, 2021. On that date, this Court granted Mr. Lloyd's motion to relieve his counsel and gave him 30 days to obtain new counsel and further provided that new counsel would have 21 days after making an appearance to file a motion to withdraw his guilty plea.   Again, Mr. Lloyd remained on bond.  On December 6, 2022, Steve Hisker entered his appearance as Mr. Lloyd's counsel.  New counsel then filed a motion to withdraw the guilty plea on February 19. 2022.   The Court heard argument on March 15, 2022 on the motion and took the matter under advisement.  The Court also modified Mr. Lloyd's conditions of bond and required him to be placed on location monitoring with a curfew.  On April 6, 2022, the Court denied the motion to withdraw the guilty plea. The Court then scheduled a sentencing date for April 25, 2022. This date was continued until May 4, 2022.  On that date, the Court held Mr. Lloyd's sentencing and on May 6, 2022 the judgment issued sentencing Lloyd to 70 months incarceration in the Bureau of Prisons.  The notice of appeal was filed on May 16, 2022 by undersigned counsel who now represents Mr. Lloyd in connection with his appeal to the Fourth Circuit Court of Appeals.

II.     **Applicable Law**

18 U.S.C. §3143(b), Release or Detention Pending Appeal by the Defendant, provides, in pertinent part, that (1)…the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

(A) By clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any person or the community if released; and

3

(B) That the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

    (i)      Reversal,

    (ii)     An order for a new trial;

    (iii)    A sentence that does not include a term of imprisonment, or

    (iv)    A reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

*Id.*

If the judicial officer makes that finding, then the judicial officer shall order the release of the person in accordance with §3142(b) or (c) of 18 U.S.C. §3142.

§3142(c) Release on Conditions, provides, in pertinent part,

(1) If the judicial officer determines that [release on personal recognizance] will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person—

(A) Subject to the condition that the person not commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person…

(B) Subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person…

    (i)      Remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community;

    (ii)     Maintain employment, or, if unemployed, actively seek employment;

    (iii)    Maintain or commence an educational program;

    (iv)    Abide by specified restrictions on personal associations, place of abode, or travel;

(v)     Avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

(vi)    Report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

(vii)   Comply with a specified curfew;

(viii)  Refrain from possessing a firearm, destructive device, or other dangerous weapon;

(ix)    Refrain from the excessive use of alcohol, or any use of a narcotic drug…

(x)     Undergo available medical, psychological, or psychiatric treatment, including treatment for drug or alcohol dependency…

(xi)    Execute an agreement to forfeit upon failing to appear as required, property of a sufficient unencumbered value…

(xii)   Execute a bail bond with solvent sureties; who will execute an agreement to forfeit in such amount as is reasonably necessary to assure appearance…

(xiii)  Return to custody for specified hours following release for employment, schooling, or other limited purposes; and

(xiv)   Satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community.

## III.    This Court Should Grant Lloyd an Appellate Bond

Respectfully, this Court should allow Mr. Lloyd to remain on bond while he is appealing his case to the Fourth Circuit Court of Appeals. Earlier, pending resolution of these charges, Mr. Lloyd was allowed to remain on bond and he did so without any problems at all. Indeed, this Court allowed him bond even after he had pleaded guilty and while awaiting his sentencing hearing. Clear and convincing evidence supports a finding

that Mr. Lloyd will continue to submit to the jurisdiction of the court system and will abide

by whatever conditions this Court may impose while his case is reviewed by the Fourth

Circuit Court of Appeals. As the statute provides, there is a large arsenal of possible terms

and conditions this Court can require which would satisfy itself that Mr. Lloyd will

continue to cooperate with these proceedings.

Additionally, Mr. Lloyd has shown that he has a potentially meritorious claim in

the court of appeals which militates against a finding that the purpose of the appeal is for

delay.   It is clear from the record in this case that Mr. Lloyd expressed significant

dissatisfaction with his prior lawyer and he has raised a colorable claim of ineffective

assistance of counsel.   During the hearing on Mr. Lloyd's motion to withdraw his guilty

plea, he indicated to the Court he believed he received erroneous advice as to the severity

of the offense to which he pleaded. He believed a plea to cocaine would be less serious

than a plea to marijuana.   Counsel Hisker brought to this Court's attention during the plea

withdrawal hearing that there are audio tapes of prior counsel making statements to this

effect.[2]  Mr. Lloyd also indicated he had not reviewed his discovery and that he believed

---

[2]      MR. HISKER:   Yes, Your Honor.  There is a complete discussion about Mr. Lloyd asking
about, you know, him only being involved in marijuana, and he doesn't know why he's getting
held accountable for cocaine. And the lawyers are essentially telling him it doesn't matter,
marijuana is actually Schedule I, which is worse than Schedule II, and this Court still considers
marijuana to be a very dangerous drug. And I can tell you it does give the impression that marijuana
is –
      THE COURT: So you claim to have documented evidence of bad legal advice on relative
punishment for drugs, different types of drugs?

      MR. HISKER: Yes, Your Honor.  But to be fair, it's also after the fact. It's after the fact of
his guilty plea.
Tr. 40-41.

      The Court ultimately did not allow them into the record at this point but instructed Hisker
to preserve them for a subsequent 2255 proceeding.  Tr. 62.

the continuance motions he signed were being requested by the government.  He never reviewed the wiretap calls that were provided by the government. He and his prior counsel never discussed defenses. They never discussed attempting to suppress the fruits of a search warrant that was executed 7 months after alleged drug activity occurred on the wiretaps. Tr. 49. Prior to the plea, Mr. Lloyd told his lawyer he felt he was being pressured to plead guilty.

At the hearing, Mr. Lloyd maintained he never received any cocaine from Anthony Britt, who the government alleges provided him with cocaine.

Undersigned counsel will work to more fully develop that claim in the court of appeals once she receives the sentencing transcript in this case. But for purposes of assessing whether to grant Mr. Lloyd a bond at this juncture, the Court should consider that Mr. Lloyd has consistently attempted to vindicate his rights to a jury trial—first by moving to have prior counsel relieved, seeking to withdraw his guilty plea, and now pursuing the Court's denial of that motion by way of an appeal to the Fourth Circuit. Even at the plea withdrawal hearing, the government conceded it did not believe Mr. Lloyd was a flight risk.  Tr. 63.

Additionally, Mr. Lloyd remains productively employed as evidenced by the payment stubs that are being submitted with this motion.  His family owns their own home here in Columbia and informs the Court that Mr. Lloyd can live with them if this Court so orders.  In short, Mr. Lloyd has performed very well on probation and respectfully asks this Court to allow him to remain on probation while he challenges this conviction and sentence.  Mr. Lloyd meets the requirements of eligibility for release under the statute and respectfully asks this Court to allow him to remain on bond.

Respectfully submitted,

/s/ Elizabeth Franklin-Best
Elizabeth Franklin-Best, P.C.
Fed ID #9969
3710 Landmark Drive, Suite 113
Columbia, South Carolina 29204
(803) 445-1333
elizabeth@franklinbestlaw.com

June 13, 2022.

8

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| United States of America, | CR No. 3:20-453-JFA |
| v. | **ORDER** |
| Tommy Novack Lloyd. | |

This matter is currently before the Court on Defendant Tommy Novack Lloyd's

Motion for Release Pending Appeal. (ECF No. 1242). Within his motion, Defendant

requests that this Court allow him to remain on bond pending his appeal, and thus not report

to FCI Edgefield on June 27, 2022, as currently scheduled.[1]

Pursuant to 18 U.S.C. §3143(b):

> [T]he judicial officer shall order that a person who has been found guilty of
> an offense and sentenced to a term of imprisonment, and who has filed an
> appeal or a petition for a writ of certiorari, be detained, unless the judicial
> officer finds—
>
> > **(A)** by clear and convincing evidence that the person is not likely to
> > flee or pose a danger to the safety of any other person or the
> > community if released under section 3142(b) or (c) of this
> > title; and
>
> > **(B)** that the appeal is not for the purpose of delay and raises a
> > substantial question of law or fact likely to result in—
>
> > **(i)** reversal,
> > **(ii)** an order for a new trial,
> > **(iii)** a sentence that does not include a term of imprisonment, or

---

[1] Defendant was sentenced to 70 months incarceration on May 6, 2022 and filed an appeal on May
16, 2022. (ECF Nos. 1228 & 1231).

1

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Thus, although rebuttable by clear and convincing evidence, the "law has established a presumption in favor of detaining convicted defendants." *United States v. Langford*, 687 F. App'x 265 (4th Cir. 2017). "In applying § 3143(b)(2) the court must make two inquiries after finding that the appeal is not taken for the purpose of delay." *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991). "First, whether the question presented on appeal is a 'substantial' one." *Id.* "Second, if decided in favor of the accused, whether the substantial question is important enough to warrant reversal or a new trial on all counts for which the district court imprisoned the defendant." *Id.*

If the judicial officer makes that finding, then the judicial officer shall order the release of the person in accordance with §3142(b) or (c) of 18 U.S.C. §3142.

In support of his motion, Defendant argues that he has "a potentially meritorious claim in the court of appeals" and "continues to maintain his innocence with regards to a conspiracy to distribute cocaine and requests a jury trial," despite previously pleading guilty. (ECF No. 1242).

The crux of Defendant's motion is that his prior counsel provided erroneous advice as to the severity of the offense to which he pleaded. Specifically, Defendant avers that he believed a plea to cocaine would be less serious than a plea to marijuana. This Court previously denied Defendant's motion to withdraw his guilty plea based on the same arguments. (ECF No. 1184). Although Defendant describes this claim as "potentially meritorious", the statute calls for a finding that the appeal "raises a substantial question of

2

0303

law or fact likely to result in [] reversal." 18 U.S.C. § 3143(b)(1)(B). A substantial question has been defined as "a 'close' question or one that very well could be decided the other way." *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991)(quotations omitted). There are no blanket categories for what questions do or do not constitute "substantial" ones. *Id.* Whether a question is "substantial" must be determined on a case-by-case basis. *Id.*

Here, Defendant has failed to make such a showing. Specifically, "as a general rule, claims of ineffective assistance of counsel must be raised in a 28 U.S.C. § 2255 motion rather than on direct appeal, unless the appellate record conclusively demonstrates ineffective assistance." *United States v. Reid*, 436 F. App'x 141, 142 (4th Cir. 2011)(citing *United States v. Benton,* 523 F.3d 424, 435 (4th Cir. 2008)). Other than asserting that prior counsel was ineffective in advising Defendant as to the severity of the offense, Defendant fails to provide clear and convincing evidence as to how the record "conclusively demonstrates ineffective assistance" of his previous trial counsel. This is especially true given that the Court has considered and rejected this argument when ruling on Defendant's motion to withdraw his guilty plea. Therefore, Defendant has failed to show that his claims are likely to result in a reversal on appeal.

Given that Defendant has failed to show a likelihood of reversal on appeal, the Court need not consider his additional arguments that he is not likely to flee or poses a danger to

the safety of others.[2] Accordingly, Defendant's motion for release pending appeal is respectfully denied.

IT IS SO ORDERED.

June 22, 2022                                      Joseph F. Anderson, Jr.
Columbia, South Carolina                          United States District Judge

---

[2] The court would note that Defendant was released on a secured $50,000 bond pending the resolution of his criminal charges on July 9, 2020, and appears to have complied with all of his conditions of bond throughout the pendency of these proceedings.

4

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

## COLUMBIA DIVISION

|  |  |
|---|---|
| ) | Criminal No. 3:20-cr-00453 |
| ) | |
| United States of America, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| ) | |
| Tommy Novack Lloyd ) | |
| _____ ) | |

Notice is hereby given that Tommy Novak Lloyd in the above-captioned case, hereby appeal to the United States Court of Appeals for the Fourth Circuit from the Order/Judgment entered in this action on the June 22, 2022, Docket No. 1243, denying his motion for an appellate bond.

/s/ Elizabeth Franklin-Best
Elizabeth Franklin-Best, P.C.
Fed ID #9969
3710 Landmark Drive, Suite 113
Columbia, South Carolina 29204
(803) 445-1333
elizabeth@franklinbestlaw.com

June 25, 2022.